## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MILKBOY CENTER CITY LLC, individually and on behalf of all others similarly situated, | CASE NO._____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| THE CINCINNATI INSURANCE COMPANY, THE CINCINNATI CASUALTY COMPANY, THE CINCINNATI INDEMNITY COMPANY, and CINCINNATI FINANCIAL CORPORATION, | |
| Defendants. | |

Plaintiff MilkBoy Center City LLC ("Plaintiff"), individually and on behalf of all other members of the below-defined nationwide Plaintiff classes (collectively, the "Insured Class"), brings this class action against Defendants The Cincinnati Insurance Company, The Cincinnati Casualty Company, The Cincinnati Indemnity Company, and Cincinnati Financial Corporation (collectively, "Cincinnati" or "Defendants"). Plaintiff alleges the following based on personal knowledge as to Plaintiff and Plaintiff's own acts, and on information and belief as to all other matters based upon the investigation of Plaintiff's counsel and their review of publicly available information, including news articles, press releases, and other publicly available information.

## NATURE OF THE ACTION

1.     Plaintiff owns and operates MilkBoy Philadelphia, a music venue, bar, and restaurant. Plaintiff's future is now threatened by the government-ordered shutdowns prohibiting

performances and on-site dining, which prevents patrons' and employees' access to the property and prohibits use of the property for its intended purpose.

2.      To protect the businesses in the event that it suddenly had to suspend operations for reasons outside of Plaintiff's control, Plaintiff purchased a policy of insurance from Cincinnati.  The policy contained coverage extensions for Business Income, Extended Business Income, and Extra Expense, providing for payment of the actual loss of business income extra expenses incurred by Plaintiff during a period of restoration.  The policy further contained a Civil Authority provision, for payment of business income and extra expenses due to an action of a civil authority prohibiting access to the property.

3.      Plaintiff was forced to suspend business at MilkBoy Philadelphia due to orders issued by civil authorities in Pennsylvania mandating the suspension of business for on-site services to prevent potential exposure to COVID-19.  Plaintiff was also required to take necessary steps to prevent further damage and minimize the suspension of business and continue operations.

4.      Following timely notice of its claim, Plaintiff was denied business income coverage by Cincinnati.  Upon information and belief, Cincinnati has, on a wide-scale and uniform basis, refused to pay its insureds for losses suffered due to any executive orders by civil authorities that have required the necessary suspension of business, and any efforts to prevent further property damage or to minimize the suspension of business and continue operations in response to COVID-19.

## THE PARTIES

5.      Plaintiff MilkBoy Center City LLC is a Pennsylvania limited liability company, and is a citizen of Pennsylvania.  Plaintiff is the owner and operator of MilkBoy Philadelphia, a

2

music venue, bar and restaurant with a principal place of business at 1100 Chestnut Street Philadelphia, PA 19123.

6.     Defendant The Cincinnati Insurance Company is a property and casualty insurance company.  Defendant is a citizen of Ohio, being organized under the laws of the State of Ohio and with its headquarters and principal place of business at 6200 S. Gilmore Road, Fairfield, Ohio 45014.  On information and belief, Cincinnati Insurance Company is a subsidiary of The Cincinnati Financial Corporation.

7.     Defendant The Cincinnati Casualty Company is a property and casualty insurance company.  Defendant is a citizen of Ohio, being organized under the laws of the State of Ohio and with its headquarters and principal place of business at 6200 S. Gilmore Road, Fairfield, Ohio 45014.  On information and belief, Cincinnati Casualty Company is a wholly-owned subsidiary of The Cincinnati Insurance Company.

8.     Defendant The Cincinnati Indemnity Company is a property and casualty insurance company.  Defendant is a citizen of Ohio, being organized under the laws of the State of Ohio and with its headquarters and principal place of business at 6200 S. Gilmore Road, Fairfield, Ohio 45014.  On information and belief, Cincinnati Indemnity Company is a wholly-owned subsidiary of The Cincinnati Insurance Company.

9.     Defendant Cincinnati Financial Corporation is a citizen of Ohio, being organized under the laws of the State of Ohio and with its headquarters and principal place of business at 6200 S. Gilmore Road, Fairfield, Ohio 45014.  On information and belief, Cincinnati Financial Corporation is the parent of The Cincinnati Insurance Company.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are more than 100 class members, and at least one class member is a citizen of a state different from Defendants.  The Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

11.     This Court has personal jurisdiction over Defendants, as Defendants are registered to conduct business in this Commonwealth, regularly conduct business in Pennsylvania, and have sufficient contacts in Pennsylvania.  Defendants intentionally avail themselves of this jurisdiction by conducting operations here and promoting, selling, and marketing Defendants' policies of insurance to resident Pennsylvania consumers and entities.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District and the Plaintiff's insured property that is the subject of the action is situated in this District.

## FACTUAL ALLEGATIONS

A.     **The Cincinnati Policy**

13.     In return for the payment of a premium, Cincinnati issued Policy No. ENP 053 39 92 to MilkBoy Center City LLC, for a policy period of April 29, 2019 to April 29, 2022.  Policy No. ENP 053 39 92 is attached hereto as Exhibit A.  MilkBoy Center City LLC has performed all of its obligations under Policy No. ENP 053 39 92, including the payment of the premium.  The policy's Schedule of Locations includes MilkBoy Philadelphia, 1100 Chestnut Street, Philadelphia, PA.

4

14.     In many parts of the world, property insurance is sold on a "named peril" basis. Such policies cover a risk of loss if that risk of loss is specifically listed.  Most property policies sold in the United States, however, including the policies sold by Cincinnati, are all-risk policies. These types of policies cover all risks of loss except for risks that are expressly and specifically excluded.

15.     Pursuant to the policy's "Building and Personal Property Coverage Form," Form FM 101 05 16, the policy covers "direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss." The policy defines "loss" as "accidental physical loss or accidental physical damage."

16.     The policy provides business income coverage in two separate provisions: within the "Building and Personal Property Coverage Form," Form FM 101 05 16, and pursuant to the "Business Income (and Extra Expense) Coverage Form," Form FA 213 05 16.  Both forms contain substantially identical provisions triggering Business Income and Extra Expense coverage: that "[w]e will pay for the actual loss of 'Business Income'. . . you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'", and that the "loss" must be "caused by or result[ing] from" a Covered Cause of Loss.

17.     The policy also provides coverage for business income coverage caused by an act of civil authority.  Pursuant to the policy's Form FM 101 05 16, "[w]hen a Covered Cause of Loss causes damage to property other than Covered Property at a 'premises', we will pay for the actual loss of 'Business Income' and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the 'premises'. . ."

18.     None of the policy's provisions contain any exclusion for losses caused by a virus or by governmental orders issued in order to prevent exposure to a virus.  No other exclusions in the policies apply to this coverage.

**B.     The Covered Cause of Loss**

19.     Efforts to prevent exposure to COVID-19 have caused civil authorities throughout the country to issue orders requiring the suspension of non-essential businesses and preventing citizens from leaving home for non-essential purposes (the "Closure Orders").

20.     Plaintiff's business is not considered "essential," and has therefore been subject to a variety of Closure Orders by state and local authorities, preventing Plaintiff from operating its businesses, limiting its operations, and/or from use of the premises for its intended purpose.

21.     These Closure Orders include, but are not limited to, Pennsylvania Governor Wolf's order dated March 19, 2020 requiring all non-life-sustaining businesses in the Commonwealth to cease operations and close all physical locations.[1] The Pennsylvania Supreme Court recently clarified that the Governor's order has resulted in the temporary loss of use of non-essential business premises effected by the order, and that the order was issued to protect the lives and health of millions of Pennsylvania citizens.  *See Friends of DeVito v. Wolf*, No. 68 MM 2020, 2020 WL 1847100 at *17 (Pa. Apr. 13, 2020).

22.     Plaintiff experienced a "Covered Cause of Loss" by virtue of the Closure Orders, which denied use of the premises by causing a necessary suspension of operations during a period of restoration.  The Closure Orders operate as a blockade that prevents employees and patrons from entering and operating the business for its intended purpose.

---

[1] *Available at* https://www.scribd.com/document/452416027/20200319-TWW-COVID-19-Business-Closure-Order.

23.    This Covered Cause of Loss triggered coverage pursuant to the Business Income, Extended Business Income, Extra Expense, and Civil Authority provisions of the policy.

a.   Pursuant to the Business Income coverage provisions within the "Building and Personal Property Coverage Form," Form FM 101 05 16, and "Business Income (and Extra Expense) Coverage Form," Form FA 213 05 16, Cincinnati promised that it that would "pay for the actual loss of 'Business Income'. . . you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'"

b.   Pursuant to the form's Extended Business Income provision, Cincinnati promised that "[f]or 'Business Income' Other Than 'Rental Value', if the necessary 'suspension' of your 'operations' produces a 'Business Income' or Extra Expense 'loss' payable under this Coverage Part, we will pay for the actual loss of 'Business Income' you sustain and Extra Expense you incur. . ."

c.   Pursuant to the form's Extra Expense provision, Cincinnati promised that "[w]e will pay Extra Expense you sustain during the 'period of restoration.'"

d.   This Covered Cause of Loss also caused a direct physical loss or damage to property *other* than at Plaintiff's premises, and prohibited access to the Plaintiff's premises—thereby triggering coverage under the policy's Civil Authority provision.  Pursuant to the Civil Authority coverage extension in FM 101 05 16, Cincinnati promised that "[w]hen a Covered Cause of Loss causes damage to property other than Covered Property at a 'premises', we will pay for the actual loss of 'Business Income' and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the 'premises'. . ."

24.     None of Cincinnati's policy exclusions apply to Plaintiff's claims.

25.     On or about April 15, 2020, Cincinnati denied Plaintiff's claim.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil

Procedure, individually and on behalf of all others similarly situated.

27.     Plaintiff seeks to represent nationwide classes defined as

> a.  All persons and entities that: (a) had Business Income, Extended
> Business Income, Extra Expense, and/or Civil Authority coverage
> under a property insurance policy issued by Cincinnati; (b) suffered a
> suspension of business  related the Closure Orders,  at the premises
> covered by Cincinnati's property insurance policy; (c) made a claim
> under their property insurance policy issued by Cincinnati; and (d)
> were denied Business Income coverage by Cincinnati for the
> suspension of business resulting from the Closure Orders (the "Breach
> Class").
>
> b.  All persons and entities with Business Income, Extended Business
> Income, Extra Expense, and/or Civil Authority coverage under a
> property insurance policy issued by Cincinnati that suffered a
> suspension of business due a Closure Order at the premises covered
> by the policy (the "Declaratory Judgment Class").

28.     Excluded from each defined class are Defendants and any of their members,

affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and any

governmental entities.  Plaintiff reserves the right to modify or amend each of the class

definitions, as appropriate, during the course of this litigation.

29.     This action has been brought and may properly be maintained on behalf of each

class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

30.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).**  The members of each

defined Class are so numerous that individual joinder of all class members is impracticable.

While Plaintiff is informed and believes that there are thousands of members of each class, the

precise number of Class members is unknown to Plaintiff but may be ascertained from Defendants' books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

31.     **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting only individual class members, including, without limitation:

a.   whether the class suffered a covered loss based on the common policies issued to members of the class;

b.   whether Cincinnati wrongfully denied all claims based on the wrongful application of one or more policy exclusions;

c.   whether Cincinnati's Business Income coverage applies to a suspension of business caused by a Closure Order;

d.   whether Cincinnati's Extended Business Income coverage applies to a suspension of business caused by a Closure Order;

e.   whether Cincinnati's Extra Expense coverage applies to a suspension of business caused by a Closure Order;

f.   whether Cincinnati's Civil Authority coverage applies to a loss of Business Income caused by a Closure Order;

g.   whether Cincinnati has breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to the Closure Orders; and

      h.  whether Plaintiff and the classes are entitled to an award of reasonable attorneys'

fees, expenses, interest and costs.

32.    **Typicality—Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are

typical of the other class members' claims because Plaintiff and the other class members are all

similarly affected by Defendants' refusal to pay under its Business Income, Extended Business

Income, Extra Expense, or Civil Authority coverages.  Plaintiff's claims are based upon the

same legal theories as those of the other Class members.  Plaintiff and the other class members

sustained damages as a direct and proximate result of the same wrongful practices in which

Defendants engaged.

33.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).**

Plaintiff is an adequate class representative because its interests does not conflict with the

interests of the other Class members who it seeks to represent, Plaintiff has retained counsel

competent and experienced in complex class action litigation, and Plaintiff intends to prosecute

this action vigorously. The interests of the above-defined classes will be fairly and adequately

protected by Plaintiff and its counsel.

34.    **Inconsistent or Varying Adjudications and the Risk of Impediments to**

**Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).**  Plaintiff seeks

class-wide adjudication as to the interpretation, and resultant scope, of Defendants' Business

Income, Extended Business Income, Extra Expense, and Civil Authority coverages.  The

prosecution of separate actions by individual members of the classes would create an immediate

risk of inconsistent or varying adjudications that would establish incompatible standards of

conduct for the Defendants.

35.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure**
**23(b)(2).**  Defendants acted or refused to act on grounds generally applicable to Plaintiff and the
other class members, thereby making appropriate final injunctive relief and declaratory relief, as
described below, with respect to the class members.

36.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).**  A class action is
superior to any other available means for the fair and efficient adjudication of this controversy,
and no unusual difficulties are likely to be encountered in the management of this class action.
Individualized litigation creates a potential for inconsistent or contradictory judgments and
increases the delay and expense to all parties and the court system.  By contrast, the class action
device presents far fewer management difficulties, and provides the benefits of single
adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT –
### (Claim Brought on Behalf of the Breach Class)

37.     Plaintiff realleges the above paragraphs as if fully set forth herein.

38.     Plaintiff brings this Count individually and on behalf of the other members of the
Breach Class.

39.     Plaintiff's policies, as well as those of the other Breach Class members, are
contracts under which Cincinnati was paid premiums in exchange for its promise to pay Plaintiff
and the other Breach Class members' losses for claims covered by the policy.

40.     In its policy, Cincinnati provided Business Income, Extended Business Income,
Extra Expense, and Civil Authority coverage extensions.

41.     Cincinnati agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

42.     Under the Cincinnati policy, a "suspension" means "the slowdown or cessation of your business activities" and "a part or all of the 'premises' is rendered untentantable."

43.     Pursuant to the business income coverage provisions within the "Building and Personal Property Coverage Form," Form FM 101 05 16, and "Business Income (and Extra Expense) Coverage Form," Form FA 213 05 16, Cincinnati promised that it that would "pay for the actual loss of 'Business Income'. . . you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'"

44.     Pursuant to the form's extended business income provision, Cincinnati promised that "[f]or 'Business Income' Other Than 'Rental Value''', if the necessary 'suspension' of your 'operations' produces a 'Business Income' or Extra Expense 'loss' payable under this Coverage Part, we will pay for the actual loss of 'Business Income' you sustain and Extra Expense you incur. . ."

45.     Pursuant to the form's Extra Expense provision, Cincinnati promised that "[w]e will pay Extra Expense you sustain during the 'period of restoration.'"

46.     The Closure Orders caused direct physical loss and damage to Plaintiff and the other Business Income Breach Class members' Scheduled Premises, requiring suspension of operations at the Scheduled Premises.  Losses caused by the Closure Orders thus triggered the business income, extended business income, and extra expense provisions of Plaintiff's and the other Breach Class members' policies.

47.     The Closure Orders also caused direct physical loss and damage to property *other* than Plaintiff and the other Breach Class members' premises, resulting in a prohibition of access

to the premises.  Losses caused by the Closure Orders thus triggered the civil authority provision of Plaintiff's and the other Breach Class members' policies.

48.     Plaintiff and the other Breach Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Cincinnati, or Cincinnati is estopped from asserting them, and yet Cincinnati has abrogated its insurance coverage obligations.

49.     By denying coverage for any Business Income losses incurred by Plaintiff and the other Breach Class members, Cincinnati has breached its coverage obligations under the policies.

50.      As a result of Cincinnati's breaches of the policies, Plaintiff and the other Breach Class members have sustained substantial damages for which Cincinnati is liable, in an amount to be established at trial.

## COUNT II
## DECLARATORY JUDGMENT –
### (Claim Brought on Behalf of the Declaratory Judgment Class)

51.     Plaintiff realleges the above paragraphs as if fully set forth herein.

52.     Plaintiff brings this Count individually and on behalf of the other members of the Declaratory Judgment Class.

53.     Plaintiff's policies, as well as those of the other Declaratory Judgment Class members, are contracts under which Cincinnati was paid premiums in exchange for its promise to pay Plaintiff and the other Declaratory Judgment Class members' losses for claims covered by the policy.

54.     Plaintiff and the other Declaratory Judgment Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by

Cincinnati, or Cincinnati is estopped from asserting them, and yet Cincinnati has abrogated its insurance coverage obligations.

55.     Cincinnati has denied claims related to Coverage Orders on a uniform and class-wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim for coverage.

56.     An actual case or controversy exists regarding Plaintiff's and the other Declaratory Judgment Class members' rights and Cincinnati's obligations under the policies to reimburse Plaintiff for the full amount of losses incurred by Plaintiff and the other Declaratory Judgment Class members in connection with suspension of their businesses in connection with the Closure Orders.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself and the proposed classes, requests the following relief:

a.  Certify the proposed Breach Class and Declaratory Judgment classes, appoint Plaintiff as the class representative and lead plaintiff, and approve its selection of lead counsel;

b.  Award a declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring the following:

   i.  Plaintiff's and the other Declaratory Judgment Class members' business interruption losses incurred in connection with the Closure Orders are insured losses under their policies; and

   ii.  Cincinnati is obligated to pay Plaintiff and the other Declaratory Judgment Class members for the full amount of the losses incurred and to be

incurred in connection with the Closure Orders during the period of

restoration and the necessary interruption of their businesses.

c.  Grant compensatory, exemplary and punitive damages as may be appropriate

under law.

d.  Award Plaintiff and the classes reasonable attorneys' fees, expenses, costs and

pre-judgment and post-judgment interest at the maximum rate as may be allowed

by law.

e.  Grant such additional or different relief as the interests of justice or equity may

require.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of itself and the proposed classes, hereby demands a trial by jury as to

all issues stated herein, and all issues so triable.

Dated:  April 27, 2020                        **BARRACK, RODOS & BACINE**

By:  ___s/ Daniel E. Bacine_____
    Daniel E. Bacine (PA 16742)
    Mark R. Rosen (PA 31231)
    Jeffrey A. Barrack (PA 78438)
    Meghan J. Talbot (PA 322308)
    3300 Two Commerce Square
    2001 Market Street
    Philadelphia, PA 19103
    Telephone: (215) 963-0600
    dbacine@barrack.com
    mrosen@barrack.com
    jbarrack@barrack.com
    mtalbot@barrack.com
      and
    Stephen R. Basser
    One America Plaza
    600 W. Broadway, Suite 900
    San Diego, CA 92101
    Telephone: (619-230-0800
    sbasser@barrack.com

    *Attorneys for Plaintiff*