# EXHIBIT A



**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

**Policy Number:** ENP 053 39 92

**Effective Date:** 04-29-2019

**Named Insured:** MILKBOY CENTER CITY LLC

For professional advice and policy questions or changes, please contact your local independent agency:

DASH & LOVE, INC.
111 PRESIDENTIAL BLVD STE 211
BALA CYNWYD, PA 19004-1013

610-667-2244

Dear Policyholder:

**Thank you**
Thank you for trusting The Cincinnati Insurance Companies with your commercial insurance coverage. We recognize that locally based independent agents have the working knowledge to help you choose the right insurance company for your needs. Together with your local independent insurance agency, we are committed to providing you with the highest level of service.

Please review your enclosed policy information to verify your coverage details, as well as deductibles and coverage amounts. Should your needs change, your agent is available to review and update your policy.

**Please promptly report claims**
If you experience a policy-related loss, you may report it by contacting your local professional independent agency representing The Cincinnati Insurance Companies or by directly calling us toll-free at **877-242-2544** and providing your policy number and claim-related information.

Sincerely,

Sean M. Givler
Senior Vice President - Commercial Lines

**IA 4443 04 14**



THE
CINCINNATI
INSURANCE COMPANIES

The Cincinnati Insurance Company ■ The Cincinnati Indemnity Company
The Cincinnati Casualty Company

Today's Date:   **05-22-2019**

To:  **MILKBOY CENTER CITY LLC**

Policy Number:    **ENP 053 39 92**
Expiration Date:  **04-29-2022**
Agency:           **DASH & LOVE, INC. 37-225**

**Data breach and identity recovery support and resources included with your insurance policy**

Dear Policyholder:

Your policy includes Cincinnati Data Defender™ coverage for an additional premium, helping to safeguard your business against the rising costs of a data breach and offering services to assist you in the event of identity theft. Please save this information so you can access all the tools and resources that come with your cyber protection coverage. Refer to Cincinnati Data Defender Coverage Form, HC102, for a complete statement of coverages, exclusions and limits of insurance.

## Policyholder tools and resources

*Data breach portal* - You gain access to *www.eriskhub.com/cic*, a website that provides you with the comprehensive, on-demand resources you need to:
- Prepare in advance:
    - Access online resources when you need them
    - Create your breach response plan from the template
    - Learn about breach laws that apply to your business
- Review risk management resources:
    - Use the compliance reference guide and notification letter examples
    - Locate credit bureau and government agency notification information
    - Learn how to contact data risk management experts for more help
- Manage your breach response:
    - Call the help line for breach information and assistance
    - Arrange assistance with notification letters
    - Access public relations resources to help you respond to the media

The first time you visit this website, please complete new user registration using this information:

**Access code = 12116-868**

*Identity theft services* – You also receive case management services and reimbursement for covered expenses if you, as a business owner, become the victim of identity theft or account takeover. If you suspect that you may be an identity theft victim or you have questions, please call our Identity Recovery Help Line, 866-219-9831.

**IA4463 (01/16)**

Page 2 of 2

## Claims services

If you suspect or know that a data breach may have exposed or compromised your organization's private, customer or personal data, a swift response is critical for your protection. Please note that the Web portal and help line provide advice and information, and using them does not satisfy any notice of claim requirement. The only way to report a claim is to contact your independent agent or call us directly, 877-242-2544. Your agent and Cincinnati Insurance will work with you to preserve your company's goodwill, prevent regulatory sanctions or fines, avoid civil litigation and safeguard your business reputation.

Please contact your agent representing Cincinnati with questions about this valuable coverage.

Thank you for trusting your agent and Cincinnati to protect your business.

Sincerely,

COMMERCIAL LINES DEPARTMENT

Commercial Lines

**IA4463 (01/16)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

Policy Number   ENP 053 39 92

This endorsement modifies insurance provided under the following:

**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**FARM COVERAGE PART**

## SCHEDULE

| Loc. Number | Bldg. Number | Protective Safeguards Symbols Applicable |
|---|---|---|
| 1 | 1 | P-1 |

Describe any "P-9":

**A.** The following is added to the:

**Commercial Property Conditions**
**Farm Property Coverage Form, General Conditions**
**Commercial Inland Marine Conditions**

**PROTECTIVE SAFEGUARDS**

1. As a condition of this insurance, you are required to maintain the protective devices or services listed in the **SCHEDULE** of this endorsement.

2. The protective safeguards to which this endorsement applies are identified by the following symbols:

   **"P-1"** **Automatic Sprinkler System,** including related supervisory services.

   Automatic Sprinkler System means:

   **a.** Any automatic fire protective or extinguishing system, including connected:

   **(1)** Sprinklers and discharge nozzles;

   **(2)** Ducts, pipes, valves and fittings;

   **(3)** Tanks, their component parts and supports; and

   **(4)** Pumps and private fire protection mains.

   **b.** When supplied from an automatic fire protective system:

   **(1)** Non-automatic fire protective systems; and

   **(2)** Hydrants, standpipes and outlets.

   **"P-2"** **Automatic Fire Alarm,** protecting the entire building, that is:

   **a.** Connected to a central station; or

   **b.** Reporting to a public or private fire alarm station.

   **"P-3"** **Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the "premises" are not in actual operation.

   **"P-4"** **Service Contract** with a privately owned fire department providing fire protection service to the "premises".

   **"P-5"** **Automatic Commercial Cooking Exhaust and Extinguishing System** installed on cooking appliances and having the following components:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

a. Hood;

b. Grease removal device;

c. Duct system; and

d. Wet chemical fire extinguishing equipment.

**"P-9"** The protective system described in the **SCHEDULE** of this endorsement.

**B.** The following is added to the **EXCLUSIONS** section of any Coverage Form within the Commercial Property, Farm or Commercial Inland Marine Coverage Part:

**Failure to Maintain Protective Safeguards**

We will not pay for "loss" caused by or resulting from fire, if prior to the fire, you:

**1)** Knew of any suspension or impairment in any protective safeguard listed in the **SCHEDULE** of this endorsement and failed to notify us of that fact; or

**2)** Failed to maintain in complete working order any protective safeguard listed in the **SCHEDULE** of this endorsement over which you had control.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

Date _____          Signature of Insured _____

DASH & LOVE, INC. 37-225
BALA CYNWYD, PA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

Policy Number   ENP 053 39 92

This endorsement modifies insurance provided under the following:

**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**FARM COVERAGE PART**

## SCHEDULE

| Loc. Number | Bldg. Number | Protective Safeguards Symbols Applicable |
|---|---|---|
| 2 | 1 | P-1 |

Describe any "P-9":

**A.** The following is added to the:

**Commercial Property Conditions**
**Farm Property Coverage Form, General Conditions**
**Commercial Inland Marine Conditions**

**PROTECTIVE SAFEGUARDS**

1. As a condition of this insurance, you are required to maintain the protective devices or services listed in the **SCHEDULE** of this endorsement.

2. The protective safeguards to which this endorsement applies are identified by the following symbols:

   **"P-1"   Automatic Sprinkler System,** including related supervisory services.

   Automatic Sprinkler System means:

   **a.** Any automatic fire protective or extinguishing system, including connected:

      **(1)** Sprinklers and discharge nozzles;

      **(2)** Ducts, pipes, valves and fittings;

      **(3)** Tanks, their component parts and supports; and

      **(4)** Pumps and private fire protection mains.

   **b.** When supplied from an automatic fire protective system:

      **(1)** Non-automatic fire protective systems; and

      **(2)** Hydrants, standpipes and outlets.

   **"P-2"   Automatic Fire Alarm,** protecting the entire building, that is:

   **a.** Connected to a central station; or

   **b.** Reporting to a public or private fire alarm station.

   **"P-3"   Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the "premises" are not in actual operation.

   **"P-4"   Service Contract** with a privately owned fire department providing fire protection service to the "premises".

   **"P-5"   Automatic Commercial Cooking Exhaust and Extinguishing System** installed on cooking appliances and having the following components:

a. Hood;

b. Grease removal device;

c. Duct system; and

d. Wet chemical fire extinguishing equipment.

**"P-9"** The protective system described in the **SCHEDULE** of this endorsement.

**B.** The following is added to the **EXCLUSIONS** section of any Coverage Form within the Commercial Property, Farm or Commercial Inland Marine Coverage Part:

**Failure to Maintain Protective Safeguards**

We will not pay for "loss" caused by or resulting from fire, if prior to the fire, you:

**1)** Knew of any suspension or impairment in any protective safeguard listed in the **SCHEDULE** of this endorsement and failed to notify us of that fact; or

**2)** Failed to maintain in complete working order any protective safeguard listed in the **SCHEDULE** of this endorsement over which you had control.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

Date _____

Signature of Insured _____

DASH & LOVE, INC. 37-225
BALA CYNWYD, PA

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



# The Cincinnati Casualty Company
A Stock Insurance Company

**Headquarters:** 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address:** P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# COMMON POLICY DECLARATIONS

Billing Method: **AGENCY BILL**

POLICY NUMBER     **ENP 053 39 92**

**NAMED INSURED**     MILKBOY CENTER CITY LLC
                                          421 N 7TH ST FL 3
**ADDRESS**               PHILADELPHIA, PA 19123-3921
(Number & Street,
Town, County,
State & Zip Code)

**Previous Policy Number:**
NEW

**Policy Period:**     At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
     Policy number:  **ENP 053 39 92**          FROM: **04-29-2019**   TO: **04-29-2022**

**Automobile and / or Garage**
     Policy number:                                   FROM:                    TO:

Agency     DASH & LOVE, INC. 37-225
City       BALA CYNWYD, PA

**Legal Entity / Business Description**

LIMITED LIABILITY COMPANY

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:

| | | |
|---|---|---|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA4236 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4006 | 07/10 | SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT |
| IA4111PA | 03/16 | PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL |
| IA4189PA | 04/99 | IMPORTANT NOTICE |
| IA4238 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4295PA | 08/06 | PENNSYLVANIA WARNING NOTICE |
| IA4300MD | 01/07 | MARYLAND - NOTICE OF UNDERWRITING PERIOD |
| IA4313PA | 07/09 | PENNSYLVANIA CHANGES - ACTUAL CASH VALUE |
| IA4314PA | 07/09 | PENNSYLVANIA CHANGES |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IA460 | 01/16 | PROTECTIVE SAFEGUARDS |
| IL0022 | 05/87 | EFFECTIVE TIME CHANGES - REPLACEMENT OF 12 NOON |
| IL0910 | 07/02 | PENNSYLVANIA NOTICE |
| MI1691MD | 05/02 | DISCLOSURE NOTICE |
| FMQ502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| CAQ519XCP | 03/09 | CINCIPLUS® CRIME XC+® (EXPANDED COVERAGE PLUS) COVERAGE PART DECLARATIONS |

IAQ509 01 12

FORMS APPLICABLE TO ALL COVERAGE PARTS:

| | | |
|---|---|---|
| CAQ516 | 03/09 | CRIME AND FIDELITY COVERAGE PART DECLARATIONS (COMMERCIAL ENTITIES) |
| HC502 | 01/18 | CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS |
| HC503 | 01/18 | CINCINNATI NETWORK DEFENDER™ COVERAGE PART DECLARATIONS |

---

05-22-2019 08:11

Countersigned _____     By _____
                    (Date)                              (Authorized Representative)

**IAQ509 01 12**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination of Your Books and Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections and Surveys

**1.** We have the right to:

   **a.** Make inspections and surveys at any time;

   **b.** Give you reports on the conditions we find; and

   **c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   **a.** Are safe or healthful; or

   **b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

**1.** Is responsible for the payment of all premiums; and

**2.** Will be the payee for any return premiums we pay.

## F. Transfer of Your Rights and Duties Under this Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

# SUMMARY OF PREMIUMS CHARGED

Attached to and forming part of
POLICY NUMBER:  **ENP 053 39 92**                    Effective Date:  **04-29-2019**

Named Insured:  **MILKBOY CENTER CITY LLC**

## THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE
## PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | | |
|---|---|---|
| Commercial Property Coverage Part **W/EBC** | $ | **5,255** **STR** |
| Commercial General Liability Coverage Part | $ | |
| Commercial Auto Coverage Part | $ | |
| Commercial Umbrella / Excess Liability Coverage Part | $ | |
| **DATA DEFENDER COVERAGE PART** | $ | **143** |
| **NETWORK DEFENDER COVERAGE PART** | $ | **187** |
| **CRIME AND FIDELITY COVERAGE PART** | $ | **359** |
| **CRIME EXPANDED COVERAGE PLUS** | $ | **106** |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| Terrorism Coverage | $ | **243** |
| Installment Charge | $ | |
| **ANNUAL TOTAL** | $ | **6,293** |

**PAYMENTS**

| | First Installment | Remaining Installment(s) |
|---|---|---|
| **ANNUAL** | **6,293** | **6,293** |

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary. Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

IA 102 A 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SCHEDULE OF LOCATIONS

| LOC. | STREET ADDRESS | CITY | STATE | ZIP CODE |
|------|----------------|------|-------|----------|
| 1 | 1100 CHESTNUT ST | | | |
| | PHILADELPHIA, PA 19107-4802 | | | |
| | | | | |
| 2 | 7416 BALTIMORE AVE | | | |
| | COLLEGE PARK, MD 20740-3208 | | | |

**IA 904 04 04**

# POLICYHOLDER NOTICE
# TERRORISM INSURANCE COVERAGE

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

Your policy may contain coverage for certain losses caused by terrorism.

## Premium:

In accordance with the federal Terrorism Risk Insurance Act, we are required to notify you of the portion of the premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act.

- Refer to the SUMMARY OF PREMIUMS CHARGED or DECLARATIONS PAGE for the portion of your premium that is attributable to coverage for terrorist acts certified under the Act.

## Federal Participation:

The Act also requires us to provide disclosure of federal participation in payment of terrorism losses.

- Under your policy, any losses caused by certified acts of terrorism would be partially reimbursed by the United States Government, Department of Treasury, under a formula established by federal law. Under this formula, the federal share equals a percentage, as specified in the Schedule below, of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

- **Schedule:**

| Federal Share of Terrorism Losses | |
|---|---|
| Percentage | Calendar Year |
| 85% | 2015 |
| 84% | 2016 |
| 83% | 2017 |
| 82% | 2018 |
| 81% | 2019 |
| 80% | 2020 |

## Cap on Insurer Participation:

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**NOTE:   IF YOUR POLICY IS A RENEWAL POLICY, THIS NOTICE IS PROVIDED TO SATISFY THE REQUIREMENTS UNDER THE TERRORISM RISK INSURANCE ACT FOR POLICYHOLDER DISCLOSURE: (1) AT THE TIME OF OUR OFFER TO RENEW THE POLICY AND (2) AT THE TIME THE RENEWAL IS COMPLETED.**

**IA 4236 01 15**

# THE CINCINNATI INSURANCE COMPANY
# THE CINCINNATI CASUALTY COMPANY
# THE CINCINNATI INDEMNITY COMPANY

## NOTICE TO POLICYHOLDERS

Please be advised that in your application for insurance you disclosed information to The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company.  The information disclosed in the application and all information subsequently collected by any of these companies may be shared among all three.

**IP 446 08 01**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**

**A.  Special Per Occurrence Deductible**

   **1.**  If an "occurrence" happens to Covered Property under the Commercial Property Coverage Part and to Covered Property under at least one of the following:

   **a.**  The Commercial Inland Marine Coverage Part, and

   **b.**  The Crime and Fidelity Coverage Part;

   the most we will deduct from any loss or damage in any one "occurrence" is the deductible indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

   **2.**  This endorsement does not apply to any of the forms listed in Paragraphs **a.** and **b.:**

   **a.**  * **Electronic Data Processing Coverage Form, Section III, 2. Deductible, a.(2) Specified Losses Deductible**

   * **Water Backup from Sewers, Drains, Septic Systems or Sump Pumps Endorsement**

   **Windstorm or Hail Percentage Deductible Form**

   **Earthquake and Volcanic Eruption Endorsement**

   **Earthquake and Volcanic Eruption Endorsement (Sub-Limit Form)**

   **Flood Coverage Endorsement**

   **Equipment Breakdown Coverage (Including Production Equipment)**

   **Equipment Breakdown Coverage (Excluding Production Equipment)**

   * **Temperature Change Coverage Form**

   **Commercial Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft, 2. Forgery or Alteration, 6. Computer Fraud and 7. Funds Transfer Fraud**

   **Crime Expanded Coverage (XC®) Coverage or Expanded Coverage Plus Forms, A. Insuring Agreements, 1. Employee Theft and 2. Forgery or Alteration**

   **Government Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft - Per Loss Coverage, 2. Employee Theft - Per Employee Coverage, 3. Forgery or Alteration, 7. Computer Fraud and 8. Funds Transfer Fraud**

   *  Or such coverage as provided in the CinciPlus® Commercial Property or Commercial Property Power Expanded Coverage or Expanded Coverage Plus Forms

   **b.**  ☐  **Other**

**B.  Definition**

For the purpose of this endorsement only, any definition of "occurrence" is deleted in its entirety and the following definition is added to:

1.  **COMMERCIAL PROPERTY CONDITIONS,**
2.  **COMMERCIAL INLAND MARINE CONDITIONS,**
3.  **COMMERCIAL CRIME COVERAGE FORM,**
4.  **CRIME EXPANDED COVERAGE (XC®) COVERAGE FORM, and**
5.  **GOVERNMENT CRIME COVERAGE FORM:**

**"Occurrence"** means all loss, damage, or a sequence of loss or damage, casualties or disasters arising from a single happening or event.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CHEMICAL APPLICATION LIMITED LIABILITY COVERAGE PART
CHEMICAL DRIFT LIMITED LIABILITY COVERAGE PART - CLAIMS-MADE
CINCINNATI CYBER DEFENSE™ COVERAGE PART
CINCINNATI DATA DEFENDER™ COVERAGE PART
CINCINNATI NETWORK DEFENDER™ COVERAGE PART
CLAIMS-MADE EXCESS LIABILITY COVERAGE PART
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
CONTRACTOR'S ERRORS AND OMISSIONS COVERAGE PART - CLAIMS-MADE
CONTRACTORS' LIMITED POLLUTION LIABILITY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYEE BENEFIT LIABILITY COVERAGE PART
EMPLOYMENT PRACTICES LIABILITY COVERAGE PART
EXCESS LIABILITY COVERAGE PART
EXCESS WORKERS COMPENSATION AND EMPLOYERS LIABILITY COVERAGE PART
FARM COVERAGE PART
HOLE-IN-ONE COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MACHINERY AND EQUIPMENT COVERAGE PART
MANUFACTURER'S ERRORS AND OMISSIONS COVERAGE PART - CLAIMS-MADE
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE
SEPTIC SYSTEMS DESIGN AND INSPECTION ERRORS AND OMISSIONS COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is deleted in its entirety and replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

2. **Cancellation of Policies in Effect for Less Than 60 Days**

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

3. **Cancellation of Policies in Effect for 60 Days or More**

   If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   **a.** You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

   **b.** You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.

plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

**c.** A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**d.** Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**e.** Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**f.** Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

**4.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the reasons for cancellation.

**5.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**6.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If the first Named Insured or we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund will be pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

**7.** If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**B.** The following are added and supersede any provisions to the contrary:

**1. Nonrenewal**

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before:

**a.** The expiration date of this policy; or

**b.** The anniversary date of this policy, if the policy is written for a term of more than one year.

**2. Increase of Premium**

If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

Includes copyrighted material of Insurance Services Office, Inc., with its permission. Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.

IA 4111 PA 03 16

Page 2 of 2

# IMPORTANT NOTICE

As a policyholder of The Cincinnati Insurance Companies, we are required by state statute to provide you with notice that your renewal/anniversary premium <u>may</u> increase.  An increase may be attributed to any number of reasons that may include changes in your sales or payroll, increase in your property values or coverage limits, a rate increase, or a change in the nature and extent of your business.  You have the ability to control some of these factors through the use of deductibles, safety and loss prevention measures in your workplace, and through careful selection of your insurance coverages.  Prior to your renewal/anniversary, please take the time to contact your agent to review this policy to make sure your coverages reflect your current needs.

**IA 4189 PA 04 99**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**All Commercial Lines Coverage Parts, Coverage Forms, Policies and Endorsements subject to the federal Terrorism Risk Insurance Act and any amendments and extensions thereto**

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B. Cap On Losses from Certified Acts of Terrorism**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that ex-

ceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**C. Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability, omission or absence of a terrorism exclusion, does not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part, Coverage Form, Policy or Endorsement such as losses excluded by:

**1.** Exclusions that address war, warlike action, insurrection, rebellion, revolution, military action, nuclear hazard, nuclear materials, nuclear reaction, radiation, or radioactive contamination;

**2.** Exclusions that address pollutants, contamination, deterioration, fungi or bacteria; or

**3.** Any other exclusion,

regardless if the "certified act of terrorism" contributes concurrently or in any sequence to the loss.

**D. Sunset Clause**

If the federal Terrorism Risk Insurance Act expires or is repealed, then this endorsement is null and void for any act of terrorism that takes place after the expiration or repeal of the Act.

Includes copyrighted material of ISO
Properties, Inc. and American Association
of Insurance Services, with their permission.

**IA 4238 01 15**

# PENNSYLVANIA WARNING NOTICE

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.  (For auto, upon conviction, shall be subject to imprisonment for up to seven years and payment of a fine of up to $15,000.)

**IA 4295 PA 08 06**

# MARYLAND - NOTICE OF UNDERWRITING PERIOD

We are notifying you that the binder or policy you have just agreed to purchase may provide you with only temporary coverage as Maryland law provides the company with a 45-day period, from the effective date of your coverage, to confirm that you are eligible for coverage under this policy.

Should we find during the 45-day period that you are not eligible for coverage, we will send you a written Notice of Cancellation advising you of the reason(s) that you do not qualify for coverage and the date on which your policy will be cancelled.

**IA 4300 MD 01 07**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES - ACTUAL CASH VALUE

This endorsement modifies insurance provided under the following:

    **COMMERCIAL INLAND MARINE COVERAGE PART**
    **COMMERCIAL PROPERTY COVERAGE PART**
    **CRIME AND FIDELITY COVERAGE PART**
    **FARM COVERAGE PART**
    **MACHINERY AND EQUIPMENT COVERAGE PART**
    **STANDARD PROPERTY POLICY**

The following is added to any provision which uses the term actual cash value:

Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

Includes copyrighted material of ISO
Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES

This endorsement modifies insurance provided under the following:

**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**
**FARM COVERAGE PART**
**MACHINERY AND EQUIPMENT COVERAGE PART**

**A.** For insurance provided under the:

Commercial Inland Marine Coverage Part
Commercial Property Coverage Part
Crime and Fidelity Coverage Part
Machinery and Equipment Coverage Part

The **TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY** Common Policy Condition is replaced by the following:

**F.   TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

If you die, this Coverage Part will remain in effect as provided in **1.** or **2.** below, whichever is later:

**1.** For 180 days after your death regardless of the policy period shown in the Declarations, unless the insured property is sold prior to that date; or

**2.** Until the end of the policy period shown in the Declarations, unless the insured property is sold prior to that date.

Coverage during the period of time after your death is subject to all provisions of this policy including payment of any premium due for the policy period shown in the Declarations and any extension of that period.

**B.** For insurance provided under the:

Commercial Inland Marine Coverage Part
Commercial Property Coverage Part
Farm Coverage Part

The following is added to the **LOSS PAYMENT** Loss Condition and supersedes any provision to the contrary:

**NOTICE OF ACCEPTANCE OR DENIAL OF CLAIM**

**1.** Except as provided in **3.** below, we will give you notice, within 15 working days after we receive a properly executed proof of loss, that we:

**a.** Accept your claim;

**b.** Deny your claim; or

**c.** Need more time to determine whether your claim should be accepted or denied.

If we deny your claim, such notice will be in writing, and will state any policy provision, condition or exclusion used as a basis for the denial.

If we need more time to determine whether your claim should be accepted or denied, the written notice will state the reason why more time is required.

**2.** If we have not completed our investigation, we will notify you again in writing, within 30 days after the date of the initial notice as provided in **1.c.** above, and thereafter every 45 days. The written notice will state why more time is needed to investigate your claim and when you may expect us to reach a decision on your claim.

**3.** The notice procedures in **1.** and **2.** above do not apply if we have a reasonable basis, supported by specific information, to suspect that an insured has fraudulently caused or contributed to the loss by arson or other illegal activity. Under such circumstances, we will notify you of the disposition of your claim within a period of time reasonable to allow full investigation of the claim, after we receive a properly executed proof of loss.

**IA 4314 PA 07 09**

Includes copyrighted material of ISO
Properties, Inc., with its permission.

# SIGNATURE ENDORSEMENT

IN WITNESS WHEREOF, this policy has been signed by our President and Secretary in the City of Fairfield, Ohio, but this policy shall not be binding upon us unless countersigned by an authorized representative of ours. The failure to countersign does not void coverage in Arizona, Virginia and Wisconsin.

Secretary                                                                 President

The signature on any form, endorsement, policy, declarations, jacket or application other than the signature of the President or Secretary named above is deleted and replaced by the above signatures.

IA 4338 05 11

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

Policy Number  ENP 053 39 92

This endorsement modifies insurance provided under the following:

**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**FARM COVERAGE PART**

## SCHEDULE

| Loc. Number | Bldg. Number | Protective Safeguards Symbols Applicable |
|---|---|---|
| 1 | 1 | P-1 |

Describe any "P-9":

**A.** The following is added to the:

**Commercial Property Conditions**
**Farm Property Coverage Form, General Conditions**
**Commercial Inland Marine Conditions**

**PROTECTIVE SAFEGUARDS**

**1.** As a condition of this insurance, you are required to maintain the protective devices or services listed in the **SCHEDULE** of this endorsement.

**2.** The protective safeguards to which this endorsement applies are identified by the following symbols:

**"P-1"  Automatic Sprinkler System,** including related supervisory services.

Automatic Sprinkler System means:

**a.** Any automatic fire protective or extinguishing system, including connected:

**(1)** Sprinklers and discharge nozzles;

**(2)** Ducts, pipes, valves and fittings;

**(3)** Tanks, their component parts and supports; and

**(4)** Pumps and private fire protection mains.

**b.** When supplied from an automatic fire protective system:

**(1)** Non-automatic fire protective systems; and

**(2)** Hydrants, standpipes and outlets.

**"P-2"  Automatic Fire Alarm,** protecting the entire building, that is:

**a.** Connected to a central station; or

**b.** Reporting to a public or private fire alarm station.

**"P-3"  Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the "premises" are not in actual operation.

**"P-4"  Service Contract** with a privately owned fire department providing fire protection service to the "premises".

**"P-5"  Automatic Commercial Cooking Exhaust and Extinguishing System** installed on cooking appliances and having the following components:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

a. Hood;

b. Grease removal device;

c. Duct system; and

d. Wet chemical fire extinguishing equipment.

"P-9"   The protective system described in the **SCHEDULE** of this endorsement.

**B.** The following is added to the **EXCLUSIONS** section of any Coverage Form within the Commercial Property, Farm or Commercial Inland Marine Coverage Part:

**Failure to Maintain Protective Safeguards**

We will not pay for "loss" caused by or resulting from fire, if prior to the fire, you:

1) Knew of any suspension or impairment in any protective safeguard listed in the **SCHEDULE** of this endorsement and failed to notify us of that fact; or

2) Failed to maintain in complete working order any protective safeguard listed in the **SCHEDULE** of this endorsement over which you had control.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

Date _____        Signature of Insured _____

DASH & LOVE, INC. 37-225
BALA CYNWYD, PA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

Policy Number    ENP 053 39 92

This endorsement modifies insurance provided under the following:

**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**FARM COVERAGE PART**

**SCHEDULE**

| Loc. Number | Bldg. Number | Protective Safeguards Symbols Applicable |
|:---:|:---:|:---|
| 2 | 1 | P-1 |

Describe any "P-9":

**A.** The following is added to the:

**Commercial Property Conditions**
**Farm Property Coverage Form, General Conditions**
**Commercial Inland Marine Conditions**

**PROTECTIVE SAFEGUARDS**

1. As a condition of this insurance, you are required to maintain the protective devices or services listed in the **SCHEDULE** of this endorsement.

2. The protective safeguards to which this endorsement applies are identified by the following symbols:

   **"P-1"  Automatic Sprinkler System,** including related supervisory services.

   Automatic Sprinkler System means:

   **a.** Any automatic fire protective or extinguishing system, including connected:

      **(1)** Sprinklers and discharge nozzles;

      **(2)** Ducts, pipes, valves and fittings;

      **(3)** Tanks, their component parts and supports; and

      **(4)** Pumps and private fire protection mains.

   **b.** When supplied from an automatic fire protective system:

      **(1)** Non-automatic fire protective systems; and

      **(2)** Hydrants, standpipes and outlets.

   **"P-2"  Automatic Fire Alarm,** protecting the entire building, that is:

   **a.** Connected to a central station; or

   **b.** Reporting to a public or private fire alarm station.

   **"P-3"  Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the "premises" are not in actual operation.

   **"P-4"  Service Contract** with a privately owned fire department providing fire protection service to the "premises".

   **"P-5"  Automatic Commercial Cooking Exhaust and Extinguishing System** installed on cooking appliances and having the following components:

**a.** Hood;

**b.** Grease removal device;

**c.** Duct system; and

**d.** Wet chemical fire extinguishing equipment.

**"P-9"** The protective system described in the **SCHEDULE** of this endorsement.

**B.** The following is added to the **EXCLUSIONS** section of any Coverage Form within the Commercial Property, Farm or Commercial Inland Marine Coverage Part:

**Failure to Maintain Protective Safeguards**

We will not pay for "loss" caused by or resulting from fire, if prior to the fire, you:

**1)** Knew of any suspension or impairment in any protective safeguard listed in the **SCHEDULE** of this endorsement and failed to notify us of that fact; or

**2)** Failed to maintain in complete working order any protective safeguard listed in the **SCHEDULE** of this endorsement over which you had control.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

Date _____          Signature of Insured _____

DASH & LOVE, INC. 37-225
BALA CYNWYD, PA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EFFECTIVE TIME CHANGES--REPLACEMENT OF 12 NOON

This endorsement modifies the COMMON POLICY DECLARATIONS.

To the extent that coverage in this policy replaces coverage in other policies terminating noon standard time on the inception date of this policy, coverage under this policy shall not become effective until such other coverage has terminated.

**IL 00 22 05 87**  Copyright, Insurance Services Office, Inc., 1987
Copyright, ISO Commercial Risk Services, Inc., 1987

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss.  These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

---

**Instruction to Policy Writers**

Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania.

---

# DISCLOSURE NOTICE

**THE CINCINNATI INSURANCE COMPANIES WILL CONSIDER YOUR CLAIMS HISTORY FOR PURPOSES OF DETERMINING WHETHER TO CANCEL OR REFUSE TO RENEW YOUR POLICY.**

**MI-1691-MD (5/02)**

# THE CINCINNATI CASUALTY COMPANY

### A Stock Insurance Company

## COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER:   **ENP 053 39 92**

Named Insured is the same as it appears on the Common Policy Declarations unless otherwise stated here.

**Loc.**   **(address)**
REFER TO IA904

|  |  |  |  |  | OPTIONAL COVERAGES |
|---|---|---|---|---|---|
|  | **COVERAGE PROVIDED** | | | | **Applicable only when an entry is made** |

| Item | Coverage | Limits | Coin-surance | Covered Cause Of Loss | Inflation Guard (%) | Replace-ment Cost (x) | Replace-ment Cost Incl. Stock (x) | Agreed Value (x) | Monthly Limit (fraction) | Maximum Period (X) | Extended Period (Days) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1-1 | BUSINESS PERSONAL PROPERTY | 400,000 | 80% | SPECIAL | | | X | | | | |
| 1-1 | BUSINESS INCOME W/EXTRA EXPENSE (b) | 12 MONTHS ALS SEE FA242 | | SPECIAL | | | | | | | |
| 2-1 | BUSINESS PERSONAL PROPERTY | 500,000 | 80% | SPECIAL | | | | X | | | |
| 2-1 | BUSINESS INCOME W/EXTRA EXPENSE (b) | 12 MONTHS ALS SEE FA242 | | SPECIAL | | | | | | | |

*Business Income Indemnity columns: Monthly Limit (fraction), Maximum Period (X), Extended Period (Days)*

DEDUCTIBLE: $500.00 unless otherwise stated $   **1,000**

| MORTGAGE HOLDER | |
|---|---|
| Item | Name and Address |

FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|---|---|---|
| FM101 | 05/16 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS) |
| CP9993 | 10/90 | TENTATIVE RATE |
| FA242 | 10/12 | ACTUAL LOSS SUSTAINED BUSINESS INCOME ENDORSEMENT |
| FA4013PA | 11/02 | PENNSYLVANIA CHANGES - ACTUAL CASH VALUE |
| FA4028PA | 11/05 | PENNSYLVANIA CHANGES |
| FA4098 | 01/09 | CINCIPLUS® COMMERCIAL PROPERTY POWER XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT SUMMARY OF COVERAGE LIMITS |
| FA450 | 05/16 | COMMERCIAL PROPERTY CONDITIONS |
| FA458 | 04/04 | BUSINESS INCOME CHANGES - WAITING PERIOD |
| FA258 | 05/16 | CINCIPLUS® COMMERCIAL PROPERTY POWER XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT |
| FA223 | 05/16 | WATER BACKUP DISCHARGED FROM SEWERS, DRAINS, SEPTIC OR SUMP PUMP SYSTEMS ENDORSEMENT |
| FA244 | 05/11 | EQUIPMENT BREAKDOWN COVERAGE (EXCLUDING PRODUCTION MACHINERY) |
| FA202 | 05/16 | TEMPERATURE CHANGE LOSS FORM |
| FA213 | 05/16 | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM |

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS)

**TABLE OF CONTENTS**

Begins on Page

SECTION A. COVERAGE ...........................................................................................3
1. Covered Property ...........................................................................................3
    a. Building .................................................................................................3
    b. Outdoor Signs .....................................................................................3
    c. Outdoor Fences ..................................................................................3
    d. Business Personal Property ................................................................3
2. Property Not Covered .....................................................................................4
    a. Accounts, Deeds, Money or Securities ...............................................4
    b. Animals ................................................................................................4
    c. Automobiles .........................................................................................4
    d. Contraband ..........................................................................................4
    e. Electronic Data ....................................................................................4
    f. Excavations, Grading & Backfilling .....................................................4
    g. Foundations .........................................................................................4
    h. Land, Water or Growing Crops ...........................................................4
    i. Paved Surfaces ...................................................................................4
    j. Property While Airborne or Waterborne ..............................................4
    k. Pilings or Piers....................................................................................4
    l. Property More Specifically Insured .....................................................4
    m. Retaining Walls ...................................................................................4
    n. Underground Pipes, Flues or Drains ...................................................4
    o. Valuable Papers & Records and Cost to Research...............................5
    p. Vehicles or Self-Propelled Machines ..................................................5
    q. Property While Outside of Buildings ...................................................5
3. Covered Causes of Loss .................................................................................5
    a. Covered Causes of Loss......................................................................5
    b. Exclusions ...........................................................................................5
    c. Limitations ...........................................................................................11
4. Additional Coverages .....................................................................................13
    a. Change in Temperature or Humidity ...................................................13
    b. Debris Removal...................................................................................13
    c. Fire Department Service Charge..........................................................14
    d. Fire Protection Equipment Recharge ..................................................14
    e. Inventory or Appraisal .........................................................................14
    f. Key and Lock Expense ........................................................................15
    g. Ordinance or Law ...............................................................................15
    h. Pollutant Clean Up and Removal .......................................................16
    i. Preservation of Property......................................................................16
    j. Rewards ..............................................................................................16

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

## TABLE OF CONTENTS (CONT'D)

**Begins on Page**

5.   **Coverage Extensions** ..................................................................................................16

     a.   **Accounts Receivable**.............................................................................................17

     b.   **Business Income and Extra Expense**.................................................................18

     c.   **Collapse**.................................................................................................................21

     d.   **Electronic Data**.....................................................................................................22

     e.   **Exhibitions, Fairs or Trade Shows**.....................................................................23

     f.   **Fences** ...................................................................................................................23

     g.   **Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage**............................23

     h.   **Glass**.....................................................................................................................24

     i.   **Newly Purchased, Leased or Constructed Property**.........................................25

     j.   **Nonowned Building Damage**................................................................................26

     k.   **Outdoor Property**.................................................................................................26

     l.   **Personal Effects**..................................................................................................26

     m.  **Property Off Premises**.........................................................................................27

     n.   **Signs**.....................................................................................................................27

     o.   **Trailers (Nonowned Detached)**...........................................................................27

     p.   **Transportation** .....................................................................................................27

     q.   **Utility Services** .....................................................................................................27

     r.   **Valuable Papers and Records** ............................................................................28

     s.   **Water Damage, Other Liquids, Powder or Molten Material Damage** ..............29

**SECTION B. LIMITS OF INSURANCE**.............................................................................29

**SECTION C. DEDUCTIBLE**.............................................................................................29

   1.   **Deductible Examples** ...........................................................................................30

   2.   **Glass Deductible** ..................................................................................................30

**SECTION D. LOSS CONDITIONS**...................................................................................30

   1.   **Abandonment** .......................................................................................................30

   2.   **Appraisal**...............................................................................................................30

   3.   **Duties in the Event of Loss or Damage** .............................................................30

   4.   **Loss Payment** .......................................................................................................31

   5.   **Recovered Property** .............................................................................................34

   6.   **Vacancy**.................................................................................................................34

     a.   **Description of Terms**............................................................................................34

     b.   **Vacancy Provisions**.............................................................................................34

   7.   **Valuation** ...............................................................................................................34

**SECTION E. ADDITIONAL CONDITIONS**........................................................................35

   1.   **Coinsurance** .........................................................................................................35

   2.   **Mortgage Holders** ................................................................................................36

**SECTION F. OPTIONAL COVERAGES**............................................................................36

   1.   **Agreed Value** ........................................................................................................37

   2.   **Inflation Guard** .....................................................................................................37

   3.   **Replacement Cost**................................................................................................37

**SECTION G. DEFINITIONS**.............................................................................................38

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION G. DEFINITIONS.**

## SECTION A. COVERAGE

We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

**1.** **Covered Property**

Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

**a.** **Building**

Building, means the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery and equipment;

**(b)** Building glass, including any lettering and ornamentation;

**(c)** Signs attached to a building or structure that is Covered Property;

**(d)** Awnings and canopies;

**(4)** Personal property owned by you that is used to maintain or service a covered building or its "premises", including:

**(a)** Fire extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to a covered building;

**(b)** Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the "premises", used for making additions, alterations or repairs to a covered building.

**b.** **Outdoor Signs**

Your outdoor signs permanently installed and not attached to a covered building, and located within 1,000 feet of the "premises".

**c.** **Outdoor Fences**

Your outdoor fences.

**d.** **Business Personal Property**

Your Business Personal Property consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater. Your Business Personal Property consists of the following unless otherwise specified in the Declarations or on the **BUSINESS PERSONAL PROPERTY - SEPARATION OF COVERAGE ENDORSEMENT.**

**(1)** Furniture;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** The cost of labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(7)** Leased personal property used in your business for which you have a contractual responsibility to insure. Such leased property is not considered personal property of others in your care, custody or control;

**(8)** Personal Property of Others that is in your care, custody or control or for which you are legally liable.

**(a)** This does not include personal effects owned by you, your officers, your partners, or if you are a limited liability company, your members or your managers, or your employees (including leased and temporary workers), except as provided in **5. Coverage Extensions, l. Personal Effects**;

**(b)** This does not include property of others for which you are legally liable as:

**1)** A carrier for hire; or

**2)** An arranger of transportation, including car loaders, consolidators, brokers, freight forwarders, or shipping associations; and

**(9)** Sales samples.

**2.** <u>Property Not Covered</u>

Covered Property does not include:

**a.** <u>Accounts, Deeds, Money or Securities</u>

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable,** Accounts, bills, currency, deeds, food stamps or other evidences of debt, "money", notes or "securities";

**b.** <u>Animals</u>

Animals, unless

**(1)** Owned by others and boarded by you; or

**(2)** Owned by you and covered as "stock" while inside of buildings;

and then only as provided in **3. Covered Causes of Loss, c. Limitations**.

**c.** <u>Automobiles</u>

Automobiles held for sale;

**d.** <u>Contraband</u>

Contraband, or property in the course of illegal transportation or trade;

**e.** <u>Electronic Data</u>

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data,** "Electronic data". This Paragraph **e.** does not apply to your "stock" of prepackaged software or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**f.** <u>Excavations, Grading & Backfilling</u>

The cost of excavations, grading, backfilling or filling;

**g.** <u>Foundations</u>

Foundations of buildings, structures, machinery or boilers, if their foundations are below:

**(1)** The lowest basement floor; or

**(2)** The surface of the ground, if there is no basement.

**h.** <u>Land, Water or Growing Crops</u>

Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetative roof);

**i.** <u>Paved Surfaces</u>

Bridges, roadways, walks, patios or other paved surfaces;

**j.** <u>Property While Airborne or Waterborne</u>

Personal property while airborne or waterborne;

**k.** <u>Pilings or Piers</u>

Pilings, piers, bulkheads, wharves or docks;

**l.** <u>Property More Specifically Insured</u>

Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except as provided in **G. Other Insurance** of the **COMMERCIAL PROPERTY CONDITIONS**;

**m.** <u>Retaining Walls</u>

Retaining walls that are not part of any building described in the Declarations;

**n.** <u>Underground Pipes, Flues or Drains</u>

Underground pipes, flues or drains;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**o.   Valuable Papers & Records and Cost to Research**

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records,** the cost to research, replace or restore the information on "valuable papers and records", including those which exist as "electronic data".

This does not apply to "valuable papers and records" held for sale by you.

**p.   Vehicles or Self-Propelled Machines**

Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)**  Are licensed for use on public roads; or

**(2)**  Are operated principally away from the "premises".

This paragraph does not apply to:

**(1)**  Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

**(2)**  Vehicles or self-propelled machines, other than autos, you hold for sale;

**(3)**  Rowboats or canoes out of water and located at the "premises"; or

**(4)**  Trailers, but only as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, o. Trailers (Nonowned Detached).**

**q.   Property While Outside of Buildings**

The following property while outside of buildings (except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions**):

**(1)**  Grain, hay, straw or other crops;

**(2)**  Signs, except:

**(a)**  Signs attached to a covered building or structure;

**(b)**  Signs for which a Limit of Insurance is shown in the Declarations.

**(3)**  Outdoor fences, except outdoor fences for which a Limit of Insurance is shown in the Declarations;

**(4)**  Radio antennas, television antennas or satellite dishes; including their lead-in wiring, masts, and towers; and

**(5)**  Trees, shrubs or plants (other than trees, shrubs or plants that are "stock" or part of a vegetative roof).

**3.   Covered Causes of Loss**

**a.   Covered Causes of Loss**

Covered Causes of Loss means direct "loss" unless the "loss" is excluded or limited in this Coverage Part.

**b.   Exclusions**

**(1)**  We will not pay for "loss" caused directly or indirectly by any of the following, unless otherwise provided. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**(a)   Ordinance or Law**

Except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law**, the enforcement of or compliance with any ordinance or law:

**1)**  Regulating the construction, use or repair of any building or structure; or

**2)**  Requiring the tearing down of any building or structure, including the cost of removing its debris.

This exclusion applies whether "loss" results from:

**1)**  An ordinance or law that is enforced even if the building or structure has not been damaged; or

**2)**  The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of any building or structure, or removal of its debris, following a direct "loss" to that building or structure.

**(b)   Earth Movement**

**1)**  Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**2)**  Landslide, including any earth sinking, rising or shifting related to such event;

**3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**4)** Earth sinking (other than "sinkhole collapse"), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **(b)1)** through **4)** above, results in fire or explosion, we will pay for the "loss" caused by that fire or explosion.

**5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the "loss" caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct "loss" resulting from the eruption of a volcano when the "loss" is caused by:

**a)** Airborne volcanic blast or airborne shock waves;

**b)** Ash, dust or particulate matter; or

**c)** Lava flow.

With respect to coverage for Volcanic Action, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct "loss" to the described property.

This Earth Movement exclusion applies regardless of whether any of the above, in paragraphs **1)** through **5),** is caused by an act of nature or is otherwise caused.

**(c) Governmental Action**

Seizure or destruction of property by order of governmental authority. However, we will pay for "loss" caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**(d) Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

**(e) Utility Services**

**1)** Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, q. Utility Services**, the failure of power, communication, water or other utility services supplied to the "premises", however caused, if the failure:

**a)** Originates away from the "premises"; or

**b)** Originates at the "premises", but only if such failure involves equipment used to supply the utility service to the "premises" from a source away from the "premises".

Failure of any utility service includes lack of sufficient capacity and reduction in supply. "Loss" caused by a surge of power is also excluded if the surge would not have occurred but for an event causing the failure of power.

However, if the failure or surge of power, or the failure of communication, water, wastewater removal or other utility service results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss.

Communication services include but are not limited to

service relating to Internet access or access to any electronic, cellular or satellite network.

**(f) War and Military Action**

**1)** War, including undeclared or civil war;

**2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**(g) Water**

**1)** Flood, meaning the partial or complete inundation of normally dry land areas due to:

**a)** The unusual or rapid accumulation or runoff of rain or surface waters from any source; or

**b)** Waves, tidal waters, tidal waves (including tsunami); or

**c)** Water from rivers, ponds, lakes, streams, or any other body of water that rises above, overflows from, or is not contained within its natural or man-made boundary;

and all whether driven by wind or not, including storm surge.

**2)** Mudslides or mudflows, which are caused by flooding as defined above in Paragraph **(g)1** above. Mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current;

**3)** Water that has entered and then backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment; or

**4)** Water under the ground surface pressing on, or flowing or seeping through:

**a)** Foundations, walls, floors or paved surfaces;

**b)** Basements, whether paved or not; or

**c)** Doors, windows or other openings.

**5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraphs **(g)1), 3)** or **4),** or material carried or otherwise moved by mudslide or mudflow as described in Paragraph **(g)2).**

This exclusion applies regardless of whether any of the above in Paragraphs **(g)1)** through **(g)5)** is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

However, if any of the above, as described in Paragraphs **(g)1)** through **(g)5),** results in fire, explosion or sprinkler leakage, we will pay for that portion of "loss" caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**(h) "Fungi", Wet Rot, Dry Rot, and Bacteria**

**1)** Presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria. But if "fungi", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

**2)** This exclusion does not apply:

  **a)** When "fungi", wet or dry rot or bacteria results from fire or lightning; or

  **b)** To the extent that coverage is provided in **SECTION A. COVERAGE, 5. Coverage Extensions, g. "Fungi", Wet Rot, Dry Rot and Bacteria - Limited Coverage** with respect to "loss" from a cause of loss other than fire or lightning.

Exclusions **b.(1)(a)** through **b.(1)(h)** apply whether or not the "loss" event results in widespread damage or affects a substantial area.

**(2)** We will not pay for "loss" caused by or resulting from any of the following:

**(a) Electrical Current**

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**1)** Electrical or electronic wire, device, appliance, system or network; or

**2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**1)** Electrical current, including arcing;

**2)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**3)** Pulse of electromagnetic energy; or

**4)** Electromagnetic waves or microwaves.

However, if fire results, we will pay for "loss" caused by that fire.

**(b) Delay or Loss of Use**

Delay, loss of use or loss of market.

**(c) Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**(d) Miscellaneous Causes of Loss**

**1)** Wear and tear;

**2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**3)** Smog;

**4)** Settling, cracking, shrinking or expansion;

**5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. However, if mechanical breakdown results in elevator collision, we will pay for that portion of "loss" caused by that elevator collision; or

**7)** The following causes of loss to personal property:

  **a)** Marring or scratching;

  **b)** Except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, a. Change in Temperature or Humidity** and **5. Coverage Extensions, q. Utility Services;**

    **i)** Dampness or dryness of atmosphere; and

    **ii)** Changes in or extremes of temperature.

However, if an excluded cause of loss listed in **(2)(d)1** through **7)** results in a "specified cause of "loss" or building glass breakage, we will pay for that portion of "loss" caused by that "specified cause of loss" or building glass breakage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(e)   Explosion of Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. However, if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for that portion of "loss" caused by that fire or combustion explosion. We will also pay for "loss" caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(f)   Water Seepage**

Continuous or repeated seepage or leakage of water or the presence or condensation of humidity, moisture, or vapor that occurs over a period of 14 days or more.

**(g)   Freezing of Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protection systems) caused by or resulting from freezing, unless:

1)   You did your best to maintain heat in the building or structure; or

2)   You drained the equipment and shut off the supply if the heat was not maintained.

**(h)   Dishonest or Criminal Acts**

Dishonest or criminal acts (including theft) by you, any of your partners, members (if a limited liability company), officers, managers, employees (including leased workers or temporary employees) directors, trustees, or authorized representatives; whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion applies whether or not an act occurs during the hours of operation.

This **Dishonest or Criminal Acts** exclusion does not apply to acts of destruction by your employees (including leased workers or temporary employees) or by authorized representatives; except theft by employees (including leased workers or temporary employees) is not covered.

**(i)   Voluntary Parting Under False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**(j)   Exposure to Weather**

Rain, snow, ice or sleet to personal property in the open.

**(k)   Collapse**

Collapse, including any of the following conditions of property or any part of the property:

1)   An abrupt falling down or caving in;

2)   Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

3)   Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph **(k)1)** or **2)** above.

But if collapse results in a Covered Cause of Loss at the "premises", we will pay for "loss" caused by that Covered Cause of Loss.

This exclusion **Collapse** does not apply:

1)   To the extent that coverage is provided under the **SECTION A. COVERAGE, 5. Coverage Extensions, c. Collapse**; or

2)   To collapse caused by one or more of the following:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**a)** The "specified causes of loss";

**b)** Breakage of building glass;

**c)** Weight of rain that collects on a roof; or

**d)** Weight of people or personal property.

**(l) Pollutants**

Discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" unless the discharge, dispersal, seepage, migration, release, escape or emission is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

This exclusion does not apply to "loss" to glass caused by chemicals applied to the glass.

**m) Loss or Damage to Product**

We will not pay for "loss" to Covered Property consisting of merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for "loss" caused by that Covered Cause of Loss.

**(n) Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of "loss".

**(3)** We will not pay for "loss" caused by or resulting from any of the following in Paragraphs **(3)(a)** through **(3)(c)**. However, if an excluded cause of loss that is listed in Paragraphs **(3)(a)** through **(3)(c)** results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss:

**(a) Weather Conditions**

Weather conditions, but this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(a)** through **(1)(h)** to produce the "loss".

**(b) Acts or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**(c) Defects, Errors, and Omissions**

**1)** An act, error, or omission (negligent or not) relating to:

**a)** Land use;

**b)** Design, specifications, construction, workmanship;

**c)** Planning, zoning, development, surveying, siting, grading, compaction; or

**d)** Maintenance, installation, renovation, repair, or remodeling

of part or all of any property on or off the "premises";

**2)** A defect, weakness, inadequacy, fault, or unsoundness in materials used in construction or repair of part or all of any property on or off the "premises"; or

**3)** The cost to make good any error in design.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(4) Special Exclusions**

The Special Exclusions apply only to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense**; and if attached to this policy, the following coverage forms: **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM, BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM,** and **EXTRA EXPENSE COVERAGE FORM.**

We will not pay for:

**(a)** Any "loss" caused by or resulting from:

**1)** Damage or destruction of "finished stock"; or

**2)** The time required to reproduce "finished stock".

This Exclusion **(4)(a)** does not apply to Extra Expense.

**(b)** Any "loss" caused by or resulting from damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(c)** Any increase of "loss" caused by or resulting from:

**1)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**2)** Suspension, lapse or cancellation of any license, lease or contract. However, if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such "loss" that affects your "Business Income" during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period of Indemnity Optional Coverage or any variation of these.

**(d)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(e)** Any other indirect "loss".

**c.** <u>Limitations</u>

The following limitations apply to all policy forms and endorsements shown on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS**, unless otherwise stated:

**(1) Limitations - Various Types of Property**

We will not pay for "loss" to property as described and limited in this section. In addition, we will not pay for any "loss" that is a consequence of "loss" as described and limited in this section.

**(a) Steam Apparatus**

Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for "loss" to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(b) Hot Water Boilers**

Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**(c) Building Interiors**

The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**2)** The "loss" is caused by or results from thawing of

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

snow, sleet or ice on the building or structure.

**(d) Theft of Building Materials**

Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

**1)** Building materials and supplies held for sale by you; or

**2)** "Business Income" coverage or Extra Expense coverage.

**(e) Missing Property**

Property that is missing, where the only evidence of the "loss" is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**(f) Transferred Property**

Property that has been transferred to a person or to a place outside the "premises" on the basis of unauthorized instructions.

**(g) Vegetative Roofs**

Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**2)** Changes in or extremes of temperature;

**3)** Disease;

**4)** Frost or hail; or

**5)** Rain, snow, ice or sleet.

**(2) Limitations - Various Property for Specified Causes**

We will not pay for "loss" to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**(a)** Animals, and then only if they are killed or their destruction is deemed necessary.

**(b)** Contractors equipment, machinery and tools owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

**1)** If the property is located on or within 1,000 feet of the "premises"; or

**2)** To Business Income coverage or to Extra Expense coverage.

**(3) Limitation - Personal Property Theft**

This Limitation does not apply to "Business Income" coverage or to Extra Expense coverage. For each category described in Paragraph **c.(3)(a)** through **(3)(d)** below, the most we will pay for "loss" in any one occurrence of theft to all property in that category, regardless of the types or number of articles for that category that are lost or damaged in that occurrence, are the following special limits:

**(a)** $2,500 for Furs, fur garments and garments trimmed with fur.

**(b)** $2,500 for Jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limitation does not apply to jewelry and watches worth $100 or less per item.

**(c)** $2,500 for Patterns, dies, molds and forms.

**(d)** $250 for Stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are not additional Limits of Insurance.

**(4) Limitation - System or Appliance Defects**

**(a)** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes; and

**(b)** We will not pay to replace the substance that escapes as described in Paragraph **c.(4)(a)** above.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage results in discharge of any substance from an automatic fire protection system, or is directly caused by freezing.

However, this Limitation **c.(4)(a)** does not apply to "Business Income" Coverage or to Extra Expense Coverage.

4. **Additional Coverages**

Unless stated otherwise, **SECTION C. DEDUCTIBLE** does not apply to Paragraph **4. Additional Coverages.**

Unless stated otherwise, these Paragraph **4. Additional Coverages** apply on a per location basis.

a. **Change in Temperature or Humidity**

We will pay for direct "loss" to your covered Business Personal Property caused by a change in temperature or humidity or contamination by refrigerant resulting from damage by a Covered Cause of Loss to equipment used for refrigerating, cooling, humidifying, dehumidifying, air conditioning, heating, generating or converting power (including their connections and supply or transmission lines and pipes) when located on the "premises".

This Coverage is included within the Limits of Insurance shown in the Declarations.

b. **Debris Removal**

(1) Subject to Paragraphs **b.(2)**, **(3)** and **(4)** of this Additional Coverage, we will pay your expense to remove debris of Covered Property and other debris that is on the "premises", when such debris is caused by or results from a Covered Cause of Loss that occurs during the "coverage term". The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct "loss".

(2) Debris Removal does not apply to costs to:

(a) Extract "pollutants" from land or water;

(b) Remove, restore or replace polluted land or water;

(c) Remove debris of property of yours that is not insured under this Coverage Part, or property in your possession that is not Covered Property;

(d) Remove debris of property owned by or leased to the landlord of the building where your "premises" are located, unless you have a contractual responsibility to insure such property and it is insured under this Coverage Part;

(e) Remove any property that is Property Not Covered, including property addressed under **5. Coverage Extensions, k. Outdoor Property**.

(f) Remove property of others of a type that would not be Covered Property under this Coverage Part;

(g) Remove deposits of mud or earth from the grounds of the "premises".

(3) Subject to the exceptions in Paragraph **b.(4)** below, the following provisions apply:

(a) The most we will pay for the total of direct "loss" plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained "loss".

(b) Subject to Paragraph **b.(3)(a)**, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct "loss" to the Covered Property that has sustained "loss".

(4) We will pay up to an additional $10,000 for debris removal expense for each "premises", in any one occurrence of direct "loss" to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct "loss" exceeds the Limit of Insurance on the Covered Property that has sustained "loss".

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct "loss" to the Covered Property that has sustained "loss".

Therefore, if Paragraph **b.(4)(a)** and/or **(4)(b)** apply, our total payment for direct

"loss" and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained "loss", plus $10,000.

**(5) Examples**

The following examples assume that there is no coinsurance penalty.

**Example #1**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of "Loss" | $50,000 |
| Amount of "Loss" Payable ($50,000 - $500) | $49,500 |
| Debris Removal Expense | $10,000 |
| Debris Removal Expense Payable ($10,000 is 20% of $50,000) | $10,000 |

The debris removal expense is less than 25% of the sum of the "loss" payable plus the deductible. The sum of the "loss" payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example #2**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of "Loss" | $80,000 |
| Amount of "Loss" Payable ($80,000 - $500) | $79,500 |
| Debris Removal Expense | $30,000 |
| Debris Removal Expense Payable | |
|    Basic Amount | $10,500 |
|    Additional Amount | $10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the "loss" payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($30,000) exceeds 25% of the "loss" payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the "loss" payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph **(4)**. Thus the total payable for debris removal ex-

pense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**c.  Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $5,000 in any one occurrence for your liability, which is determined prior to the direct "loss", for fire department service charges:

**(1)** Assumed by contract or agreement; or

**(2)** Required by local ordinance.

Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

**d.  Fire Protection Equipment Recharge**

**(1)** We will pay for the expenses you incur to recharge your automatic fire suppression system or portable fire extinguishers when the equipment is discharged:

  **(a)** To combat a covered fire to which this insurance applies;

  **(b)** As a result of another covered Cause of Loss other than fire; or

  **(c)** As a result of an accidental discharge.

**(2)** We will not pay your expenses to recharge fire protection equipment as a result of a discharge during testing or installation.

**(3)** If it is less expensive to do so, we will pay your costs to replace your automatic fire suppression system or portable fire extinguishers rather than recharge that equipment.

The most we will pay in any one occurrence under this Additional Coverage is $25,000. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

**e.  Inventory or Appraisal**

**(1)** We will pay the necessary expenses you incur to prepare claim information as required by this Coverage Part. Expenses must result from:

  **(a)** Taking inventories;

  **(b)** Making appraisals; and

**(c)** Preparing a statement of loss and other supporting exhibits.

**(2)** We will not pay for any expenses:

**(a)** Incurred to prove that "loss" is covered;

**(b)** Incurred under **SECTION D. LOSS CONDITIONS, 2. Appraisal;**

**(c)** Incurred for examinations under oath;

**(d)** Billed by and payable to independent or public adjusters; or

**(e)** To prepare claims not covered by this Coverage Part.

The most we will pay for any one occurrence under this Additional Coverage is $10,000. This Coverage is in addition to the shown in the Declarations.

**f.** <u>Key and Lock Expense</u>

**(1)** If a key or master key is lost, stolen, or damaged, we will pay for:

**(a)** The actual expense of the new keys; and

**(b)** The adjustment of locks to accept new keys; or

**(c)** If required, new locks, including the expense of their installation;

but only for locks at buildings or structures covered by this Coverage Part.

**(2)** This Coverage does not apply to keys that were given to former employees.

The most we will pay in any one occurrence under this Additional Coverage is Limit of Insurance $1,000. This Coverage is in addition to the Limit of Insurance shown in the Declarations.

**g.** <u>Ordinance or Law</u>

**(1)** If a covered building or structure sustains direct "loss" from a Covered Cause of Loss, resulting in the enforcement of or compliance with an ordinance or law that is in force at the time of "loss" and regulates the demolition, construction or repair of buildings or structures, or establishes zoning or land use requirements at the "premises", then subject to **SECTION D, LOSS CONDITIONS, 4. Loss Payment,** we will pay:

**(a)** **Loss of Use of Undamaged Parts of Buildings**

The costs you incur to rebuild at the same "premises" any undamaged portion of your building or structure caused by enforcement of or compliance with an ordinance or law requiring demolition of undamaged parts of the same building or structure. We will only pay the costs to satisfy the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered.

**(b)** **Demolition Costs**

The costs you incur to demolish and clear the site of undamaged parts of the same building or structure as a result of Paragraph g.(1)(a) above.

**(c)** **Increased Costs of Construction**

**1)** For buildings or structures to which **SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies, the increased costs to comply with the minimum standards of an ordinance or law to:

**a)** Repair or reconstruct damaged portions of that building or structure; and

**b)** Reconstruct or remodel undamaged portions of that building or structure whether or not demolition is required;

However, this increased cost of construction applies only if the building or structure is repaired, reconstructed or remodeled and is intended for occupancy similar to the building or structure it replaces, unless such occupancy is not permitted by zoning or land use ordinance or law.

**2)** For this Paragraph **g.(1)(c)** only, the increased costs to repair or reconstruct the following:

**a)** The cost of excavations, grading, backfilling and filling;

**b)** Foundation of the building;

**c)** Pilings;

**d)** Underground pipes, flues and drains.

The items listed in Paragraphs **g.2)a)** through **g.2)d)** above are deleted from **SECTION A. COVERAGE, 2. Property Not Covered**;

**(2)** We will not pay for:

**(a)** Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria; or

**(b)** The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

**(3)** We will not pay for "loss" due to any ordinance or law that:

**(a)** You were required to comply with before the "loss", even if the building or structure was undamaged; and

**(b)** With which you failed to comply.

**(4)** The terms of this Additional Coverage apply separately to each building or structure covered by this Coverage Part.

The most we will pay under this Additional Coverage is $10,000 per building. This is in addition to the Limit of Insurance shown in the Declarations for the building suffering "loss".

**h.** **Pollutant Clean Up and Removal**

We will pay your expenses to extract "pollutants" from land or water at the "premises" if the discharge, dispersal, seepage,

migration, release, escape or emission of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the "coverage term". The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each "premises" is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss during each "coverage term". This Coverage is in addition to the Limit of Insurance shown in the Declarations.

**i.** **Preservation of Property**

If it is necessary to move Covered Property from the "premises" to preserve it from imminent "loss" by a Covered Cause of Loss, we will pay for any direct "loss" to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the "loss" occurs within 60 days after the property is first moved.

This Coverage is included within Limit of Insurance shown in the Declarations for such Covered Property.

**j.** **Rewards**

We will pay to provide a reward for information that leads to a conviction for arson, theft, vandalism, or burglary. The conviction must involve a covered "loss" caused by arson, theft, vandalism, or burglary.

The most we will pay for "loss" in any one occurrence under this Additional Coverage is $10,000. This Coverage is in addition to the Limit of Insurance shown in the Declarations.

**5.** **Coverage Extensions**

Unless amended within a particular Coverage Extension, each Extension applies to property located in or on the building described in the Declarations or in the open (or in a vehicle or portable storage unit) within 1,000 feet of the "premises".

The limits applicable to the Coverage Extensions are in addition to the Limit of Insurance shown in the Property Declarations. Limits of Insurance specified in these Extensions apply per location unless stated otherwise.

**SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**, does not apply to these Coverage Extensions.

a. **Accounts Receivable**

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

(1) When you sustain direct "loss" to your accounts receivable records caused by a Covered Cause of Loss, we will pay:

(a) All amounts due from your customers that you are unable to collect;

(b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

(c) Collection expenses in excess of your normal collection expenses that are made necessary by the "loss"; and

(d) Other reasonable expenses that you incur to re-establish your records of accounts receivable.

(2) Coverage does not apply to:

(a) Records of accounts receivable in storage away from the "premises"; or

(b) Contraband, or property in the course of illegal transportation or trade.

(3) We will extend coverage to include:

(a) Removal

If you give us written notice within 30 days of removal of your records of accounts receivable because of imminent danger of direct "loss" from a Covered Cause of Loss, we will pay for "loss" while they are:

1) At a safe place away from your "premises"; or

2) Being taken to and returned from that place.

This Removal coverage is included within the Limit of Insurance applicable to this Coverage Extension.

(b) Away From Your Premises

The most we will pay in any one occurrence is $5,000, regardless of the number of locations, for "loss" caused by a Covered Cause of Loss to Accounts Receivable while they are away from your "premises".

This Away From Premises Limit is in addition to the Limit of Insurance applicable to this Coverage Extension.

(4) **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension, except as follows:

(a) **Exclusion (1)(c) Governmental Action;**

(b) **Exclusion (1)(d) Nuclear Hazard;**

(c) **Exclusion (1)(f) War and Military Action.**

(5) In addition to Paragraph **a.(4)** of this Coverage Extension, we will not pay for "loss" resulting from any of the following:

(a) Dishonest or criminal acts by:

1) You, your partners, employees, directors, trustees or authorized representatives;

2) A manager or a member if you are a limited liability company;

3) Anyone else with an interest in the records of accounts receivable, or their employees or authorized representatives; or

4) Anyone else entrusted with the records of accounts receivable for any purpose.

This Paragraph **a.(5)(a)** applies whether or not such persons are acting alone or in collusion with other persons or such act occurs during the hours of employment.

However, this Paragraph **a.(5)(a)** does not apply to dishonest acts of a carrier for hire or to acts of destruction by your employees. However, theft by employees is still not covered.

(b) Alteration, falsification, concealment or destruction of records of

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**(c)** Bookkeeping, accounting or billing errors or omissions.

**(d)** Electrical or magnetic injury, disturbance or erasure of "electronic data" that is caused by or results from:

**1)** Programming errors or faulty machine instructions;

**2)** Faulty installation or maintenance of data processing equipment or component parts;

**3)** An occurrence that took place more than 100 feet from your "premises"; or

**4)** Interruption of electrical power supply, power surge, blackout or brownout if the cause of such occurrence took place more than 100 feet from your "premises".

But we will pay for direct "loss" caused by lightning.

**(e)** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**(f)** A "loss" that requires any audit of records or any inventory computation to prove its factual existence.

**(6) Determination of Receivables:**

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of direct "loss", the following method will be used:

**1)** Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the direct "loss" occurs; and

**2)** Adjust that total for any normal fluctuations in the amount of accounts receiv-

able for the month in which the direct "loss" occurred or for any demonstrated variance from the average for that month.

**(b)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**1)** The amount of the accounts for which there is no direct "loss"; and

**2)** The amount of the accounts that you are able to re-establish or collect; and

**3)** An amount to allow for probable bad debts that you are normally unable to collect; and

**4)** All unearned interest and service charges.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $25,000.

**b.** <u>**Business Income and Extra Expense**</u>

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

**(1) Business Income**

We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss. With respect to "loss" to personal property in the open or personal property in a vehicle or portable storage unit, the "premises" include the area within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

With respect to the requirements of the preceding paragraph, if you are a tenant and occupy only part of the site at which the "premises" are located, for the purpose of this Coverage Extension only, your "premises" is the portion of the building that you rent, lease or occupy, including:

**(a)** Any area within the building or on the site at which the "premises" are located if that area ser-

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

vices or is used to gain access to the "premises"; and

**(b)** Your personal property in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

**(2) Extra Expense**

**(a)** We will pay Extra Expense you sustain during the "period of restoration". Extra Expense means necessary expenses you sustain (as described in Paragraphs **(2)(b), (c)** and **(d)**) during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

**(b)** If these expenses reduce the otherwise payable "Business Income" "loss", we will pay expenses (other than the expense to repair or replace property as described in Paragraph **(2)(c)**) to:

**1)** Avoid or minimize the "suspension" of business and to continue "operations" either:

**a)** At the "premises"; or

**b)** At replacement "premises" or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location; or

**2)** Minimize the "suspension" of business if you cannot continue "operations".

**(c)** We will also pay expenses to:

**1)** Repair or replace property; or

**2)** Research, replace or restore the lost information on damaged "valuable papers and records";

but only to the extent this payment reduces the otherwise payable "Business Income" "loss". If any property obtained for temporary use during the "period of restoration" remains after the resumption of normal "operations", the amount we will pay under this Coverage will be reduced by the salvage value of that property.

**(d)** Extra Expense does not apply to "loss" to Covered Property as described in the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**.

**(3) Civil Authority**

When a Covered Cause of Loss causes damage to property other than Covered Property at a "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

**(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

**(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

This Civil Authority coverage for "Business Income" will begin immediately after the time of that action and will apply for a period of up to 30 days from the date of that action.

This Civil Authority coverage for Extra Expense will begin immediately after the time of that action and will end:

**1)** 30 consecutive days after the time of that action; or

**2)** When your "Business Income" coverage ends;

whichever is later.

**(4) Alterations and New Buildings**

We will pay for the actual loss of "Business Income" you sustain and Extra Expense you incur due to direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss to:

**(a)** New buildings or structures, whether complete or under construction;

**(b)** Alterations or additions to existing buildings or structures; and

**(c)** Machinery, equipment, supplies or building materials located on or within 1,000 feet of the "premises" and:

**1)** Used in the construction, alterations or additions; or

**2)** Incidental to the occupancy of new buildings.

If such direct "loss" delays the start of "operations", the "period of restoration" for "Business Income" Coverage will begin on the date "operations" would have begun if the direct "loss" had not occurred.

**(5) Newly Purchased or Leased Locations**

We will pay the actual loss of "Business Income" you sustain and Extra Expense you incur due to direct "loss" to Covered Property at any location you purchase or lease caused by or resulting from a Covered Cause of Loss. This coverage for the Newly Purchased or Leased Locations will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** You report values to us;

**(c)** 90 days pass from the date you acquire or begin to construct the Covered Property.

**(6) Extended Business Income**

**(a)** For "Business Income" Other Than "Rental Value", if the necessary "suspension" of your "operations" produces a "Business Income" or Extra Expense "loss" payable under this Coverage Part, we will pay for the actual loss of "Business Income" you sustain and Extra Expense you incur during the period that:

**1)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**2)** Ends on the earlier of:

**a)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct "loss" had occurred; or

**b)** 60 consecutive days after the date determined in **b.(6)(a)1)** above.

However, Extended Business Income does not apply to loss of "Business Income" sustained or Extra Expense incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Business Income" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(b)** For "Rental Value", if the necessary "suspension" of your "operations" produces a "Rental Value" "loss" payable under this Coverage Part, we will pay for the actual loss of "Rental Value" you incur during the period that:

**1)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**2)** Ends on the earlier of:

**a)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct "loss" had occurred; or

**b)** 60 consecutive days after the date determined in **b.(6)(b)1)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of

Loss in the area where the "premises" are located.

Loss of "Rental Value" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(7) Interruption of Computer Operations**

(a) Subject to all provisions of this Coverage Extension, you may extend the insurance that applies to "Business Income" and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" as described in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data.**

(b) Paragraph **b.(7)(a)** does not apply to "loss" sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in Paragraph **b.(7)(c)** has not been exhausted.

(c) The most we will pay under Paragraph **b.(7)** of this Coverage Extension is $2,500 for all "loss" sustained and expense incurred in the "coverage term", regardless of the number of interruptions or the number of "premises" or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for subsequent interruptions in that "coverage term". A balance remaining at the end of a "coverage term" does not carry over to the next "coverage term". With respect to an interruption that begins in a "coverage term" and continues or results in additional "loss" or expense in a subsequent "coverage term", all "loss" and expense is deemed to be sustained in the "coverage term" in which the interruption began.

This $2,500 coverage for Interruption of Computer Operations does not increase the Limit of Insurance provided in this Coverage Extension.

The most we will pay for "loss" in any one occurrence under this "Business Income" and Extra Expense Coverage Extension is $25,000.

c. **Collapse**

The coverage provided under this Coverage Extension applies only to an abrupt collapse as described and limited in Paragraphs **c.(1)** through **c.(7)** below.

(1) For the purpose of this Coverage Extension only, abrupt collapse means an abrupt falling down or caving in of a building or structure or any part of a building or structure with the result that the building or structure or part of the building or structure cannot be occupied for its intended purpose.

(2) We will pay for direct "loss" to Covered Property, caused by abrupt collapse of a building or structure or any part of a building or structure insured under this Coverage Part, or that contains Covered property insured under this Coverage Part, if such collapse is caused by one or more of the following:

(a) Building or structure decay that is hidden from view, unless the presence of such decay is known or should reasonably have been known to an insured prior to collapse;

(b) Insect or vermin damage that is hidden from view, unless the presence of such damage is known or should reasonably have been known to an insured prior to collapse;

(c) Use of defective material or methods in construction, remodeling, or renovation if the abrupt collapse occurs during the course of the construction, remodeling, or renovation.

(d) Use of defective materials or methods in construction, remodeling, or renovation if the abrupt collapse occurs after construction, remodeling, or renovation is complete but only if the collapse is caused in part by:

1) A cause of loss listed in Paragraph **c.(2)(a)** or **c.(2)(b)** of this Coverage Extension;

2) One or more of the "specified causes of loss";

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

3) Breakage of building glass;

4) Weight of people or personal property; or

5) Weight of rain that collects on a roof.

**(3)** This Coverage Extension does not apply to:

**(a)** A building or structure or any part of a building or structure that is in danger of falling down or caving in;

**(b)** A part of a building or structure that is standing, even if it has separated from another part of the building or structure; or

**(c)** A building or structure that is standing or any part of a building or structure that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(4)** With respect to the following property:

**(a)** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

**(b)** Awnings, gutters and downspouts;

**(c)** Yard fixtures;

**(d)** Outdoor swimming pools;

**(e)** Fences;

**(f)** Piers, wharves and docks;

**(g)** Beach or diving platforms; including their appurtenances;

**(h)** Retaining walls; and

**(i)** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in Paragraph **c.(2)(a)** through **c.(2)(d)**, we will pay for "loss" to that property only if:

**(a)** Such "loss" is a direct result of the abrupt collapse of a building or structure insured under this Coverage Part; and

**(b)** The property is Covered Property under this Coverage Part.

**(5)** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building or structure, we will pay for direct "loss" to Covered Property caused by such collapse of personal property only if:

**(a)** The collapse of personal property was caused by a Cause of Loss listed in **c.(2)(a)** through **c.(2)(d)** of this Coverage Extension;

**(b)** The personal property that collapses is inside a building; and

**(c)** The property that collapses is not of a kind listed in Paragraph **c.(4)** above of this Coverage Extension, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **c.(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**(6)** This Coverage Extension does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(7)** This Coverage Extension shall not increase the Limit of Insurance provided in this Coverage Part.

**(8)** The term Covered Cause of Loss includes Collapse as described and limited in Paragraphs **c.(1)** through **c.(7)**.

**d.** **Electronic Data**

**(1)** This Coverage Extension does not apply to your "stock" of prepackaged software, or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** We will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss that applies to **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property.** To the extent that "electronic data" is not replaced or restored, the "loss" will be valued at the cost of replacement of the me-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

dia on which the "electronic data" was stored with blank media of substantially identical type.

**(3)** For the purposes of this Coverage Extension only, Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, that is designed to damage or destroy any part of the system or disrupt its normal operation. However, there is no coverage for "loss" caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system or "electronic data".

**(4)** The most we will pay for all direct "loss" under this Coverage Extension, regardless of the number of "premises" or computer systems involved, is $2,500. This limit is the most we will pay for the total of all direct "loss" arising out of all occurrences that take place in the "coverage term". If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent "loss" sustained in the "coverage term". A balance remaining in a "coverage term" does not carry over to the next "coverage term". With respect to an occurrence which begins in the "coverage term" and continues or results in additional "loss" in a subsequent "coverage term", all "loss" is deemed to be sustained in the "coverage term" in which the occurrence began.

**e.** **Exhibitions, Fairs or Trade Shows**

We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered property of others, while it is located at exhibitions, fairs or trade shows. This Coverage Extension does not apply while Covered Property is in transit to or from the exhibition, fair or trade show.

The most we will pay for "loss" in any one occurrence is $10,000.

The Limit of Insurance provided under this Coverage Extension does not apply per location.

**f.** **Fences**

We will pay for direct "loss" caused by a Covered Cause of Loss to your outdoor fences that are located within 1,000 feet of the "premises" and not otherwise insured as Covered Property in this Coverage Part.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

**g.** **Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage**

**(1)** The coverage described in Paragraphs **g.(2)** and **g.(3)** of this Coverage Extension only apply when the "fungi", wet or dry rot or bacteria is the result of a Covered Cause of Loss that occurs during the "coverage term" and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

**(2)** We will pay for "loss" by "fungi", wet or dry rot or bacteria. As used in this Coverage Extension, the term "loss" means:

**(a)** Direct "loss" to Covered Property caused by "fungi", wet or dry rot or bacteria, including the cost of removal of the "fungi", wet or dry rot or bacteria;

**(b)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet or dry rot or bacteria; and

**(c)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet or dry rot or bacteria are present.

**(3)** For the coverage described under Paragraph **g.(2)** of this Coverage Extension, the most we will pay for "loss", regardless of the number of claims, is $15,000. This limit is the most we will pay for the total of all "loss" arising out of all occurrences that take place in the "coverage term". With respect to a particular occurrence of "loss" which results in "fungi", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungi", wet or dry rot or bacteria continues to be pre-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

sent or active, or recurs, in a subsequent "coverage term".

**(4)** The coverage provided under this Coverage Extension does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in "loss" by "fungi", wet or dry rot or bacteria, and other "loss", we will not pay more, for the total of all "loss" than the applicable Limit of Insurance on the affected Covered Property.

If there is covered "loss" to Covered Property, not caused by "fungi", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Coverage Extension, except to the extent that "fungi", wet or dry rot or bacteria causes an increase in the "loss". Any such increase in the "loss" will be subject to the terms of this Coverage Extension.

**(5)** The terms of this Coverage Extension do not increase or reduce the coverage provided under:

**(a)** **SECTION A. COVERAGE, 5. Coverage Extensions, c. Collapse;**

**(b)** **SECTION A. COVERAGE, 5. Coverage Extensions, s. Water, Other Liquids, Powder or Molten Material Damage**

**(6)** The following **(6)(a)** or **(6)(b)** apply only if "Business Income", "Rental Value", or Extra Expense Coverage applies to the "premises" and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable "Business Income", "Rental Value", or Extra Expense Coverage.

**(a)** If the "loss" which resulted in "fungi", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to "loss" to property caused by "fungi", wet or dry rot or bacteria, then our payment under "Business Income" and/or Extra Expense is limited to the amount of "loss" and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**(b)** If a covered "suspension" of "operations" was caused by "loss" other than "fungi", wet or dry rot or bacteria but remedia-

tion of "fungi", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for "loss" and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**(7)** This Coverage Extension does not apply to lawns, trees, plants or shrubs that are part of any vegetative roof.

**h.** **Glass**

**(1)** If a Covered Cause of Loss occurs to building glass that is Covered Property, we will also pay necessary expenses you incur to:

**(a)** Put up temporary plates or board up openings if repair or replacement of damaged glass is delayed;

**(b)** Repair or replace encasing frames;

**(c)** Remove or replace obstructions (except expenses to remove or replace window displays); and

**(d)** Repair or replace alarm tapes.

**(2)** If you are a tenant at a covered "premises" and:

**(a)** The building you occupy is not Covered Property; and

**(b)** You are legally liable for direct "loss" to the building glass in that building;

such building glass, for the purposes of this Paragraph **h.(2)**, is Covered Property. The most we will pay for "loss" in any one occurrence is $5,000. This building glass is subject to the building deductible as described in **SECTION C. DEDUCTIBLE.**

**(3)** For the purposes of this Coverage Extension only, **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply except as follows:

**(a)** **Exclusion (1)(b) Earth Movement;**

**(b)** **Exclusion (1)(c) Governmental Action;**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(c)** Exclusion (1)(d) Nuclear Hazard;

**(d)** Exclusion (1)(f) War and Military Action;

**(e)** Exclusion (2)(d)1 Wear and tear; and

**(f)** As listed in **Exclusion (2)(d)2**: Rust or other corrosion, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

**i.** **Newly Purchased, Leased or Constructed Property**

**(1)** **Buildings**

If buildings are Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to:

**(a)** Your new buildings or additions while being built on the "premises";

**(b)** Buildings you newly purchase or become newly required to insure by written contract that are:

**1)** Intended for use by you as a warehouse; or

**2)** Similarly used by you as buildings insured under this Coverage Part.

The most we will pay for "loss" in any one occurrence to a building under this Coverage Extension is 1,000,000 for each building.

**(2)** **Business Personal Property**

**(a)** If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to business personal property you newly purchase or are required to insure by written contract:

**1)** While located at buildings described in Paragraph **a.(1)** of this Coverage Extension; or

**2)** While located in a leased building or space therein that you are not required to insure. Such lease must be for a period of 12 consecutive months or longer.

**(b)** Paragraph **a.(2)(a)** of this Coverage Extension does not apply to:

**1)** Any business personal property covered under **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, e. Exhibitions, Fairs, or Trade Shows** or **m. Property Off Premises;**

**2)** Any business personal property that is covered under **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, p. Transportation** or is otherwise considered to be in-transit to or from a "premises".

**3)** Business personal property of others that is temporarily in your possession in the course of installing or performing work on such property, or temporarily in your possession in the course of your manufacturing or wholesaling activities.

The most we will pay for "loss" in any one occurrence to your Business Personal Property under this Coverage Extension is $500,000 at each building.

**(3)** **Period of Coverage**

Coverage provided under this Coverage Extension will end when any of the following first occurs:

**(a)** This policy expires,

**(b)** For buildings described in Paragraph **(1)(a)** of this Coverage Extension, 90 days pass from the date you begin construction on that part of the building that would qualify as Covered Property;

**(c)** For business property described in Paragraph **(1)(b)** and Paragraph **(2)(a)1),** 90 days after your purchase or lease;

**(d)** For business personal property described in Paragraph **(2)(a)2),** 90 days from the effective date

of the lease of the building space in the building; or

**(e)** You report values to us.

We will charge you additional premium for values reported from the date you lease or purchase the property, or begin construction on that part of the building that would qualify as Covered Property.

**j.** **Nonowned Building Damage**

If you are a tenant at a covered "premises" and:

**(1)** The building you occupy is not Covered Property; and

**(2)** You are legally liable for direct "loss" to that building;

We will pay for direct "loss" to that building caused by burglary, robbery, theft or attempted theft.

This Coverage Extension does not apply to:

**(1)** Glass, including lettering and ornamentation, and also necessary:

   **(a)** Repair or replacement of encasing frames or alarm tapes; and

   **(b)** Expenses incurred to board up openings or remove or replace obstruction.

**(2)** Building materials and equipment removed from the "premises".

This Coverage Extension does not apply if you have purchased other insurance in your name on the building you occupy as required by the lease.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $25,000.

**k.** **Outdoor Property**

We will pay for direct "loss" caused by a Covered Cause of Loss to the following types of your Covered Property:

**(1)** Radio antennas, television antennas or satellite dishes (including their lead-in wiring, masts and towers);

**(2)** Trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or part of a vegetative roof), including debris removal ; and

**(3)** If you are a tenant, to your awnings that are attached to a building you occupy;

but only if caused by or resulting from any of the following causes of loss if they are included as Covered Causes of Loss under this Coverage Part:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion;

**(5)** Aircraft; or

**(6)** Falling objects.

We will pay for the debris removal expenses of the above type property that are not your Covered Property if such debris is on your "premises" due to the Covered Causes of Loss described in this Coverage Extension. If you are a tenant, we do not pay debris removal expenses for trees, plants or shrubs owned by the landlord or owner of the building you occupy.

No other coverage for debris removal expenses provided in this Coverage Part applies to this Outdoor Property Coverage Extension.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000, but not more than $1,000 for any one tree, shrub or plant.

**l.** **Personal Effects**

If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to personal effects owned by:

**(1)** You, your officers, or your partners, or if you are a limited liability company, your members or your managers; or

**(2)** Your employees (including temporary and leased employees), including tools owned by your employees that are used in your business. However, employee tools are not covered for theft.

This Coverage Extension does not apply to "money" or "securities".

If theft is included as a Covered Cause of Loss under this Coverage Part, then this Coverage Extension has a $500 per occurrence limitation for direct "loss" by theft.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $10,000.

**m.** **Property Off Premises**

**(1)** We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered personal property of others, while it is away from the "premises", if it is:

**(a)** Temporarily at a location you do not own, lease or operate; or

**(b)** In storage at a location you lease, provided the lease was executed for the first time after the beginning of the current "coverage term".

**(2)** This Coverage Extension does not apply to Covered Property at exhibitions, fairs, trade show, or in transit.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $10,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

**n.** **Signs**

We will pay for direct "loss" caused by a Covered Cause of Loss, including debris removal expense, to signs not otherwise insured by this Coverage Part.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

**o.** **Trailers (Nonowned Detached)**

**(1)** If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to trailers that you do not own, provided that:

**(a)** The trailer is used in your business;

**(b)** The trailer is temporarily in your care, custody or control at the "premises"; and

**(c)** You have a contractual responsibility to pay for "loss" to the trailer.

**(2)** We will not pay for any direct "loss" that occurs:

**(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

**(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** This insurance is excess over the amount due, whether you can collect on it or not, from any other insurance covering such property.

**(4)** This Coverage Extension does not apply to any property inside or on the trailer.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

**p.** **Transportation**

We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered personal property of others while it is in or on a vehicle, including loading and unloading of the property.

The most we will pay for "loss" in any one occurrence is $10,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

**q.** **Utility Services**

We will pay for:

**(1)** Direct "loss" to Covered Property at your "premises" except for direct "loss" resulting from the partial or complete failure of Wastewater Removal Services; and

**(2)** Loss of "Business Income" you sustain and Extra Expenses you incur as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense;**

caused by or resulting from the partial or complete failure of utility services to the "premises".

The partial or complete failure of the utility services listed below must be caused by direct "loss" caused by a Covered Cause of Loss to the following property:

**(1)** Power Supply Property, meaning the following types of property supplying

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

electricity, steam or natural gas to the "premises":

**(a)** Utility generating plants;

**(b)** Switching stations;

**(c)** Substations;

**(d)** Transformers; and

**(e)** Transmission, distribution, service, or similar lines, excluding all such overhead lines of any type.

**(2)** Water Supply Property, meaning the following types of property supplying water to the "premises":

**(a)** Pumping stations; and

**(b)** Water mains.

**(3)** Wastewater Removal Property, meaning a utility system for removing wastewater and sewage from the "premises", other than a system designed primarily for draining storm water. The utility property includes sewer mains, pumping stations and similar equipment for moving the effluent to a holding, treatment or disposal facility, and includes such facilities. Coverage under this Coverage Extension does not apply to interruption in service caused by or resulting from a discharge of water or sewage due to heavy rainfall or flooding.

**(4)** Communication Supply Property, meaning property supplying communication services, including service relating to Internet access or access to any electronic, cellular or satellite network; telephone, radio, microwave or television services to the "premises", such as:

**(a)** Communication transmission, distribution, service or similar lines, including fiber optic lines, excluding all such overhead lines of any type;

**(b)** Coaxial cables; and

**(c)** Microwave radio relays, excluding satellites.

This Coverage Extension does not apply to "loss" to "electronic data", including destruction or corruption of "electronic data".

The most we will pay for all direct "loss" and loss of "Business Income" and Extra Expense in any one occurrence is $25,000.

**r.** **Valuable Papers and Records**

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

**(1)** Subject to Paragraph **r.(3)** of this Coverage Extension, we will pay necessary costs you incur to research, replace or restore lost or damaged information on "valuable papers and records" that are your property or the property of others in your care, custody or control; resulting from direct "loss" caused by a Covered Cause of Loss.

**(2)** Coverage does not apply to:

**(a)** Property that cannot be replaced with other property of like kind and quality;

**(b)** Property held as samples or for delivery after sale;

**(c)** Property in storage away from the "premises", except as provided in Paragraph **r.(4)(b)** of this Coverage Extension;

**(d)** Contraband, or property in the course of illegal transportation or trade;

**(e)** "Valuable papers and records" in the form of "electronic data", including the materials on which the "electronic data" is recorded.

**(3)** The most we will pay for "loss" is the least of the following amounts:

**(a)** The cost of reasonably restoring the damaged property to its condition immediately before the "loss";

**(b)** The cost of replacing the damaged property with substantially identical property; or

**(c)** The actual cash value of the damaged property at the time of "loss".

However, we will not pay for "loss" unless or until the damaged property is actually replaced or restored; and then only if such replacement or restoration occurs within 36 months from the date of direct "loss".

**(4)** We will extend coverage to include:

**(a)** **Removal**

If you give us written notice within 30 days of removal of your "valuable papers and records"

**FM 101 05 16**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 28 of 40**

because of imminent danger of direct "loss" from a Covered Cause of Loss, we will pay for direct "loss" while they are:

**1)** At a safe place away from your "premises"; or

**2)** Being taken to and returned from that place.

This Removal coverage is included within the Limits of Insurance applicable to this Coverage Extension.

**(b) Away From Your Premises**

We will pay up to $5,000 in any one occurrence, regardless of the number of locations, for direct "loss" caused by a Covered Cause of Loss to "valuable papers and records" while they are away from your "premises".

This Away From Premises limit is in addition to the Limit of Insurance applicable to this Coverage Extension.

**(5)** **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension except as follows:

**(a)** Exclusion (1)(c) Governmental Action;

**(b)** Exclusion (1)(d) Nuclear Hazard; and

**(c)** Exclusion (1)(f) War and Military Action.

**(6)** In addition to Paragraph **r.(5)** of this Coverage Extension, we will not pay for direct "loss" resulting from any of the following:

**(a)** Dishonest or criminal acts by:

**1)** You, your partners, employees, directors, trustees or authorized representatives;

**2)** A manager or a member if you are a limited liability company;

**3)** Anyone else with an interest in the records of accounts receivable, or their employees or authorized representatives; or

**4)** Anyone else entrusted with the records of accounts receivable for any purpose.

This Paragraph **r.(6)(a)** applies whether or not such persons are acting alone or in collusion with other persons or such act occurs during the hours of employment.

However, this Paragraph **r.(6)(a)** does not apply to dishonest acts of a carrier for hire or to acts of destruction by your employees. However, theft by employees is still not covered.

**(b)** Errors or omissions in processing or copying. However, we will pay for that portion of direct "loss" caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Part.

**(c)** Electrical or magnetic injury, disturbance or erasure of electronic recordings. But we will pay for direct "loss" caused by lightning.

**(d)** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

The most we will pay for "loss" in any one occurrence is $25,000.

**s.** **Water Damage, Other Liquids, Powder or Molten Material Damage**

If a covered direct "loss" to which this insurance applies was caused by or resulted from water or other liquid, powder or molten material damage, we will also pay the cost to tear out and replace any otherwise undamaged part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

**SECTION B. LIMITS OF INSURANCE**

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations, except as amended in **SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations, 4. Additional Coverages,** and **5. Coverage Extensions.**

**SECTION C. DEDUCTIBLE**

Except as otherwise provided; in any one occurrence of direct "loss" we will first reduce the amount of "loss" if required by **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance** or **SECTION F. OPTIONAL COVERAGES, 1. Agreed Value.** If the adjusted amount of direct "loss" is less than or equal to the Deductible, we will not pay for that direct "loss". If the adjusted amount of direct "loss" exceeds the Deductible, we will then

subtract the Deductible from the adjusted amount of direct "loss", and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves direct "loss" to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

1. **Deductible Examples**

   **Example No. 1:**

   (This example assumes there is no coinsurance penalty as outlined in **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**).

   | | |
   |---|---|
   | Deductible: | $250 |
   | Limit of Insurance - Bldg. 1: | $60,000 |
   | Limit of Insurance - Bldg. 2: | $80,000 |
   | "Loss" to Bldg. 1: | $60,100 |
   | "Loss" to Bldg. 2: | $90,000 |

   The amount of "loss" to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

   The Deductible will be subtracted from the amount of "loss" in calculating the "loss" payable for Bldg. 1:

   $60,100 - $250 = $59,850 "Loss" Payable - Bldg. 1

   The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of "loss" payable for Bldg. 2. "Loss" payable for Bldg. 2 is the Limit of Insurance of $80,000.

   Total amount of "loss" payable:  $59,850 + 80,000 = $139,850.

   **Example No. 2:**

   (This example also assumes there is no coinsurance penalty).

   The Deductible and Limits of Insurance are the same as those in Example No. 1:

   "Loss" to Bldg. 1: $70,000 (Exceeds Limit of Insurance plus Deductible)

   "Loss" to Bldg. 2: $90,000 (Exceeds Limit of Insurance plus Deductible)

   "Loss" Payable - Bldg. 1:  $60,000 (Limit of Insurance)

   "Loss" Payable - Bldg. 2:  $80,000 (Limit of Insurance)

   Total amount of "loss" payable:  $140,000.

2. **Glass Deductible**

   When direct "loss" to the building you occupy only involves building glass, the Deductible for that "loss" will be the lesser of:

   **a.** $500; or

   **b.** The Deductible shown in the Declarations for that Covered Property.

## SECTION D. LOSS CONDITIONS

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

1. **Abandonment**

   There can be no abandonment of any property to us.

2. **Appraisal**

   If we and you disagree on the value of the property, the amount of Net Income and operating expense, or the amount of "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense, and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   **a.** Pay its chosen appraiser; and

   **b.** Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we still retain our right to deny the claim.

3. **Duties in the Event of Loss or Damage**

   **a.** In the event of "loss" to Covered Property, you must see that the following are done in order for coverage to apply:

      **(1)** Notify the police if a law may have been broken.

      **(2)** Give us prompt notice of the "loss". Include a description of the property involved.

      **(3)** As soon as possible, give us a description of how, when and where the "loss" occurred.

      **(4)** Take all reasonable steps to protect the Covered Property from further damage. If feasible, set the damaged property aside and in the best possible order for examination. Keep a

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

record of your expenses necessary to protect the Covered Property for consideration in the settlement of the claim. This will not increase your limit of insurance. However, in no event will we pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of "loss" claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the "loss" and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis and permit us to make copies from your books and records.

**(7)** Submit a signed sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**(9)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of "loss" insured by this Coverage Part, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of **SECTION D. LOSS CONDITIONS, 7. Valuation** or any applicable provision that amends or supercedes this valuation condition.

**b.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property, except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.**

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust "losses" with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** Our payment for "loss" to personal property of others and personal effects will only be for the account of the owner of the property.

**g.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**h.** We will pay for insured "loss" within 30 days after we receive the sworn proof of loss if you have complied with all of the terms of this Coverage Part; and

**(1)** We have reached agreement with you on the amount of "loss"; or

**(2)** An appraisal award has been made.

**i. Loss Payment - Ordinance or Law.**

With respect to **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law:**

**(1) Loss of Use of Undamaged Parts of Building**

When there is a loss in value of an undamaged portion of a building or structure to which this coverage applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

**FM 101 05 16**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 31 of 40**

**(a)** If **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies and the property is repaired or replaced, on the same "premises" or another "premises"; we will not pay more than the lesser of:

1) The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same "premises" and to the same height, floor area, style and comparable quality of the original property insured; or

2) The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages g. Ordinance or Law** for **Loss of Use of Undamaged Parts of Building** for the building that has suffered "loss".

**(b)** If **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies and the property is not repaired or replaced, or if the Replacement Cost Coverage Option does not apply, we will not pay more than the lesser of:

1) The "actual cash value" of the building at the time of "loss"; or

2) The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Loss of Use of Undamaged Parts of Building** for the building that has suffered "loss".

**(2) Demolition Costs**

Loss payment for Demolition Costs will be determined as follows:

We will not pay more than the lesser of the following:

**(a)** The amount you actually spend to demolish and clear the site of the "premises"; or

**(b)** The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Demolition Costs** for the building that has suffered "loss".

**(3) Increased Costs of Construction**

Loss payment for **Increased Costs of Construction** will be determined as follows:

**(a)** We will not pay for the increased cost of construction until the property is actually repaired or replaced, at the same "premises" or another location and unless the repairs or replacement are made as soon as reasonably possible after the direct "loss", not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same "premises", or if you elect to rebuild at another "premises", the most we will pay for the **Increased cost of construction** is the lesser of:

1) The increased cost of construction at the same "premises"; or

2) The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Increased Costs of Construction** for the building that has suffered "loss".

**(c)** If the ordinance or law requires relocation to another location the most we will pay for the increased cost of construction is the lesser of:

1) The increased cost of construction at the new location; or

2) The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Increased Costs of Construction** for the building that has suffered "loss".

**(4) Proportional Payments**

If the building or structure sustains both direct "loss" that is covered un-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

der this Coverage Part and direct "loss" that is not covered under this Coverage Part; and as a result of the direct "loss" in its entirety you are required to comply with the ordinance or law, we will not pay the full amount of direct "loss" otherwise payable under the terms of **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law**. Instead, we will pay a proportion of such direct "loss"; meaning the proportion that the covered direct "loss" bears to the total direct "loss".

**j.** **Loss Determination - Business Income and Extra Expense**

With respect to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense,**

**(1)** The amount of "Business Income" and "Rental Value" "loss" will be determined based on:

**(a)** The Net Income of the business before the direct "loss" occurred;

**(b)** The likely Net Income of the business if no direct "loss" had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(c)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct "loss"; and

**(d)** Other relevant sources of information, including;

**1)** Your financial records and accounting procedures;

**2)** Bills, invoices and other vouchers; and

**3)** Deeds, liens or contracts.

**(2)** The amount of Extra Expense will be determined based on:

**(a)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct "loss"

had occurred. We will deduct from the total of such expenses:

**1)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

**2)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**(b)** Necessary expenses that reduce the "Business Income" and "Rental Value" "loss" that otherwise would have been incurred.

**(3)** **Resumption of Operations**

We will reduce the amount of your:

**(a)** "Business Income" and "Rental Value" "loss", other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or "stock") at the "premises" or elsewhere.

**(b)** Extra Expense "loss" to the extent you can return "operations" to normal and discontinue such Extra Expense.

**(4)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**k.** **Party Walls**

A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the "loss" to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the "loss" to the party wall, subject to all applicable policy provisions all other provisions of this **SECTION D. LOSS CONDITIONS, 4. Loss Payment** including:

**(1)** Limit of Insurance shown in the Declarations;

**(2)** **SECTION D. LOSS CONDITIONS, 7. Valuation**; and

**(3)** **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**.

Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of **COMMERCIAL PROPERTY CONDITIONS, I. Transfer Of Rights Of Recovery Against Others To Us** in this Coverage Part.

**5.** **Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6.** **Vacancy**

**a.** **Description of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this Coverage Part is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this Coverage Part is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**1)** Rented to a lessee or sublessee and used by them to conduct their customary operations; or

**2)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b.** **Vacancy Provisions**

If the building where direct "loss" occurs has been vacant for more than 60 consecutive days before that "loss", we will:

**(1)** Not pay for any "loss" caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** Reduce the amount we would otherwise pay for the "loss" by 15% with respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** of this Loss Condition.

**7.** **Valuation**

We will determine the value of Covered Property in the event of direct "loss" as follows:

**a.** At "Actual Cash Value" as of the time of direct "loss", except as provided in **b., c., d.,** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at actual cash value even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**d.** Glass at the cost of replacement with safety glazing material if required by law.

**e.** Tenant's Improvements and Betterments at:

**(1)** Replacement Cost of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the "loss" or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**(4)** For the purposes of valuation, tenants' improvements and betterments are not considered to be the personal property of others.

## SECTION E. ADDITIONAL CONDITIONS

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

**1.** <u>Coinsurance</u>

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

**a.** We will not pay the full amount of any "loss" if the value of Covered Property at the time of direct "loss" times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of direct "loss" by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in step **(1)**;

**(3)** Multiply to the total amount of "loss", before the application of any deductible, by the figure determined in step **(2)**; and

**(4)** Subtract the deductible from the figure determined in step **(3)**.

We will pay the amount determined in step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the "loss" yourself.

**Example No. 1 (Underinsurance):**

The value of the property is:          $250,000
The coinsurance percentage is:          80%
The Limit of Insurance is:          $100,000
The Deductible is:          $250
The amount of "loss" is:          $40,000

Step (1):

$250,000 X 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2):

$100,000 divided by $200,000 = .50

Step (3):

$40,000 X .50 = $20,000

Step (4):

$20,000 - $250 = $19,750.

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2 (Adequate Insurance):**

The value of the property is:          $250,000
The coinsurance percentage is:          80%
The Limit of Insurance is:          $200,000
The Deductible is:          $250
The amount of "loss" is:          $40,000

Step (1):

$250,000 X 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2):

$200,000 : $200,000 = 1.00

Step (3):

$40,000 X 1.00 = $40,000

Step (4):

$40,000 - $250 = $39,750.

We will pay no more than $39,750 "loss" in excess of the Deductible. No penalty applies.

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:**

The values of the property are:

| | |
|---|---|
| Bldg. at Location No. 1: | $75,000 |
| Bldg. at Location No. 2: | $100,000 |
| Personal Property at Location No. 2: | $75,000 |
| | 250,000 |

| | |
|---|---|
| The coinsurance percentage is: | 90% |

The Limit of Insurance for Buildings and Personal

| | |
|---|---|
| Property at Location Nos. 1 and 2 is: | $180,000 |
| The Deductible is: | $1,000 |

The amount of "loss" is:

| | |
|---|---|
| Bldg. at Location No. 2: | $30,000 |
| Personal Property at Location No. 2: | $20,000 |
| | $50,000 |

Step (1):

$250,000 X 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2):

$180,000 : $225,000 = .80

Step (3):

$50,000 X .80 =   $40,000

Step (4):

$40,000 - $1,000 = $39,000.

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2.  Mortgage Holders**

**a.** The term "mortgage holder" includes trustee.

**b.** We will pay for covered "loss" to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply

with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this Coverage Part will then apply directly to the mortgage holder.

**e.** If we pay the mortgage holder for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgage holder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgage holder at least ten days before the expiration date of this policy.

**SECTION F. OPTIONAL COVERAGES**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

1. **Agreed Value**

   a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for direct "loss" to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Limit of Insurance indicated in the most current Statement of Values that applies to this Coverage Part.

   b. If the Agreed Value Optional Coverage is deleted from the policy, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage does not apply.

   c. The terms of this Optional Coverage apply only to "loss" that occurs:

      (1) On or after the effective date of this Optional Coverage; and

      (2) Before the policy expiration date.

   d. This Agreed Value Optional Coverage does not apply to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense.**

2. **Inflation Guard**

   a. The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

   b. The amount of increase will be:

      (1) The Limit of Insurance that applied on the beginning of the current "coverage term" or any other Coverage Part change amending the Limit of Insurance, multiplied by

      (2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), multiplied by

      (3) The number of days since the beginning of the current "coverage term" or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365. In the event of "loss", this number of days ends at the original date of "loss".

      Example:

      If:  The applicable Limit of Insurance is: $100,000

           The Annual percentage increase is: 8%

           The number of days since the beginning of the policy year (or last policy change) is: 146

           The amount of increase is $100,000 X .08 X (146/365) = $3,200

3. **Replacement Cost**

   a. Replacement Cost (without deduction for depreciation) replaces "Actual Cash Value" in **SECTION D. LOSS CONDITIONS, 7. Valuation** of this **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**.

   b. This Optional Coverage does not apply to:

      (1) Personal Property of others, except leased personal property as described in **SECTION A. COVERAGE, 1. Covered Property, d.(7).** The valuation of such leased personal property will be based on the amount for which you are liable under the lease, but not to exceed the replacement cost of the leased item.

      (2) Personal effects;

      (3) Contents of a residence;

      (4) Manuscripts;

      (5) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac;

      (6) "Stock" unless the Replacement Cost including "Stock" option is shown in the Declarations; or

      (7) Property, that at the time of "loss":

         (a) Is outdated, or obsolete and is stored or not being used; or

         (b) Has no practical value to you.

   c. You may make a claim for "loss" covered by this insurance on an "Actual Cash Value" basis instead of on a replacement cost basis. In the event you elect to have "loss" settled on an "Actual Cash Value" basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the "loss".

   d. We will not pay on a replacement cost basis for any "loss":

      (1) Until the lost or damaged property is actually repaired or replaced with other property of generally the same construction and used for the same

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

purpose as the lost or damaged property; and

**(2)** Unless the repairs or replacement have been completed or at least underway within 2 years following the date of "loss".

**e.** We will not pay more for "loss" on a replacement cost basis than the least of:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace, on the same "premises", the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount you actually spend that is necessary to repair or replace the lost or damaged property.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use, or repair of any building or structure except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.**

## SECTION G. DEFINITIONS

**1.** "Actual cash value" means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence.

**2.** "Business Income" means the:

**a.** Net Income (net profit or loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses sustained, including payroll.

**3.** "Computer programs" means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**4.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 A.M. standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if

any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 A.M. standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**5.** "Electronic data" means information, facts or "computer programs" stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

**6.** "Finished stock" means stock you have manufactured, except "stock" you have manufactured that is held for sale on the "premises" of any retail outlet insured under this Coverage Part.

**7.** "Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**8.** "Loss" means accidental physical loss or accidental physical damage.

**9.** "Money" means:

**a.** Currency, coins and bank notes whether or not in current use; and

**b.** Travelers checks, registered checks and money orders held for sale to the public.

**10.** "Operations" means:

**a.** Your business activities occurring at the "premises"; and

**b.** The tenantability of the "premises", if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

**11.** "Period of restoration" means the period of time that:

**a.** Begins at the time of direct "loss".

**b.** Ends on the earlier of:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(1)** The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

**c.** "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

**d.** The expiration date of the policy will not cut short the "period of restoration".

**12.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, asbestos, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** You are regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** You use, generate or produce the "pollutant".

**13.** "Premises" means the Locations and Buildings described in the Declarations.

**14.** "Rental Value" means "Business Income" that consists of :

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the "premises" described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the "premises" which is occupied by you; and

**b.** Continuing normal operating expenses incurred in connection with that "premises", including:

**(1)** Payroll; and

**(2)** The amount of charges, which are the legal obligation of the tenant(s) but would otherwise be your obligations.

**15.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

**a.** Tokens, tickets, revenue and other stamps whether or not in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which are not of your own issue; but does not include "money". Lottery tickets held for sale are not "securities" or evidences of debt.

**16.** "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the Covered Property into subterranean voids created by the action of water on a limestone or similar rock formation. This does not include:

**a.** The cost of filling sinkholes;

**b.** Sinking or collapse of land into man-made subterranean cavities; or

**c.** The value of the land.

**17.** "Specified causes of loss" means fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; "sinkhole collapse"; volcanic action; falling objects; weight of snow, ice or sleet; and water damage.

**a.** Falling objects does not include "loss" to:

**(1)** Personal property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**b.** Water damage means:

**(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam; and

**(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the "premises" and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

But water damage does not include "loss" otherwise excluded under the terms of **BUILDING AND BUSINESS PERSONAL PROPERTY, SECTION A. COVERAGE, 3. Covered Causes of Loss, (g) Water**. Therefore, for example, there is no coverage under this Coverage Part in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Exclusion **(g) Water**, there is no coverage for "loss" caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **18.b.(1)** or **18.b.(2)** of this definition of "Specified causes of loss", such water is not subject to the provisions of Exclusion **(g) Water.**

18. "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

19. "Suspension" means:

    **a.** The slowdown or cessation of your business activities; and

    **b.** That a part or all of the "premises" is rendered untenantable.

20. "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, card index systems, deeds, drawings, films, maps, mortgages, or proprietary information.

    But "valuable papers and records" does not mean "money" or "securities" or "electronic data", including the materials on which the "electronic data" is recorded.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TENTATIVE RATE

The rates used in the development of the premium for the Commercial Property Coverage Part are tentative. We will adjust the premium effective from the inception date of this Coverage Part once the rates are promulgated.  If this is a renewal of a policy previously issued by us, we will adjust the premium effective from the renewal date of this Coverage Part once the rates are promulgated.

```
1      1100 CHESTNUT ST
       PHILADELPHIA, PA 19107-4802
```

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ACTUAL LOSS SUSTAINED BUSINESS INCOME ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**SCHEDULE**

(Enter number of months to activate coverage)

**REFER TO FMQ502   consecutive months**

**A.** This endorsement applies to the following Coverage Forms:

**BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM**

**BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM**

**B.** For the purposes of this endorsement only, **SECTION A. COVERAGE, Additional Coverages, Extended Business Income, (1), (b), (ii)** is deleted in its entirety and replaced by the following, and **(iii)** is added:

**(ii)** 60 consecutive days after the date determined in **(1)(a)** above; or

**(iii)** The number of consecutive months after the date of direct physical "loss" indicated in the Schedule of this endorsement.

**C.** For the purposes of this endorsement only, **SECTION A. COVERAGE, Additional Coverages, Extended Business Income, (2), (b), (ii)** is deleted in its entirety and replaced by the following, and **(iii)** is added:

**(ii)** 60 consecutive days after the date determined in **(2)(a)** above; or

**(iii)** The number of consecutive months after the date of direct physical "loss" indicated in the Schedule of this endorsement.

**D.** For the purposes of this endorsement only, **SECTION F. DEFINITIONS, 7. "Period of Restoration", b.** is deleted in its entirety and replaced by the following:

**b.** Ends on the earlier of:

**(1)** The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality;

**(2)** The date when business is resumed at a new permanent location; or

**(3)** The number of consecutive months after the date of direct physical "loss" indicated in the Schedule of this endorsement.

**E.** When 12 or 18 months ALS (an acronym of Actual Loss Sustained) is shown in the Declarations as the Limit of Insurance for Business Income for a specific item, **SECTION B. LIMITS OF INSURANCE** is deleted in its entirety for that item.

**F.** If the policy to which this endorsement is attached has been issued for a period of more than one year, then this business income coverage is subject to annual rerating.

**FA 242 10 12**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES - ACTUAL CASH VALUE

This endorsement modifies insurance provided under the following:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS)**

**1. SECTION G. DEFINITIONS, 1. "Actual Cash Value"** is deleted in its entirety and replaced by the following:

   **1.**   "Actual Cash Value" means the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence.  "Actual cash value" applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

   The "actual cash value" of the lost or damaged property may be significantly less than its replacement cost.

**FA 4013 PA 11 02**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**A.**   Exclusion **(1)(d) Nuclear Hazard** in **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** of the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM** is deleted in its entirety and replaced by the following:

**(1)(d) Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.  However, if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the "loss" caused by that fire.

**B.**   Exclusion **2.d. Nuclear Hazard** in **SECTION E. EXCLUSIONS** of the **MORTGAGE INTEREST COVERAGE FORM** is deleted in its entirety and replaced by the following:

**2.d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.  However, if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the "loss" caused by that fire.

**FA 4028 PA 11 05**

# CinciPlus®

# COMMERCIAL PROPERTY POWER XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT
## SUMMARY OF COVERAGE LIMITS

This is a summary of the Coverages and the Limits of Insurance provided by the Commercial Property Power XC+®(Expanded Coverage Plus) Endorsement, **FA 258**, in combination with the Commercial Property Coverage Form, **FM101**, which is included in this policy. **No coverage is provided by this summary**. Refer to endorsement **FA 258** and the Commercial Property Coverage Form, **FM 101**, to determine the scope of your insurance protection.

| **Blanket Coverages:** | **Blanket Coverage Limit:** | **Page No. (FA 258):** |
|---|---|---|
| | $150,000          in total for all loss arising from all Blanket Coverages arising from a single occurrence, except as noted otherwise in the form. | |
| Accounts Receivable | | 1 |
| Debris Removal | | 8 |
| Electronic Data Processing Property (EDP): | | 2 |
|    Duplicate and Backup Electronic Data | $2,000 in addition to the Blanket Coverage Limit | 3 |
|    Newly Acquired EDP | $10,000 in addition to the Blanket Coverage Limit | 3 |
|    In Transit or Away From Premises | $10,000 as part of the Blanket Coverage Limit | 4 |
|    Worldwide Laptop Coverage | | 4 |
| Ordinance or Law (Increased Construction Costs and Demolition) | | 6 |
| Peak Season | | 8 |
| Personal Property of Others | | 8 |
| Tenant Move Back Expenses | | 7 |
| Valuable Papers and Records | | 6 |

| **Other Coverages** (not subject to Blanket Coverage Limit): | **Limit of Insurance:** | **Page No. (FA 258):** |
|---|---|---|
| Brands and Labels | $25,000 | 11 |
| Business Income and Extra Expense: | $100,000 | 1 |
|    Business Income From Dependent Properties | $5,000 (sub-limit, subject to a 24 hour deductible) | 1 |
|    Interruption of Computer Operations | $25,000 (sub-limit, subject to a 24 hour deductible) | 2 |

| Other Coverages (not subject to Blanket Coverage Limit): | Limit of Insurance: | Page No. (FA 258): |
|---|---|---|
| Fine Arts | $25,000 | 5 |
| Fire Department Service Charge | $25,000 | 7 |
| Fire Protection Equipment Recharge | $50,000 | 8 |
| Inflation Guard | 4% on all Building Property referenced in the Declarations | 11 |
| Non-Owned Building Damage: | | 10 |
|    Loss caused by theft, burglary or robbery | Up to the Business Personal Property (BPP) Limit of Insurance | 10 |
|    Loss by any other Covered Cause of Loss | $25,000 or the BPP Limit of Insurance (whichever is less) | 10 |
| Ordinance or Law (other than Increased Construction Costs and Demolition) | Subject to the Building Limit of Insurance | 6 |
| Outdoor Property | $25,000 ($1,000 for any one tree, shrub or plant) | 7 |
| Paved Surfaces | $20,000 | 8 |
| Personal Effects | $25,000 ($1,000 for loss by theft) | 7 |
| Pollutant Clean Up and Removal | $25,000 | 6 |
| Signs | $10,000 | 7 |
| Temperature Change | $15,000 | 9 |
| Underground Property | Subject to the Building Limit of Insurance | 6 |
| Utility Services - direct and time element | $75,000 | 11 |
|    Overhead transmission and distribution lines | $5,000 sublimit at 24 hr waiting period | 11 |
| Water Backup from Sewers, Drains or Sumps | $10,000 | 7 |

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. Concealment, Misrepresentation or Fraud

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

## B. Control of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of direct "loss", the breach of condition does not exist.

## C. Insurance Under Two or More Coverages

If two or more of this policy's coverages apply to the same "loss", we will not pay more than the actual amount of the "loss".

## D. Legal Action Against Us

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct "loss" occurred.

## E. Liberalization

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

## F. No Benefit to Bailee

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. Other Insurance

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered "loss". Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same "loss", other than that described in **1.** above, we will pay only for the amount of covered "loss" in excess of the amount due from that other insurance, whether you can collect on it or not. **However, we will not reimburse any deductible or difference between Actual Cash Value and Replacement Cost valuations.** We will not pay more than the applicable Limit of Insurance.

## H. Policy Period, Coverage Territory

Under this Coverage Part:

**1.** We cover "loss" commencing:

   **a.** During the policy period shown in the Declarations; and

   **b.** Within the coverage territory.

**2.** The coverage territory:

   **a.** The United States of America (including its territories and possessions);

   **b.** Puerto Rico; and

   **c.** Canada.

## I. Transfer of Rights of Recovery Against Others to Us

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after direct "loss" to impair them. But you may waive your rights against another party in writing:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

1. Prior to a direct "loss" to your Covered Property or Covered Income.

2. After a direct "loss" to your Covered Property or Covered Income only if, at time of direct "loss", that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BUSINESS INCOME CHANGES - WAITING PERIOD

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**SCHEDULE**

**"Period of Restoration" Waiting Period**

☒ 24 hours          ☐ 48 hours          ☐ 72 hours

**A.  Applicable Coverage Forms**

This endorsement applies to the following Coverage Forms:

**1.  BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM**, and

**2.  BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM**

**B.  SECTION F. DEFINITIONS, 7. "Period of Restoration"**, is deleted in its entirety and replaced with the following:

**7.  "Period of Restoration"** means the period of time that:

  **a.**  Begins:

  **(1)**  After the number of hours selected and shown in the Schedule have passed from the time of direct physical "loss" for Business Income coverage; or

  **(2)**  Immediately after the time of direct physical "loss" for Extra Expense coverage;

caused by or resulting from any Covered Cause of Loss at the "premises"; and

  **b.**  Ends on the earlier of:

  **(1)**  The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

  **(2)**  The date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

  **(1)**  Regulates the construction, use or repair, or requires the tearing down of any property; or

  **(2)**  Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CINCIPLUS®
# COMMERCIAL PROPERTY POWER XC+®
# (EXPANDED COVERAGE PLUS) ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**The insurance coverage and Limits of Insurance provided by this endorsement are excess of, and apply in addition to, any similar or identical coverage provided by any other endorsement attached to this Coverage Part, or by any other Coverage Part forming a part of the policy of insurance of which this Coverage Part forms a component.**

SCHEDULE

| Blanket Coverage Limit | $150,000 |
|---|---|
| Applicable only to those coverages subject to the Blanket Coverage Limit, as indicated in this endorsement | |

**A. Accounts Receivable**

For the purposes of this endorsement only:

1. In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable**, the second paragraph in **(3)(b) Away From Your Premises** is deleted in its entirety and replaced by the following:

   This limit of insurance for Away From Your Premises coverage is not included within the Blanket Coverage Limit and is separate and in addition to the Blanket Coverage Limit.

2. In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable**, the last paragraph is deleted in its entirety and replaced by the following:

   The most we will pay for loss in any one occurrence under this Accounts Receivable Coverage Extension is the Blanket Coverage Limit as provided in Section **Y** of this endorsement.

**B. Business Income and Extra Expense**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY**

**COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense** is modified as follows:

1. **Business Income From Dependent Properties**

   a. For **Business Income from Dependent Properties** only, Paragraph **b.(1)** is deleted in its entirety and replaced by the following:

      (1) **Business Income From Dependent Properties**

         We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to "dependent property" caused by or resulting from any Covered Cause of Loss.

         However, coverage under this endorsement does not apply when the only "loss" to "dependent property" is "loss" to "electronic data", including destruction or corruption of "electronic data". If the "dependent property" sustains "loss" to

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

"electronic data" and other property, coverage under this endorsement will not continue once the other property is repaired, rebuilt, or replaced.

**b. Limit of Insurance for Dependent Properties**

The most we will pay for loss in one occurrence under **Business Income From Dependent Properties** is $5,000. This Limit of Insurance is included within, and is not in addition to, the Limit of Insurance for the "Business Income" and Extra Expense Coverage Extension.

**c. Loss Determination for Dependent Properties**

For **Business Income from Dependent Properties** only, the following is added:

**Resumption of Operations**

We will reduce the amount of your:

(1) "Business Income" loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available

    (a) Source of materials; or

    (b) Outlet for your products.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d. Definitions**

**SECTION G. DEFINITIONS** is amended to include the following definitions:

(1) "Dependent property" means property operated by others whom you depend on to:

    (a) Deliver materials or services to you, or to others for your account (Contributing Locations). But any property which delivers the following services is not a Contributing Location with respect to such services:

        1) Water Supply services;

        2) Power Supply services; or

        3) Communication supply services, including services relating to internet access or access to any electronic network;

    (b) Accept your products or services;

    (c) Manufacture products for delivery to your customers under contract of sale; or

    (d) Attract customers to your business.

(2) The "Period of restoration" Definition, with respect to "dependent property", is replaced by the following:

"Period of restoration" means the period of time that:

    (a) Begins 24 hours after the time of direct "loss" caused by or resulting from any Covered Cause of Loss at the "premises" of the "dependent property"; and

    (b) Ends on the date when the property at the "premises" of the "dependent property" should be repaired, rebuilt or replaced with reasonable speed and similar quality.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

    (a) Regulates the construction, use or repair, or requires the tearing down of any property; or

    (b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this Coverage Part will not cut short the "period of restoration".

The most we will pay is the **Business Income From Dependent Properties** sublimit of insurance. This Limit of Insurance is included within, and is not in addition to, the Limit of Insurance for the

"Business Income" and Extra Expense Coverage Extension.

**2. Interruption of Computer Operations**

**a.** For **Interruption of Computer Operations** only, all references to $2,500 in **b. Business Income and Extra Expense,** Paragraph **(7)(c)** are deleted and replaced by $25,000.

**b. BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended as follows:

With respect to a "suspension" of "operations" caused only by an interruption in computer operations due to the destruction or corruption of "electronic data" as described in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data,** Paragraph **a.** of Definition **11.** "Period of restoration" is deleted and replaced by the following:

**a.** Begins 24 hours after the time of direct "loss".

**3. Business Income and Extra Expense Revised Limits of Insurance**

The last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this "Business Income" and Extra Expense Coverage Extension is $100,000.

**C. Electronic Data Processing Property**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended by adding the following:

**Electronic Data Processing Property**

**(1) Covered Property**

You may extend the Coverage provided by this Coverage Part to apply to direct "loss" to Covered Property consisting of your:

**(a)** Data processing equipment;

**(b)** Air conditioning and other electrical equipment, used exclusively with your data processing equipment;

**(c)** Programming documentation and instruction manuals;

**(d)** "Electronic data", but only as excess over what is valid and collectible under **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data**;

**(e)** Media, meaning materials on which "electronic data" is recorded, such as magnetic tapes, disc packs, paper tapes and cards, floppy discs and compact discs used in processing units; and

**(f)** Property of others in your care, custody or control that is similar to property described in **(1)(a)** through **(e)** above.

**(2) Property Not Covered**

This Coverage Extension does not apply to:

**(a)** Accounts, records, documents and other "valuable papers and records" unless they are programming documentation or instruction manuals.

However, we will cover these items once they are converted to "electronic data" form.

**(b)** "Electronic data" or media that cannot be replaced with similar property of equal quality.

**(c)** Your property that you have rented or leased to someone else and that property is not at your "premises".

**(d)** Any machine or apparatus that is used for research, medical, diagnostic, surgical, dental or pathological purposes.

**(e)** "Production equipment".

**(3) Exclusions**

**(a) BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply except as follows:

**1) Exclusion (1)(c) Governmental Action;**

**2) Exclusion (1)(d) Nuclear Hazard;**

**3) Exclusion (1)(f) War and Military Action;**

**4) Exclusion (2)(b) Delay or Loss of Use;**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**5)** **Exclusion (2)(d) Miscellaneous Causes of Loss, 1)** Wear and tear;

**6)** **Exclusion (2)(h) Dishonest or Criminal Acts;**

**7)** **Exclusion (3)(b) Acts or Decisions**; and

**8)** **Exclusion (3)(c) Defects, Errors and Omissions.**

**(b)** In addition to Paragraph **(3)(a)** of this Coverage Extension, we will not pay for the following:

Hidden or latent defect, gradual deterioration, and depreciation. However, if direct "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss".

**(4)** **Duplicate and Backup "Electronic Data"**

We will pay for direct "loss" resulting from any of the Covered Causes of Loss to duplicate and backup "electronic data" that you store at a "premises" not described in the Declarations providing such "electronic data" is not covered by another policy. The most we will pay for loss in any one occurrence is $2,000. This Limit of Insurance is in addition to the other limits provided by this Coverage Extension.

**(5)** **Newly Purchased Electronic Data Processing Property**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, i. Newly Purchased, Leased or Constructed Property** is deleted in its entirety and replaced by the following:

**(a)** We will pay for direct "loss" from a Covered Cause of Loss to newly purchased or leased Covered Property described in Paragraph **(1)** of this Coverage Extension while at:

**1)** Locations that are newly purchased or leased;

**2)** Your newly constructed buildings or additions at a "premises"; or

**3)** Any "premises" described in the Declarations.

**(b)** Insurance under this Coverage Extension for such newly acquired property, or Covered Property already insured by this Coverage Extension which is moved to a newly

acquired location, will end when any of the following first occurs:

**1)** This Coverage Part expires;

**2)** 90 days pass from the date you acquire your new property or move Covered Property to a newly acquired location; or

**3)** You report values to us.

The most we will pay for loss in any one occurrence is $10,000. This Limit of Insurance is in addition to the other limits provided by this Coverage Extension.

**(6)** **In Transit or Away From Premises**

**SECTION A. COVERAGE, 5. Coverage Extensions, e. Exhibitions, Fairs or Trade Shows, m. Property Off Premises** and **p. Transportation** are deleted in their entirety and replaced by the following:

**(a)** You may extend the insurance provided by this Coverage Extension to apply to Covered Property as described in Paragraph **(1):**

**1)** While in or on a vehicle, including loading and unloading; or

**2)** While at a location that is not your "premises".

**(b)** This **In Transit or Away From Premises** coverage does not apply per location.

The most we will pay for loss in any one occurrence is $10,000. This Limit of Insurance is not in addition to the other limits provided by this Coverage Extension.

**(7)** **Worldwide Laptop Coverage**

**(a)** You may extend the insurance provided by this Coverage Extension to apply to your laptops, notebooks and similar highly portable personal computers, including their peripherals and accessories, while such specific Covered Property is:

**1)** In your or your employee's care, custody and control;

**2)** Not located at a "premises" you own or lease; and

**3)** Not located in the coverage territory stated in Paragraph **2.** of the Commercial Property Condition **H. Policy Period, Coverage Territory**, provided that location is not under a United

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

States Department of State trade or travel restriction at the time of "loss".

**(b)** This **Worldwide Laptop Coverage** does not apply per location.

**(8) Electronic Data Processing Property Deductible**

**SECTION C. DEDUCTIBLE** is amended to include the following:

We will not pay for direct "loss" in any one occurrence unless the amount of "loss" exceeds the Deductible shown in the Declarations. We will then pay the amount of "loss" in excess of the Deductible, up to the Limit of Insurance provided by this Coverage Extension.

However, direct "loss" caused by or resulting from any of the following Causes of Loss will have the greater of the Deductible shown in the Declarations or $1,000 as the applicable deductible:

**a.** "Loss" caused by faulty construction, error in design or processing, or service or work upon the data processing system;

**b.** "Loss" resulting in mechanical breakdown, short circuiting, blowout, or other electrical damage, unless caused by lightning; or

**c.** "Loss" caused by or resulting from interruption of power supply, power surge, blackout or brownout.

**(9) Electronic Data Processing Property Valuation**

**SECTION D. LOSS CONDITIONS, 7. Valuation** is deleted in its entirety and replaced by the following:

**7. <u>Valuation of Electronic Data Processing Property</u>**

In the event of direct "loss", we will determine the value of Covered Property as described in Paragraph **(1)** of this Coverage Extension as follows:

**a.** Except for "electronic data":

**(1)** If you repair or replace this Electronic Data Processing property within a reasonable time following the direct "loss", the property will be valued at the full cost of repair or replacement.

However, the most we will pay is the least of the following:

**(a)** The actual cost to repair or restore the property with materials of like kind and quality;

**(b)** The cost of replacing that property with property of similar quality and function;

**(c)** The amount you actually and necessarily spend to repair or replace the property; or

**(d)** The Limit of Insurance applicable to the property.

**(2)** If you do not repair or replace this property within a reasonable time following a direct "loss", the most we will pay will be the least of the following:

**(a)** "Actual cash value" of the property;

**(b)** "Actual cash value" of repairs with material of like kind and quality; or

**(c)** The Limit of Insurance applicable to the property.

We reserve the right to repair or replace the property or to pay for the property in money.

In the event of "loss", the value of property will be determined at the time of direct "loss".

**b.** For "electronic data":

We will not pay more than the actual reproduction costs of your "electronic data". If you do not replace or reproduce your "electronic data" following the "loss", the most we will pay is the cost of blank media as described in Paragraph **C.(1)(e)** of this Coverage Extension.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(10) Electronic Data Processing Property Additional Definition**

The following definition is added to **SECTION G. DEFINITIONS** of the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM:**

"Production equipment" means any machinery and related components, including any integrated or dedicated computer system, which is used, or can be used, to produce or process other tangible property.

The most we will pay in total for all loss in any one occurrence for coverages described in Paragraphs **C.(1), (6),** and **(7)** is the Blanket Coverage Limit as provided in Section **Y.** of this endorsement.

**D. Fine Arts**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

<u>Fine Arts</u>

**(1)** We will pay for direct "loss" to paintings, etchings, pictures, tapestries, art glass windows, and other bona fide works of art of rarity, historical value, or artistic merit. The direct "loss" must be caused by or result from a Covered Cause of Loss.

**(2) SECTION D. LOSS CONDITIONS, 7. Valuation** is deleted in its entirety and replaced by the following:

We will determine the value of Covered Property in the event of direct "loss" at the market value at the time of "loss".

The most we will pay for loss in any one occurrence under this Coverage Extension is $25,000.

**E. Ordinance or Law**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law,** the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under Paragraph **(a) Loss of Use of Undamaged Parts of the Building** is the Limit of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** as applicable to the covered building or structure sustaining "loss". This

Coverage is included within, and not in addition to, that applicable Limit of Insurance.

The most we will pay for all loss in any one occurrence under Paragraph **(b) Demolition Costs** and Paragraph **(c) Increased Costs of Construction** is the Blanket Coverage Limit as provided in Section **Y** of this endorsement per building or structure sustaining loss. This is an additional Limit of Insurance applicable to the building or structure sustaining loss.

**F. Pollutant Clean Up and Removal**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, h. Pollutant Clean Up and Removal,** the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for each "premises" under this Pollutant Clean Up and Removal Coverage Extension is $25,000. This limit includes the sum of all covered expenses arising out of Covered Causes of Loss during each "coverage term". This is in addition to the Limits of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

**G. Underground Property**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

<u>Underground Property</u>

**(1)** We will pay for direct "loss" resulting from any of the Covered Causes of Loss to:

**(a)** Foundations of covered buildings, structures, machinery or boilers, if their foundations are below the lowest basement floor or the surface of the ground if there is no basement; and

**(b)** Underground pipes, flues or drains if they are attached to Covered Property.

**(2) SECTION A. COVERAGE, 2. Property Not Covered, g. Foundations** is deleted in its entirety and replaced by the following:

**g.** <u>Foundations</u>

Foundations of buildings, structures, machinery or boilers, if their foundations are below:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(1)** The lowest basement floor; or

**(2)** The surface of the ground, if there is no basement;

except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions.**

**(3)** **SECTION A. COVERAGE, 2. Property Not Covered, n. Underground Pipes, Flues or Drains** is deleted in its entirety and replaced by the following:

**n.** <u>Underground Pipes, Flues or Drains</u>

Underground pipes, flues or drains, except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions.**

The most we will pay for loss in any one occurrence is the Limit of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** as applicable to the covered building or structure incurring direct "loss". This Coverage is included within, and not in addition to, that applicable Limit of Insurance.

**H.** **Valuable Papers and Records**

For the purposes of this endorsement only:

**1.** In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records**, the second paragraph in **(4)(b) Away From Your Premises** is deleted in its entirety and replaced by the following:

This limit of insurance for **Away From Your Premises** coverage is not included within the Blanket Coverage Limit and is separate and in addition to the Blanket Coverage Limit.

**2.** In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records**, the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this Valuable Papers and Records Coverage Extension is the Blanket Coverage Limit as provided in Section **Y** of this endorsement.

**I.** **Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems**

For the purposes of this endorsement only:

**(1)** **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(g) Water,** Paragraph **3)** is deleted in its entirety and replaced by the following:

**3)** Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems,** water that has entered and then backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment; or

**(2)** **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(g) Water,** Paragraph **5)** is deleted in its entirety and replaced by the following:

**5)** Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems,** waterborne material carried or otherwise moved by any of the water referred to in Paragraph **1), 3)** or **4),** or material carried or otherwise moved by mudslide or mudflow as described in Paragraph **(g)2).**

**(3)** **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions,** is amended to include the following:

**Water Backup Discharged From Sewers, Drains, Septic or Sump Pump Systems**

We will pay for "loss" caused by or resulting from water or waterborne material that has entered and then backs up through and is discharged from a sewer, drain (including roof drains and related fixtures), septic system, sump pump system or related equipment.

**(4)** **SECTION C. DEDUCTIBLE** is amended by adding the following:

<u>Water Backup Deductible</u>

We will not pay for "loss" in any one occurrence caused by or resulting from water or waterborne material which backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment, until the amount of "loss" exceeds the De-

ductible shown in the Declarations, or $1,000, whichever is greater. We will then pay the amount of "loss" in excess of that deductible, up to the applicable limit indicated in Paragraph **(5)** of this Coverage Extension.

**(5)** The most we will pay for loss in any one occurrence under this Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems Coverage Extension is $10,000, including any "Business Income", "Rental Value" and Extra Expense loss.

**J.  Fire Department Service Charge**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, c. Fire Department Service Charge** is deleted in its entirety and replaced by the following:

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $25,000 in any one occurrence for Fire Department Service Charge for your liability, which is determined prior to direct "loss", for fire department service charges:

**(1)** Assumed by contract or agreement; or

**(2)** Required by local ordinance.

This Coverage is in addition to the Limits of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** and applies per location. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

**K.  Signs**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, n. Signs**, the second paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this Sign Coverage Extension is $10,000.

**L.  Outdoor Property**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, k. Outdoor Property**, the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this Outdoor Property Coverage Extension is $25,000, but not more than $1,000 for any one tree, shrub, or plant.

**M.  Personal Effects**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, I. Personal Effects**, the last two paragraphs are deleted in their entirety and replaced by the following:

If theft is included as a Covered Cause of Loss under this Coverage Part, then this Personal Effects Coverage Extension has a $1,000 per occurrence limitation for direct "loss" by theft.

The most we will pay for loss in any one occurrence under this Personal Effects Coverage Extension is $25,000.

**N.  Tenant Move Back Expenses**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Tenant Move Back Expenses**

**(1)** We will reimburse you for expenses you pay for Covered Move Back Costs of your tenants who temporarily vacate a portion of the building at a "premises". The vacancy must have occurred while the portion of the building rented by your tenant could not be occupied due to direct "loss" to your Covered Property caused by or resulting from a Covered Cause of Loss during the "coverage term". The move back must be completed within 60 calendar days after the portion of the building rented by your tenant has been repaired or rebuilt and is ready for occupancy.

**(2)** Covered Move Back Costs means only documented, reasonable and necessary costs of:

**(a)** Packing, insuring and transporting business personal property;

**(b)** Re-establishing electric utility and communication services, less refunds from discontinued services;

**(c)** Assembling and setting up fixtures and equipment; or

**(d)** Unpacking and re-shelving stock and supplies.

  
**(3)** If your tenants have valid and collectible insurance for Covered Move Back Costs, we will pay only for the amount of Covered Move Back Costs in excess of the amount payable from such other insurance.

The most we will pay for loss in any one occurrence under this Tenant Move Back Expenses Coverage Extension is the Blanket Coverage Limit as provided in Section **Y** of this endorsement.

**O. Peak Season**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Peak Season**

**1.** In the event that the limit of insurance stated in the Declarations for Business Personal Property is insufficient to fully insure a covered "loss" due to a Peak Season Demand for your inventory, we will pay up to the Blanket Coverage Limit as provided in Section **Y** of this endorsement.

**2.** Peak Season Demand means a temporary (90 consecutive days or less) increase in your inventory to meet a seasonal demand as verified by:

   **a.** Your previous inventory records for that historical period of time; and

   **b.** Custom and practice in your industry.

**P. Personal Property of Others**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Personal Property of Others**

In the event that the limit of insurance stated in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** for Business Personal Property is insufficient to fully insure a covered "loss" to both your Covered Personal Property and property described in Paragraph **(8)** of **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property,** we will pay up to the Blanket Coverage Limit in any one occurrence as provided in Section **Y** of this endorsement for such property.

**Q. Debris Removal**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

In the event that the limits of insurance stated in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, b. Debris Removal** are insufficient to fully cover a "loss" insured thereunder, we will pay up to the Blanket Coverage Limit in any one occurrence as provided in Section **Y** of this endorsement.

**R. Fire Protection Equipment Recharge**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, d. Fire Protection Equipment Recharge,** the last paragraph is deleted and replaced by the following:

The most we will pay for loss in any one occurrence under this Fire Protection Equipment Recharge Coverage Extension is $50,000. This Coverage is in addition to the Limits of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

**S. Paved Surfaces**

For the purposes of this endorsement only:

**1.** **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered, i. Paved Surfaces** is deleted in its entirety and replaced by the following:

   Except as provided in **4. Additional Coverages, Paved Surfaces,** bridges, roadways, walks, patios or other paved surfaces.

**2.** **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended to include the following:

   **Paved Surfaces**

   We will pay for direct "loss" resulting from any of the Covered Causes of Loss to bridges, roadways, walks, patios or other paved surfaces.

   The most we will pay for loss in any one occurrence under this Paved Surfaces Coverage Extension is $25,000.

**T. Temperature Change**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

<u>Temperature Change</u>

**(1) Coverage**

   **(a) BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 1. Covered Property** is deleted in its entirety and replaced by the following:

   Covered Property means "perishable stock" located in a building at a "premises".

   **(b) BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered** is deleted in its entirety and replaced by the following:

   Covered Property does not include:

   <u>"Perishable Stock" Not in Buildings</u>

   "Perishable stock" located on buildings, in or on vehicles, or otherwise in the open.

**(2) Covered Causes of Loss**

   **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, a. Covered Causes of Loss** is deleted in its entirety and replaced by the following:

   **a. Covered Causes of Loss**

   Covered Causes of Loss means direct "loss" from "temperature change" to Covered Property unless "loss" is excluded or limited in this Coverage Part.

**(3) Excluded Causes of Loss**

   **(a) BUILDING AND PERSONAL PROPERTY COVERAGE FORM SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension, except as follows:

   **(1) Exclusion (1)(b) Earth Movement**;

   **(2) Exclusion (1)(c) Governmental Action**;

   **(3) Exclusion (1)(d) Nuclear Hazard**;

   **(4) Exclusion (1)(f) War and Military Action**;

   **(5) Exclusion (1)(g) Water**; or

   **(6) Exclusion (1)(h) "Fungi", Wet Rot, Dry Rot, and Bacteria.**

   **(b)** In addition to Paragraph **(3)(a)** of this Coverage Extension, we will not pay for direct "loss" caused by or resulting from any of the following:

   **1)** The disconnecting of any heating, refrigerating, cooling or humidity control system from the source of its power;

   **2)** The deactivation of electrical power caused by the manipulation of any switch or other device (on "premises") used to control the flow of electrical power or current;

   **3)** The inability of an Electrical Utility Company or other power source to provide sufficient power due to:

   **a)** Lack of fuel; or

   **b)** Governmental order;

   **4)** The inability of a power source at the "premises" to provide sufficient power due to the lack of generating capacity to meet demand; or

   **5)** Breaking of any glass that is a permanent part of any heating, refrigeration, cooling or humidity control unit.

**(4) Limits of Insurance**

   **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION B. LIMITS OF INSURANCE** is deleted in its entirety and replaced by the following:

   **SECTION B. LIMITS OF INSURANCE**

   **a.** The most we will pay for all direct "loss" in any one occurrence under this Temperature Change Coverage Extension is $15,000, including any "Business Income", "Rental Value", and Extra Expense loss.

   **b.** The Limit of Insurance for Temperature Change is not an additional amount of insurance and will not increase the Limit of Insurance shown

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

in the Declarations for Business Personal Property or "stock".

**(5) Duties in the Event of Loss**

**BUILDING AND PERSONAL PROP-ERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 3. Duties in the Event of Loss or Damage, a.(2)** is deleted in its entirety and replaced by the following:

**(2)** All claims under this Temperature Change Coverage Extension should be reported immediately upon occurrence. Include a description of the damaged "perishable stock". All damaged "perishable stock" must be available for inspection and verification.

**(6) Coinsurance**

**BUILDING AND PERSONAL PROP-ERTY COVERAGE FORM, SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to the coverage provided by this endorsement.

**(7) Definitions**

**BUILDING AND PERSONAL PROP-ERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following definitions:

"Perishable stock" means personal property:

**a.** Preserved and maintained under controlled conditions; and

**b.** Susceptible to "loss" if the controlled conditions change.

"Temperature change" means:

**a.** The fluctuation or total interruption of electrical power, either on or off "premises", resulting from conditions beyond your control.

**b.** Mechanical breakdown or mechanical failure of any refrigerating or cooling apparatus or equipment (on "premises") including the blowing of any fuse, fuses, or circuit breakers, only while such equipment is at the "premises".

**c.** Contamination by refrigerant.

**d.** Damage due to the freezing of "perishable stock" that is not meant to be frozen resulting from the faulty operation of any stationary heating plant, when such "perishable stock" is contained within a building at the "premises".

**U. Nonowned Building Damage**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, j. Nonowned Building Damage** is deleted in its entirety and replaced by the following:

If you are a tenant, you may extend the insurance provided by this Coverage Part for Business Personal Property to direct "loss" that occurs to the building at a "premises" you occupy but do not own.

This Coverage Extension applies only if your lease makes you legally responsible for that part of the building sustaining "loss".

This Coverage Extension does not apply to:

**(1)** Glass, including lettering and ornamentation, and also necessary:

**(a)** Repair or replacement of encasing frames or alarm tapes; and

**(b)** Expenses incurred to board up openings or remove or replace obstruction.

**(2)** Building materials and equipment removed from the "premises".

The most we will pay for loss in any one occurrence under this Nonowned Building Damage Coverage Extension is:

**(1)** The actual "loss" sustained up to the applicable Limit of Insurance for Business Personal Property for direct "loss" caused by theft, burglary or robbery, or the attempt of the foregoing; or

**(2)** The applicable Limit of Insurance for Business Personal Property or $25,000, whichever is less, for "loss" caused by any other Covered Cause of Loss, not referenced in Paragraph **U.(1)** above.

**V. Inflation Guard**

For the purposes of this endorsement only, the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** is amended to show 4% for Inflation Guard in the OPTIONAL COVERAGES - Inflation Guard column for each scheduled Building Property. If an Inflation Guard percentage is already indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** for that Building property, this percentage is excess of that Inflation Guard percentage for that Building property.

**W. Brands and Labels**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**COVERAGE FORM, SECTION A. COVER-
AGE, 5. Coverage Extensions** is amended
to include the following:

<u>Brands and Labels</u>

If branded or labeled merchandise that is
Covered Property is damaged by a Covered
Cause of Loss, we may take all or any part of
the property at an agreed or appraised value.
If so, you may:

**(1)** Stamp "salvage" on the merchandise or
its containers, if the stamp will not physi-
cally damage the merchandise; or

**(2)** Remove the brands or labels, if doing so
will not physically damage the merchan-
dise. You must re-label the merchandise
or its containers to comply with the law.

The most we will pay for loss in any one
occurrence under this Brands and La-
bels Coverage Extension is $25,000.

**X.   Utility Services**

For the purposes of this endorsement only,
**BUILDING AND PERSONAL PROPERTY
COVERAGE FORM, SECTION A. COVER-
AGE, 5. Coverage Extensions, q. Utility
Services** is deleted in its entirety and re-
placed by the following:

**q.   Utility Services**

We will pay for:

**(1)** Direct "loss" to Covered Property at
your "premises" except for direct
"loss" resulting from the partial or
complete failure of Wastewater
Removal Services; and

**(2)** Loss of "Business Income", "Rental
Value" and Extra Expenses as pro-
vided in **SECTION A. COVERAGE,
5. Coverage Extensions, b. Busi-
ness Income and Extra Expense;**

caused by or resulting from the partial or
complete failure of utility services to the
"premises".

The partial or complete failure of the
utility services listed below must be
caused by direct "loss" caused by a
Covered Cause of Loss to the following
property:

**(1)** Power Supply Property, meaning
the following types of property sup-
plying electricity, steam or natural
gas to the "premises":

**(a)** Utility generating plants;

**(b)** Switching stations;

**(c)** Substations;

**(d)** Transformers; and

**(e)** Transmission, distribution, ser-
vice, or similar lines, including
all such overhead lines of any
type, except as modified in
Paragraph **X.(6)** below;

**(2)** Water Supply Property, meaning
the following types of property sup-
plying water to the "premises":

**(a)** Pumping stations; and

**(b)** Water mains.

**(3)** Wastewater Removal Property,
meaning a utility system for remov-
ing wastewater and sewage from
the "premises", other than a system
designed primarily for draining
storm water. The utility property in-
cludes sewer mains, pumping sta-
tions and similar equipment for
moving the effluent to a holding,
treatment or disposal facility, and
includes such facilities. Coverage
under this Coverage Extension
does not apply to interruption in
service caused by or resulting from
a discharge of water or sewage due
to heavy rainfall or flooding.

**(4)** Communication Supply Property,
meaning property supplying com-
munication services, including ser-
vice relating to Internet access or
access to any electronic, cellular, or
satellite network; telephone, radio,
microwave, or television services to
the "premises", such as:

**(a)** Communication transmission,
distribution, service, or similar
lines, including fiber optic lines,
including all such overhead
lines of any type, except as
modified in Paragraph **X.(6)** be-
low;

**(b)** Coaxial cables; and

**(c)** Microwave radio relays, exclud-
ing satellites.

**(5)** This Coverage Extension does not
apply to direct "loss" to "electronic
data", including destruction or cor-
ruption of "electronic data".

**(6)** When "loss" from the partial or
complete interruption of utility ser-
vices to a "premises" is caused
solely by "loss" to overhead lines of
any type:

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

**(a)** The most we will pay in any one occurrence for direct "loss" and loss of "Business Income", "Rental Value" and Extra Expense is $5,000. This Limit of Insurance is part of, not in addition to, the Limit of Insurance provided by this Utility Services Coverage Extension; and

**(b)** For loss of "Business Income", "Rental Value" and Extra Expense, **SECTION G. DEFINITIONS, 11.** Period of restoration, Paragraph **a.** is deleted in its entirety and replaced by the following:

    **a.** Begins:

        **(1)** 24 hours after the time of direct "loss" for "Business Income" and "Rental Value" Coverage; or

        **(2)** Immediately after the time of direct "loss" for Extra Expense Coverage.

The most we will pay for all direct "loss" and loss of "Business Income", "Rental Value" and Extra Expense in any one occurrence under this Utility Services Coverage Extension is $75,000.

**Y. Blanket Coverage Limit**

We will pay up to the Limit of Insurance stated in the Schedule of this endorsement in total in any one occurrence for the sum of all "loss" insured under coverages provided in this endorsement which are subject to the Blanket Coverage Limit. You may apportion this Limit among these coverages as you choose.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WATER BACKUP DISCHARGED FROM SEWERS, DRAINS, SEPTIC OR SUMP PUMP SYSTEMS ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL PROPERTY COVERAGE PART

### SCHEDULE

(Enter an "x" in one of the OPTION boxes to activate coverage.)

**OPTION I**

☐   Coverage applies at all "premises" indicated on the Declarations page.

**OPTION II**

☒   Coverage applies only at "premises" scheduled below:

| Loc | Bldg | Address |
|-----|------|---------|
| 1 | 1 | 1100 CHESTNUT ST<br>PHILADELPHIA, PA 19107-4802 |
| 2 | 1 | 7416 BALTIMORE AVE<br>COLLEGE PARK, MD 20740-3208 |

**Limit of Insurance Per "Premises":**    $   50,000

**Deductible Per Occurrence:**    $   1,000

This endorsement applies only to the "premises" indicated in the Schedule of this endorsement.

**A. Modified Water Exclusion**

For the purposes of this endorsement only:

1. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusion (1)(g) Water,** Paragraph **3)** is deleted in its entirety and replaced by the following:

    3)   Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems,** water that has entered and then backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment; or

2. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusion (1)(g) Water,** Paragraph **5)** is deleted in its entirety and replaced by the following:

    5)   Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems,** waterborne material carried or otherwise moved by any of the water referred to in Paragraphs **(g)1), (g)3)** or **(g)4),** or material carried or otherwise moved by mudslide or mudflow as described in Paragraph **(g)2).**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**B.** **Coverage - Water Backup Discharged From Sewers, Drains, Septic or Sump Pump Systems**

With respect to the "premises" identified in the Schedule of this endorsement, and for the purposes of this endorsement only:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, a. Covered Causes of Loss** is deleted in its entirety and replaced by the following:

**a.** **Covered Cause of Loss**

Covered Causes of Loss means water or waterborne material that has entered and then backs up through and is discharged from a sewer, drain (including roof drains and related fixtures), septic system, sump pump system or related equipment located on a "premises" identified in the Schedule of this endorsement;

**C.** **Exclusions**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions,** Paragraph **(2)** is amended to include the following:

**1.** The coverage provided by this endorsement does not apply if discharge as described in Paragraph **B.** is caused by or results from:

**a.** Failure to perform routine maintenance or repairs necessary to keep a sewer, drain, septic or sump pump system or similar equipment free from obstruction and in proper working condition;

**b.** Sump pump system failure due to the failure of power or other utility services supplied to a "premises" identified in the Schedule of this endorsement; or

**c.** Equipment breakdown of any sump pump system or similar equipment.

**2.** We will not pay the cost of repairing or replacing a sewer, drain, septic or sump pump system or any related parts or equipment.

**3.** This endorsement does not apply if discharge as described in Paragraph **B.** is caused by or results from flood, meaning the partial or complete inundation of normally dry land areas due to:

**a.** The unusual or rapid accumulation or runoff of rain or surface waters from any source; or

**b.** Waves, tidal waters, tidal waves (including tsunami); or

**c.** Water from rivers, ponds, lakes, streams, or any other body of water that rises above, overflows from, or is not contained within its natural or man-made boundary; and

All whether driven by wind or not, including storm surge.

**D.** **Coinsurance**

For the purposes of this endorsement only, **BUILDING AND PESONAL PROPERTY COVERAGE FORM, SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance** is deleted in its entirety.

**E.** **Limit of Insurance**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION B. LIMITS OF INSURANCE** is amended to include the following:

**1.** The most we will pay for all "loss" to Covered Property, including loss of "Business Income", "Rental Value" and Extra Expense, in any one occurrence caused by or resulting from water or waterborne material that has entered and then backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment is the applicable Limit of Insurance shown in the Schedule of this endorsement.

**2.** The Limit of Insurance described in Paragraph **E.1.** is not an additional amount of insurance, and is included in the total Limit of Insurance referenced in the Declarations for the Coverages and "premises" indicated in the Schedule of this endorsement.

**F.** **Deductible**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION C. DEDUCTIBLE** is amended to include the following:

**Water Backup Discharged From Sewers, Drains, Septic or Sump Pump Systems**

**1.** The deductible indicated in the Schedule of this endorsement is the only deductible that applies to each direct "loss" caused by water or waterborne material that backs up through and is discharged

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

from a sewer, drain, septic system, sump pump or related equipment.

2. We will not pay for "loss" in any one occurrence until the amount of "loss" exceeds the deductible shown in the Declarations or the Schedule of this endorsement, whichever is greater. We will then pay the amount of "loss" in excess of the deductible, up to the applicable Limit of Insurance in the Schedule of this endorsement.

**G. Other Insurance**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment** is amended to include the following:

The Coverage provided by this endorsement is excess over any other valid insurance, whether you can collect from it or not.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EQUIPMENT BREAKDOWN COVERAGE
### (Excluding Production Machinery)

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE FORM**

**A. COVERAGE**

1. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE** is amended by adding the following:

   We will pay for direct damage to Covered Property caused by or resulting from an "accident" at the "premises".

2. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** is amended by:

   a. Adding the following to **(1)(e) Utility Services, (1)(g) Water 1), (2)(a) Electrical Current, (2)(d) Miscellaneous Causes of Loss, (2)(j) Exposure to Weather, (3)(a) Weather Conditions, (3)(b) Acts or Decisions,** and **(3)(c) Defects, Errors, and Omissions:**

      However, this exclusion does not apply if these causes of loss are caused by, or result from, an "accident" to Covered Property at the "premises".

   b. Deleting in its entirety **(2)(e) Explosion of Steam Apparatus.**

3. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations** is amended:

   a. By deleting in its entirety:

      (1)  **(1)(a)** Steam Apparatus; and

      (2)  **(1)(b)** Hot Water Boilers,

   b. And by adding the following:

      The following limitations apply only to "loss" covered by this endorsement. The sublimits provided in Paragraphs **(1), (2)** and **(3)** below are included within, and are not in addition to, the Limit of Insurance shown in the Declarations as applicable to the Covered Property. These limits, or the applicable Limit of Insurance shown in the Declarations as applicable to the Covered Property, whichever is less,

apply. These limits apply to direct damage only.

(1) **Ammonia Contamination Limitation**

   If Covered Property is contaminated by ammonia as a result of an "accident" to Covered Property at the "premises", the most we will pay for this kind of damage, including salvage expense, is $50,000 per location.

(2) **Data, Media and Software Restoration**

   If "electronic data" is destroyed or corrupted as a result of an "accident" to covered equipment, the most we will pay for the expenses incurred by you for the restoration of that "electronic data" is $50,000 for all loss sustained in the "coverage term", regardless of the number of "accidents" or the number of "premises" involved.

(3) **"Hazardous Substance" Limitation**

   The following applies despite the operation of the Ordinance or Law Exclusion.

   If Covered Property is damaged, contaminated or polluted by a "hazardous substance" as a result of an "accident" to Covered Property at the "premises", the most we will pay for any additional expenses incurred by you for clean up, repair, replacement or disposal of that property is $50,000. As used here, additional expenses mean expenses incurred beyond those for which we would be liable if no "hazardous substance" had been involved.

**B. Additional Coverages**

For the purposes of the coverages in this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION**

**A. COVERAGE, 4. Additional Coverages** is amended as follows:

**1.** The first paragraph is deleted in its entirety and replaced with the following:

All other terms and conditions of this Coverage Part, including Limits of Insurance and deductibles, apply to these Additional Coverages.

**2.** The following is added:

**a. Drying Out**

If electrical equipment included in Covered Property requires "drying out" as a result of a "flood", the reasonable expense incurred for the "drying out" will be covered. This Additional Coverage is included within the Limit of Insurance shown in the Declarations as applicable to the Covered Property.

**b. Expediting Expenses**

With respect to "loss" covered by this endorsement, and with respect to your damaged Covered Property, we will pay the reasonable extra cost to:

**(1)** Make temporary repairs;

**(2)** Expedite permanent repairs; and

**(3)** Expedite permanent replacement.

**c. Non-Owned Utility Service Equipment**

We will pay for indirect loss resulting from an "accident" to non-owned utility equipment described in **E. Definitions, 1.a.(6)** but we will not pay for any expense to repair or replace direct damage to non-owned utility equipment that:

**(1)** You do not own, lease or rent, or

**(2)** That is not in your care custody and control.

This Additional Coverage is included within the Limit of Insurance shown in the Declarations as applicable to the Covered Property.

**C. Deductible**

For the purposes of the coverages in this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION C. DEDUCTIBLE** is amended by adding the following:

The deductible applicable to "loss" covered by this endorsement is $500, or the deductible indicated in the Declarations as being applicable to the lost or damaged Covered Property, whichever is greater.

**D. Conditions**

For the purposes of the coverages in this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION E. ADDITIONAL CONDITIONS** is amended by adding the following:

**1. Suspension**

Whenever any covered equipment is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against "loss" from an "accident" to that covered equipment. This can be done by delivering or mailing a written notice of suspension to:

**a.** Your last known address; or

**b.** The address where the covered equipment is located.

Once suspended in this way, your insurance can be reinstated only by written notice from us.

If we suspend your insurance, you will get a pro rata refund of premium for that covered equipment. However, the suspension will be effective even if we have not yet made or offered a refund.

**2. Inspection**

If any Covered Property requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf.

**E. Definitions**

For the purposes of the coverages in this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended by adding the following:

**1. a.** "**Accident**" means a sudden and accidental breakdown of the following covered equipment:

**(1)** Any boiler;

**(2)** Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents;

**(3)** Any piping and its accessory equipment;

**(4)** Any refrigeration or air conditioning system; or

**(5)** Any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

**(6)** Equipment of a type described in definition **a.(1)** through **(5)** above which you do not own, lease or rent and is not in your care, custody or control that is on or within one mile of a covered "location", and is supplying you with electricity, gas, water, steam, heat, refrigeration, air conditioning or communication services.

At the time the breakdown occurs, it must become apparent by physical damage that requires repair or replacement of the covered equipment or part thereof.

**b.** None of the following is an "accident":

**(1)** Depletion, deterioration, corrosion or erosion, wear and tear;

**(2)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

**(3)** The functioning of any safety or protective device; or

**(4)** The breakdown of any structure or foundation.

**c.** None of the following are covered equipment:

**(1)** Any sewer piping, underground gas piping, or piping forming a part of a sprinkler system;

**(2)** Water piping other than boiler feed water piping, boiler condensate return piping or water piping forming a part of a refrigeration or air conditioning system;

**(3)** Insulating or refractory material;

**(4)** Vehicle, elevator, escalator, conveyor, hoist or crane;

**(5)** Felt, wire, screen, die, extrusion plate, swing hammer, grinding disc, cutting blade, non-electrical cable, chain, belt, rope, clutch plate, brake pad, nonmetallic part, or any part or tool subject to periodic replacement; or

**(6)** "Production Machinery".

**d.** If a strike, riot, civil commotion, act of sabotage or vandalism results in an "accident", this insurance applies. However, the War and Military Action Exclusion and the conditions of this Coverage Part still apply.

**2.** **"Drying out"** means restoration of electrical equipment to service following a "flood" by removal of excess moisture from that equipment including:

**a.** Application of heat or controlled electrical current, circulation of air, or use of dehumidification equipment, after rinsing the electrical equipment with clean fresh water if necessary to flush away "flood" debris;

**b.** "Drying out" can be done in place or equipment can be disconnected and removed to a repair facility for drying if necessary.

**c.** "Drying out" does not include or apply to:

**(1)** Replacement or repair of any electrical equipment or parts thereof; or

**(2)** Any expense related to deconstruction, demolition, or reconstruction of any building component, structure or part thereof to gain access to electrical equipment.

**3.** **"Flood"** means a general and temporary condition of partial or complete inundation of normally dry land areas due to:

**a.** The overflow of inland or tidal waters;

**b.** The unusual or rapid accumulation or runoff of surface waters from any source; or

**c.** Mudslides or mudflows, which are caused by flooding as defined above in Paragraph **3.b.** For the purpose of this Covered Cause of Loss, a mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current.

All flooding in a continuous or protracted event will constitute a single "flood".

**4.** **"Hazardous Substance"** means a substance declared to be hazardous to health by a governmental agency.

**5.** **"Production Machinery"** means:

**a.** Production or process machine or apparatus that processes, forms, cuts, shapes grinds or conveys raw material, material in process or finished products, and the computers and their peripherals that control or operate such a machine or apparatus.

**b.** Machine or apparatus used for research, medical, diagnostic, surgical, dental or pathological purposes, and computers and their peripherals that control or operate such a machine or apparatus.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEMPERATURE CHANGE LOSS FORM

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**SCHEDULE**

| Loc | Bldg | Description of Perishable Stock | Limit of Insurance | Deductible |
|-----|------|-------------------------------|--------------------|------------|
| 1 | 1 | FOOD & BEVERAGE | 15,000 | 1,000 |
| 2 | 1 | FOOD & BEVERAGE | 15,000 | 1,000 |

**Per Occurrence Deductible**

$500 unless indicated otherwise as follows:

☐  $1,000      ☐  $2,500      ☒  $  __SEE ABOVE__

**A.  Coverage**

For the purposes of this endorsement only:

1.  **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 1. Covered Property** is deleted in its entirety and replaced by the following:

    Covered Property means "perishable stock" for which a Limit of Insurance is shown in the Schedule of this endorsement.

2.  **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered** is deleted in its entirety and replaced by the following:

    Covered Property does not include:

    **"Perishable Stock" Not in Buildings**

    "Perishable stock" located on buildings, in or on vehicles, or otherwise in the open.

**B.  Covered Causes of Loss**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, a. Cov-** ered Causes of Loss is deleted in its entirety and replaced by the following:

a.  **Covered Causes of Loss**

    Covered Causes of Loss means direct "loss" from "temperature change" to Covered Property unless "loss" is excluded or limited in this Coverage Part.

**C.  Excluded Causes of Loss**

1.  For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this endorsement, except as follows:

    a.  **Exclusion (1)(b) Earth Movement;**

    b.  **Exclusion (1)(c) Governmental Action;**

    c.  **Exclusion (1)(d) Nuclear Hazard;**

    d.  **Exclusion (1)(f) War and Military Action;**

    e.  **Exclusion (1)(g) Water; or**

    f.  **Exclusion (1)(h) "Fungi", Wet Rot, Dry Rot, and Bacteria.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**2.** In addition to Paragraph **C.1.** of this endorsement, we will not pay for direct "loss" caused by or resulting from any of the following:

    **a.** The disconnecting of any heating, refrigerating, cooling or humidity control system from the source of its power;

    **b.** The deactivation of electrical power caused by the manipulation of any switch or other device (on "premises") used to control the flow of electrical power or current;

    **c.** The inability of an Electrical Utility Company or other power source to provide sufficient power due to:

        **(1)** Lack of fuel; or

        **(2)** Governmental order;

    **d.** The inability of a power source at the "premises" to provide sufficient power due to the lack of generating capacity to meet demand; or

    **e.** Breaking of any glass that is a permanent part of any heating, refrigeration, cooling or humidity control unit.

**D.  Limits of Insurance**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION B. LIMITS OF INSURANCE** is deleted in its entirety and replaced by the following:

**SECTION B. LIMITS OF INSURANCE**

**1.** The most we will pay for direct "loss" caused by "temperature change" in any one occurrence is the applicable Limit of Insurance shown in the Schedule of this endorsement.

**2.** The Limit of Insurance is not an additional amount of insurance and will not increase the Limit of Insurance shown in the Declarations for Business Personal Property or "stock". The Limit of Insurance shown in the Schedule is the most we will pay for "loss" caused by "temperature change".

**E.  Deductible**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION C. DEDUCTIBLE** is deleted in its entirety and replaced with the following:

**SECTION C. DEDUCTIBLE**

**1.** We will not pay for direct "loss" in any one occurrence unless the direct "loss" exceeds the Deductible shown in the Schedule of this endorsement. We will then pay the amount of direct "loss" in excess of that Deductible, up to the Limit of Insurance shown in that Schedule.

**2.** No other deductible in this Coverage Part applies to the Coverages provided by this endorsement.

**F.  Duties in the Event of Loss**

For the purpose of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 3. Duties in the Event of Loss or Damage, a.(2)** is deleted in its entirety and replaced by the following:

    **(2)** All claims under this **TEMPERATURE CHANGE LOSS FORM** should be reported immediately upon occurrence. Include a description of the damaged "perishable stock". All damaged "perishable stock" must be available for inspection and verification.

**G.  Coinsurance**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to the coverage provided by this endorsement.

**H.  Definitions**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

**1.** "Perishable stock" means personal property:

    **a.** Preserved and maintained under controlled conditions; and

    **b.** Susceptible to "loss" if the controlled conditions change.

**2.** "Temperature change" means:

    **a.** The fluctuation or total interruption of electrical power, either on or off "premises", resulting from conditions beyond your control.

    **b.** Mechanical breakdown or mechanical failure of any refrigerating or cooling apparatus or equipment (on "premises") including the blowing of any fuse, fuses, or circuit breakers, only while such equipment is at the "premises".

    **c.** Contamination by refrigerant.

    **d.** Damage due to the freezing of "perishable stock" that is not meant to be frozen resulting from the faulty operation of any stationary heating plant, when such "perishable stock" is contained within the building described in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION F. DEFINITIONS.**

## SECTION A. COVERAGE

Coverage is provided as described and limited below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

**a.** "Business Income" including "Rental Value".

**b.** "Business Income" other than "Rental Value".

**c.** "Rental Value".

If option **a.** above is selected, the term "Business Income" will include "Rental Value". If option **c.** above is selected, the term "Business Income" will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

**1.** **Business Income**

    **a.** We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss. With respect to "loss" to personal property in the open (or personal property in a vehicle or portable storage unit), the "premises" include the area within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater.

    **b.** With respect to the requirements set forth in the preceding paragraph, if you are a tenant and occupy only part of the site at which the "premises" are located, for the purposes of this Coverage Part only, your "premises" is the portion of the building which you rent, lease or occupy, including:

        **(1)** Any area within the building or on the site at which the "premises" are located if that area services or is used to gain access to the described "premises".

        **(2)** Your personal property in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater.

**2.** **Extra Expense**

    **a.** Extra Expense coverage is provided at the "premises" described in the Declarations only if the Declarations show that "Business Income" coverage applies at that "premises".

    **b.** Extra Expense means necessary expenses you sustain (as described in Paragraphs **2.c., d.** and **e.**) during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

    **c.** If these expenses reduce the otherwise payable "Business Income" "loss", we will pay expenses (other than the expense to repair or replace property as described in Paragraph **2.d.**) to:

        **(1)** Avoid or minimize the "suspension" of business and to continue "operations" either:

            **(a)** At the "premises"; or

            **(b)** At replacement "premises" or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location; or

        **(2)** Minimize the "suspension" of business if you cannot continue "operations".

    **d.** We will also pay expenses to:

        **(1)** Repair or replace property; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(2)** Research, replace or restore the lost information on damaged "valuable papers and records";

but only to the extent this payment reduces the otherwise payable "Business Income" "loss". If any property obtained for temporary use during the "period of restoration" remains after the resumption of normal "operations", the amount we will pay under this Coverage Form will be reduced by the salvage value of that property.

**e.** Extra Expense as described in Paragraphs **2.a.** thru **2.d.** does not apply to "loss" to Covered Property as described in the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**.

## 3. Covered Causes of Loss

See **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss**.

## 4. Limitation for Electronic Data

**a.** Coverage for "Business Income" does not apply when a "suspension" of "operations" is caused by destruction or corruption of "electronic data", or any "loss" to "electronic data", except as provided under **SECTION A. COVERAGE, 5. Additional Coverages, d. Interruption of Computer Operations**.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of "electronic data", or any "loss" to "electronic data", except as provided under **SECTION A. COVERAGE, 5. Additional Coverages, d. Interruption of Computer Operations**.

**c.** This Limitation does not apply when "loss" to "electronic data" involves only "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

## 5. Additional Coverages

The Additional Coverages in Paragraphs **5.a.** through **5.e.** are included within and not additional "Business Income" and Extra Expense Limits of Insurance.

### a. Alterations and New Buildings

We will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain due to direct "loss" at the "premises" caused by or re-

sulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 1,000 feet of the "premises" and:

    **(a)** Used in the construction, alterations or additions; or

    **(b)** Incidental to the occupancy of new buildings.

If such direct "loss" delays the start of "operations", the "period of restoration" for "Business Income" coverage will begin on the date "operations" would have begun if the direct "loss" had not occurred.

### b. Civil Authority

When a Covered Cause of Loss causes direct damage to property other than Covered Property at the "premises", we will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority coverage for "Business Income" will begin immediately after the time of the first action of civil authority that prohibits access to the "premises" and will apply for a period of up to 30 consecutive days from the date on which such coverage began.

Civil Authority coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the "premises" and will end 30 consecutive days after the date of that action; or when your Civil Authority coverage for "Business Income" coverage ends, whichever is later.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**c.  Extended Business Income**

**(1)** "Business Income" Other Than "Rental Value"

If the necessary "suspension" of your "operations" produces a "Business Income" "loss" payable under this Coverage Part, we will pay for the actual loss of "Business Income" you sustain during the period that:

**(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the "Business Income" amount that would have existed if no direct "loss" had occurred; or

**(ii)** 60 consecutive days after the date determined in **c.(1)(a)** above.

However, Extended Business Income does not apply to loss of "Business Income" sustained as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Business Income" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(2)** "Rental Value"

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this Coverage Part, we will pay for the actual loss of "Rental Value" you sustain during the period that:

**(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct "loss" had occurred; or

**(ii)** 60 consecutive days after the date determined in **c.(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" sustained as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Rental Value" must be caused by direct "loss" at the described "premises" caused by or resulting from any Covered Cause of Loss.

**d.  Interruption of Computer Operations**

**(1)** Subject to all provisions of this Additional Coverage - **Interruption of Computer Operations**, you may extend the insurance that applies to "Business Income" and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss. This Additional Coverage - **Interruption of Computer Operations** does not apply when "loss" to "electronic data" only involves "loss" to "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage - **Interruption of Computer Operations** is $2,500 for all "loss" sustained and expense sustained in any "coverage term", regardless of the number of interruptions or the number of "premises", locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

amount, then the balance is available for "loss" or expense sustained as a result of subsequent interruptions in that "coverage term". A balance remaining at the end of a "coverage term" does not increase the amount of insurance in the next "coverage term". With respect to any interruption which begins in one "coverage term" and continues or results in additional "loss" or expense in that subsequent "coverage term", all "loss" and expense is deemed to be sustained in the "coverage term" in which the interruption began.

**(4)** This Additional Coverage - **Interruption in Computer Operations** does not apply to "loss" sustained or expense sustained after the end of the "period of restoration", even if the amount of insurance stated in Paragraph **d.(3)** of this Additional Coverage has not been exhausted.

**e.   Ingress and Egress**

We will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by the prevention of existing ingress or egress at a "premises" shown in the Declarations due to direct "loss" by a Covered Cause of Loss at a location contiguous to such "premises". However, coverage does not apply if ingress or egress from the "premises" is prohibited by civil authority.

Ingress and egress coverage for "Business Income" will begin immediately after the time of the direct "loss" and will continue for a period up to 30 consecutive days.

Ingress and egress coverage for Extra Expense will begin at time of the direct "loss" and will continue for 30 consecutive days or whenever your Ingress and Egress "business income" coverage ends, whichever occurs first.

**6.   Coverage Extension**

The limit applicable to the Coverage Extension is in addition to the Limit of Insurance. **SECTION D. ADDITIONAL CONDITION, 1. Coinsurance** does not apply to this Coverage Extension.

**Newly Purchased or Leased Locations**

**a.**   You may extend your "Business Income" and Extra Expense coverages to apply to property located at:

**(1)** New buildings or additions while being built on a "premises";

**(2)** Buildings you newly purchase or become required to insure by written contract; or

**(3)** Leased buildings or space therein that you are not required to insure. Such lease must be for a period of 12 consecutive months or longer.

This does not apply to property situated at trade shows, fairs or exhibitions.

**b.**   The most we will pay in total for "Business Income" and Extra Expense "loss" under this Coverage Extension is $100,000 at each location described in Paragraph **6.a.**

**c.**   Insurance under this Coverage Extension will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 90 days pass from the date you begin construction on that part of the building that would qualify as Covered Property;

**(3)** 90 days pass from the date you purchase, lease, or become contractually required to insure property described in Paragraphs **6.a.(2)** and **(3)**; or

**(4)** You report values to us when you acquire your new building or business personal property.

We will charge you additional premium for values reported from the date you purchase or lease the property or begin construction on that part of the building that would qualify as Covered Property.

**SECTION B. LIMITS OF INSURANCE**

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

**SECTION C. LOSS CONDITIONS**

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

**1.   Appraisal**

If we and you disagree on the amount of "Business Income" or Extra Expense "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separate-

ly the amount of "Business Income" or Extra Expense "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2.** **Duties in the Event of Loss**

   **a.** You must see that the following are done in the event you have a "Business Income" or Extra Expense "loss":

      **(1)** Notify the police if a law may have been broken.

      **(2)** Give us prompt notice of the direct "loss". Include a description of the property involved.

      **(3)** As soon as possible, give us a description of how, when, and where the direct "loss" occurred.

      **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

      **(5)** As often as may be reasonably required, permit us to inspect the property proving the "loss" and examine your books and records.

         Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

      **(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

      **(7)** Cooperate with us in the investigation or settlement of the claim.

      **(8)** If you intend to continue your business, you must resume all or part of

your "operations" as quickly as possible.

   **b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3.** **Loss Determination**

   **a.** The amount of "Business Income" "loss" will be determined based on:

      **(1)** The Net Income of the business before the direct "loss" occurred;

      **(2)** The likely Net Income of the business if no direct "loss" had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

      **(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct "loss"; and

      **(4)** Other relevant sources of information, including:

         **(a)** Your financial records and accounting procedures;

         **(b)** Bills, invoices and other vouchers; and

         **(c)** Deeds, liens or contracts.

   **b.** The amount of Extra Expense will be determined based on:

      **(1)** All expenses that exceed the normal operating expenses that would have been sustained by "operations" during the "period of restoration" if no direct "loss" had occurred. We will deduct from the total of such expenses:

         **(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

         **(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(2) Necessary expenses that reduce the "Business Income" "loss" that otherwise would have been incurred.

**c.** **Resumption of Operations**

We will reduce the amount of your:

(1) "Business Income" "loss", other than Extra Expense to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the "premises" or elsewhere.

(2) Extra Expense "loss" to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4.** **Loss Payment**

We will pay for insured "loss" within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

**a.** We have reached agreement with you on the amount of "loss"; or

**b.** An appraisal award has been made.

**SECTION D. ADDITIONAL CONDITION**

**1.** **Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS**.

We will not pay the full amount of any "Business Income" "loss" if the Limit of Insurance for "Business Income" is less than:

**a.** The Coinsurance percentage shown for "Business Income" in the Declarations; times

**b.** The sum of:

(1) The Net Income (Net Profit or Loss before income taxes), and

(2) Operating expenses, including payroll expenses,

that would have been earned or incurred (had no direct "loss" occurred) by your "operations" at the "premises" for the 12 months following the inception, or last previous anniversary date, of this Coverage Part (whichever is later).

Instead, we will determine the most we will pay using the following steps:

**1.** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this Coverage Part by the Coinsurance percentage;

**2.** Divide the Limit of Insurance for the described "premises" by the figure determined in Step **1.**; and

**3.** Multiply the total amount of "loss" by the figure determined in Step **2.**

We will pay the amount determined in Step **3.** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

**1.** Prepaid freight - outgoing;

**2.** Returns and allowances;

**3.** Discounts;

**4.** Bad debts;

**5.** Collection expenses;

**6.** Cost of raw stock and factory supplies consumed (including transportation charges);

**7.** Cost of merchandise sold (including transportation charges);

**8.** Cost of other supplies consumed (including transportation charges);

**9.** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

**10.** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

**11.** All payroll expenses or the amount of payroll expense excluded (if Form **FA 465** is attached); and

**12.** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion - not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example No. 1 (Underinsurance):**

When:     The Net Income and operating expenses for the 12 months follow-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ing the inception, or last previous anniversary date of this Coverage Part at "premises" would have been $400,000.

The Coinsurance percentage is        50%

The Limit of Insurance Is        $150,000

"Business Income" "loss" is        $80,000

Step 1:   $400,000 X 50% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step 2:   $150,000 ÷ $200,000 = .75

Step 3:   $ 80,000 X .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

### Example No. 2 (Adequate Insurance):

When:  The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date of this Coverage Part at the "premises" would have been $400,000.

The Coinsurance percentage is        50%

The Limit of Insurance Is        $200,000

"Business Income" "loss" is        $80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of "loss").

This condition does not apply to Extra Expense.

## SECTION E. OPTIONAL COVERAGES

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

1. **Maximum Period of Indemnity**

   a. **SECTION D. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to this Coverage Part at the "premises" to which this Optional Coverage applies.

   b. The most we will pay in total for "Business Income" and Extra Expense "loss" is the lesser of:

      (1) The amount of "Business Income" and Extra Expense "loss" sustained during the 120 days immediately following the beginning of the "period of restoration"; or

   (2) The Limit of Insurance shown in the Declarations.

2. **Monthly Limit of Indemnity**

   a. **SECTION D. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to this Coverage Part at the "premises" to which this Optional Coverage applies.

   b. The most we will pay for "Business Income" "loss" in each period of 30 consecutive days after the beginning of the "period of restoration" is:

      (1) The Limit of Insurance; multiplied by

      (2) The fraction shown in the Declarations for this Optional Coverage.

   **Example:**

   When:   The "Business Income" Limit of Insurance is $120,000

   The fraction shown in the Declarations for this Optional Coverage is 1/4

   The most we will pay for "loss" in each period of 30 consecutive days is: $120,000 X 1/4 = $30,000.

   If, in this example, the actual amount of "Business Income" "loss" is:

   | Days | | |
   |------|------|------|
   | Days | 1-30 | $40,000 |
   | Days | 31-60 | 20,000 |
   | Days | 61-90 | 30,000 |
   | | | $90,000 |

   We will pay:

   | Days | | |
   |------|------|------|
   | Days | 1-30 | $30,000 |
   | Days | 31-60 | 20,000 |
   | Days | 61-90 | 30,000 |
   | | | $80,000 |

   The remaining $10,000 is not covered.

3. **Business Income Agreed Value**

   a. To activate this Optional Coverage:

      (1) A Business Income Report/Work Sheet must be on file with the Company and must show financial data for your "operations":

         (a) During the 12 months prior to the date of the Work Sheet; and

         (b) Estimated for the 12 months immediately following the inception of this Optional Coverage.

      (2) The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies. The "Business Income" Limit of Insurance indicated on the Declarations should

be at least equal to the Agreed Value, which is determined by:

**(a)** The Coinsurance percentage shown in the Declarations; multiplied by

**(b)** The amount of Net Income and Operating Expenses for the following 12 months you report on the Work Sheet.

**b.** Except as noted in **c.** below, the **ADDITIONAL CONDITION Coinsurance** is suspended until the expiration date of this Coverage Part.

**c.** We will reinstate the **ADDITIONAL CONDITION COINSURANCE** automatically if you do not submit a new Work Sheet and Agreed Value:

**(1)** When you request a change in your "Business Income" Limit of Insurance; or

**(2)** When you request the coinsurance percentage be changed on the Work Sheet.

**d.** If the "Business Income" Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

**(1)** The "Business Income" Limit of Insurance; divided by

**(2)** The Agreed Value.

**Example:**

When:   The Limit of Insurance is $100,000

The Agreed Value is $200,000

"Business Income" "loss" is $80,000

Step (a): $100,000 ÷ $200,000 = .50

Step (b): .50 X $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4.** **Extended Period of Indemnity**

In **SECTION A. COVERAGE, 5. Additional Coverages, c. Extended Business Income**, the number "60" in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

## SECTION F. DEFINITIONS

**1.** "Business Income" means the:

**a.** Net income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses sustained, including payroll.

**2.** "Computer programs" means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**3.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 A.M. standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 A.M. standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**4.** "Electronic data" means information, facts or "computer programs" stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

**5.** "Finished stock" means stock you have manufactured.

"Finished stock" also includes whiskey and alcoholic products being aged, unless there is a coinsurance percentage shown for "Business Income" in the Declarations.

"Finished stock" does not include stock you have manufactured that is held for sale on the "premises" of any retail outlet insured under this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

6   "Loss" means accidental physical loss or accidental physical damage.

7.   "Operations" means:

   a.   Your business activities occurring at the "premises"; and

   b.   The tenantability of the "premises", if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

8.   "Period of restoration" means the period of time that:

   a.   Begins at the time of direct "loss".

   b.   Ends on the earlier of:

      (1)   The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2)   The date when business is resumed at a new permanent location.

   c.   "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

      (1)   Regulates the construction, use or repair, or requires the tearing down of any property; or

      (2)   Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

   d.   The expiration date of the Coverage Part will not cut short the "period of restoration".

9.   "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, asbestos, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

   a.   You are regularly or otherwise engaged in activities which taint or degrade the environment; or

   b.   You use, generate or produce the "pollutant".

10.   "Premises" means the Locations and Buildings described in the Declarations.

11.   "Rental Value" means "Business Income" that consists of:

   a.   Net income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the "premises" described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the "premises" which is occupied by you; and

   b.   Continuing normal operating expenses incurred in connection with that "premises", including:

      (1)   Payroll; and

      (2)   The amount of charges, which are the legal obligation of the tenant(s) but would otherwise be your obligations.

12.   "Suspension" means:

   a.   The slowdown or cessation of your business activities; and

   b.   That a part or all of the "premises" is rendered untenantable if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

13.   "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, card index systems, deeds, drawings, films, maps, mortgages, or proprietary information. But "valuable papers and records" does not mean "money" or "securities" or "electronic data", including the materials on which the "electronic data" is recorded.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# THE CINCINNATI CASUALTY COMPANY

**A Stock Insurance Company**

## CinciPlus®

## CRIME XC+® (EXPANDED COVERAGE PLUS) COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER:   ENP 053 39 92

Named Insured is the same as it appears in the Common Policy Declarations

| Insuring Agreements Forming Part of This Coverage Part | Limit of Insurance | Deductible Amount |
|---|---|---|
| | Per Occurrence/ Coverage Term | Per Occurrence |
| 1.   **Employee Theft** | $25,000 | $500 |
| 2.   **Forgery or Alteration** | $25,000 | $500 |
| 3.   **Inside the Premises - Theft of Money and Securities** | $25,000 | $500 |
| 4.   **Outside the Premises - Theft of Money and Securities** | $5,000 | $500 |
| 5.   **Money Orders And Counterfeit Money** | $25,000 | $500 |

Forms and endorsements applicable to this Coverage Part at policy inception:
CA102    08/07   CRIME EXPANDED COVERAGE (XC®) COVERAGE FORM (DISCOVERY FORM)

The Crime XC+® (Expanded Coverage Plus) Coverage Part consists of this Declaration form and the Crime Coverage Expanded Coverage (XC®) Coverage Form.

# CRIME EXPANDED COVERAGE (XC®) COVERAGE FORM (DISCOVERY FORM)

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is or is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

**A. Insuring Agreements**

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place at any time which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period to Discover Loss Condition **E.1.g.:**

**1. Employee Theft**

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include forgery.

**2. Forgery or Alteration**

**a.** We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

**(1)** Made or drawn by or drawn upon you; or

**(2)** Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

**b.** If you are sued for refusing to pay any instrument covered in Paragraph **2.a.**, on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement.

**3. Inside The Premises - Theft of Money and Securities**

**a.** We will pay for loss of "money" and "securities" inside the "premises" or "banking premises":

**(1)** Resulting directly from "theft" committed by a person present inside such "premises" or "banking premises"; or

**(2)** Resulting directly from disappearance or destruction.

**b.** We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

**c.** We will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of or unlawful entry into those containers.

**4. Outside the Premises - Theft of Money and Securities**

We will pay for loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

**5. Money Orders and Counterfeit Money**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

Includes copyrighted material of ISO Properties, Inc., with their permission

**a.** Money orders issued by any post office, express company or bank that are not paid upon presentation; or

**b.** "Counterfeit money" that is acquired during the regular course of business.

**B. Limit of Insurance**

**1.** The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit of Insurance shown in the Declarations.

**2.** If any loss is covered under more than one Insuring Agreement or Coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any one of those Insuring Agreements or Coverages.

**3.** The Limits of Insurance stated in the Declarations are the most we will pay for all loss under any one Insuring Agreement or Coverage in any one "coverage term", regardless of the number of "occurrences".

The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

**C. Deductible**

**1.** We will not pay for loss resulting directly from an "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

**2.** In the event this insurance applies on an excess basis per Paragraph **(2)(c)** in Condition **E.1.k. Other Insurance**, then only the single highest deductible will apply to the loss.

**D. Exclusions**

**1.** This insurance does not cover:

**a. Acts Committed by You, Your Partners or Your Members**

Loss resulting from "theft" or any other dishonest act committed by:

**(1)** You; or

**(2)** Any of your partners or "members";

whether acting alone or in collusion with other persons.

**b. Acts of Employees Learned of by You Prior to the Policy Period**

Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this insurance and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

**c. Acts of Employees, Managers, Directors, Trustees or Representatives**

Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

**(1)** Whether acting alone or in collusion with other persons; or

**(2)** While performing services for you or otherwise;

except when covered under Insuring Agreement **A.1.**

**d. Confidential Information**

Loss resulting from:

**(1)** The unauthorized disclosure of your confidential information including, but not limited to, patents, trade secrets, processing methods or customer lists; or

**(2)** The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information, credit card information or similar non-public information.

**e. Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

**f. Indirect Loss**

Loss that is an indirect result of an "occurrence" covered by this insurance including, but not limited to, loss resulting from:

**(1)** Your inability to realize income that you would have realized had there been no loss of or

damage to "money", "securities" or "other property".

**(2)** Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

**(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

**g. Legal Fees, Costs and Expenses**

Fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement **A.2.**

**h. Nuclear Hazard**

Loss or damage resulting from nuclear reaction or radiation or radioactive contamination, however caused.

**i. Pollutants**

Loss or damage caused by or resulting from pollutants. Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. Pollutants include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**(1)** You are regularly or otherwise engaged in activities which taint or degrade the environment; or

**(2)** You use, generate or produce the pollutant.

**j. War and Military Action**

Loss or damage resulting from:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or

other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2.** Insuring Agreement **A.1.** does not cover:

**a. Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**b. Trading**

Loss resulting from trading, whether in your name or in a genuine or fictitious account.

**c. Warehouse Receipts**

Loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it.

**3.** Insuring Agreements **A.3.** and **A.4.** do not cover:

**a. Accounting or Arithmetical Errors or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

**b. Exchanges or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**c. Fire**

Loss or damage resulting from fire, however caused, except:

**(1)** Loss of or damage to "money" and "securities"; and

**(2)** Loss from damage to a safe or vault.

Includes copyrighted material of ISO Properties, Inc., with their permission

**d.   Money operated Devices**

Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**e.   Motor Vehicles or Equipment and Accessories**

Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

**f.   Transfer or Surrender of Property**

**(1)** Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

**(a)** On the basis of unauthorized instructions;

**(b)** As a result of a threat to do bodily harm to any person;

**(c)** As a result of a threat to do damage to any property;

**(d)** As a result of a threat to introduce a denial of service attack into your computer system;

**(e)** As a result of a threat to introduce a virus or other malicious instruction into your computer system which is designed to damage, destroy or corrupt data or computer programs stored within your computer system;

**(f)** As a result of a threat to contaminate, pollute or render substandard your products or goods; or

**(g)** As a result of a threat to disseminate, divulge or utilize:

**(i)** Your confidential information; or

**(ii)** Weaknesses in the source code within your computer system.

**(2)** But, this Exclusion does not apply under Insuring Agreement **A.5.** to loss of "money", "securities" or "other property" while outside the "premises" in the

care and custody of a "messenger" if you:

**(a)** Had no knowledge of any threat at the time the conveyance began; or

**(b)** Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**g.   Vandalism**

Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

**h.   Voluntary Parting of Title to or Possession of Property**

Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**E.   Conditions**

The following Conditions apply in addition to the Common Policy Conditions:

**1.   Conditions Applicable to all Insuring Agreements**

**a.   Additional Premises or Employees**

If, while this insurance is in force, you establish any additional "premises" or hire additional "employees", other than through consolidation or merger with, or purchase or acquisition of assets or liabilities of, another entity, such "premises" and "employees" shall automatically be covered under this insurance. Notice to us of an increase in the number of "premises" or "employees" need not be given and no additional premium need be paid for the remainder of the Policy Period shown in the Declarations.

**b.   Concealment, Misrepresentation or Fraud**

This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**(1)** This insurance;

**(2)** The property covered under this insurance;

**(3)** Your interest in the property covered under this insurance; or

**(4)** A claim under this insurance.

**c.** **Consolidation - Merger or Acquisition**

If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

**(1)** You must give us written notice as soon as possible and obtain our written consent to extend the coverage provided by this insurance to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

**(2)** For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this insurance shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

**d.** **Cooperation**

You must cooperate with us in all matters pertaining to this insurance as stated in its terms and conditions.

**e.** **Duties in the Event of Loss**

After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

**(1)** Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreement **A.1.** or **A.2.**) involves a violation of law, you must also notify the local law enforcement authorities.

**(2)** Submit to examination under oath at our request and give us a signed statement of your answers.

**(3)** Produce for our examination all pertinent records.

**(4)** Give us a detailed, sworn proof of loss within 120 days.

**(5)** Cooperate with us in the investigation and settlement of any claim.

**f.** **Employee Benefit Plans**

**(1)** The "employee benefit plans" (hereafter referred to as Plan) are included as Insureds under Insuring Agreement **A.1.**

**(2)** If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator must select a Limit of Insurance for Insuring Agreement **A.1.** that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

**(3)** With respect to loss sustained or "discovered" by any such Plan, Insuring Agreement **A.1.** is replaced by the following:

We will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

**(4)** If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

**(5)** If two or more Plans are insured under this insurance, any payment we make for loss:

**(a)** Sustained by two or more Plans; or

**(b)** Of commingled "funds" or "other property" of two or more Plans;

resulting directly from an "occurrence" will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total Limit of Insurance of all Plans sustaining loss.

Includes copyrighted material of ISO Properties, Inc., with their permission

**(6)** The Deductible Amount applicable to Insuring Agreement **A.1.** does not apply to loss sustained by any Plan.

**g.   Extended Period to Discover Loss**

We will pay for loss that you sustained prior to the effective date of cancellation of this insurance, which is "discovered" by you:

**(1)** No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(2)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**h.   Joint Insured**

**(1)** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

**(2)** If any Insured, or partner, "member" or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

**(3)** An "employee" of any Insured is considered to be an "employee" of every Insured.

**(4)** If this insurance or any of its coverages is cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by you:

**(a)** No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon

the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(b)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**(5)** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

**(6)** Payment by us to the first Named Insured for loss sustained by any Insured, other than an "employee benefit plan", shall fully release us on account of such loss.

**i.   Legal Action Against Us**

You may not bring any legal action against us involving loss:

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of loss with us; and

**(3)** Unless brought within 2 years from the date you "discovered" the loss.

If any limitation in this Condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**j.   Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.** The date we implemented the change in your state; or

Includes copyrighted material of ISO Properties, Inc., with their permission

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**k. Other Insurance**

If other valid and collectible insurance is available to you for loss covered under this insurance, our obligations are limited as follows:

**(1) Primary Insurance**

When this insurance is written as primary insurance, and:

**(a)** You have other insurance subject to the same terms and conditions as this insurance, issued by an insurer other than us or an insurer affiliated with us, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit of Insurance shown in the Declarations bears to the total limit of all insurance covering the same loss.

**(b)** You have other insurance, issued by an insurer other than us or an insurer affiliated with us, covering the same loss other than that described in Paragraph **(1)(a)**, we will only pay for the amount of loss that exceeds:

**(i)** The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

**(ii)** The Deductible Amount shown in the Declarations;

whichever is greater. Our payment for loss is subject to the terms and conditions of this insurance.

**(2) Excess Insurance**

**(a)** When this insurance is written excess over other insurance issued by an insurer other than us or an insurer affiliated with us, we

will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this insurance.

**(b)** However, if loss covered under this insurance is subject to a Deductible, we will reduce the Deductible Amount shown in the Declarations, by the sum total of all such other insurance issued by an insurer other than us or an insurer affiliated with us, plus any Deductible Amount applicable to that other insurance.

**(c)** This insurance is excess of, and applies in addition to, any similar or identical insurance coverage provided by any other Coverage Part forming a part of the policy of insurance of which this Coverage Part forms a component. However, this insurance will not apply to that part of a loss falling within any deductible amount.

Paragraph **(c)** above supersedes any competing Other Insurance Condition contained in any other Coverage Part issued by us.

**l. Ownership of Property; Interests Covered**

The property covered under this insurance is limited to property:

**(1)** That you own or lease; or

**(2)** That you hold for others whether or not you are legally liable for the loss of such property.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

**m. Policy Bridge - Discovery Replacing Loss Sustained**

**(1)** If this insurance replaces insurance that provided you with an

Includes copyrighted material of ISO Properties, Inc., with their permission

extended period of time after cancellation in which to discover loss and which did not terminate at the time this insurance became effective:

**(a)** We will not pay for any loss that occurred during the Policy Period of that prior insurance which is "discovered" by you during the extended period to "discover" loss, unless the amount of loss exceeds the Limit of Insurance and Deductible Amount of that prior insurance. In that case, we will pay for the excess loss subject to the terms and conditions of this policy.

**(b)** However, any payment we make for the excess loss will not be greater than the difference between the Limit of Insurance and Deductible Amount of that prior insurance and the Limit of Insurance shown in the Declarations. We will not apply the Deductible Amount shown in the Declarations to this excess loss.

**(2)** The Other Insurance Condition **E.1.k.** does not apply to this Condition.

**n.  Records**

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

**o.  Recoveries**

**(1)** Any recoveries, whether effected before or after any payment under this insurance, whether made by us or you, shall be applied net of the expense of such recovery:

**(a)** First, to you in satisfaction of your covered loss in excess of the amount paid under this insurance;

**(b)** Second, to us in satisfaction of amounts paid in settlement of your claim;

**(c)** Third, to you in satisfaction of any Deductible Amount; and

**(d)** Fourth, to you in satisfaction of any loss not covered under this insurance.

**(2)** Recoveries do not include any recovery:

**(a)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

**(b)** Of original "securities" after duplicates of them have been issued.

**p.  Territory**

This insurance covers loss that you sustain resulting directly from an "occurrence" taking place within the United States of America (including its territories and possessions), Puerto Rico and Canada.

**q.  Transfer of Your Rights of Recovery Against Others to Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**r.  Valuation - Settlement**

**(1)** The value of any loss for purposes of coverage under this policy shall be determined as follows:

**(a)** Loss of "money" but only up to and including its face value. We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

**(i)** At face value in the "money" issued by that country; or

**(ii)** In the United States of America dollar equivalent determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

**(b)** Loss of "securities" but only up to and including their value at the close of busi-

Includes copyrighted material of ISO Properties, Inc., with their permission

ness on the day the loss was "discovered". We may, at our option:

**(i)** Pay the market value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

**(ii)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of:

   **i.** Market value of the "securities" at the close of business on the day the loss was "discovered"; or

   **ii.** The Limit of Insurance applicable to the "securities".

**(c)** Loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

**(i)** The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose;

**(ii)** The amount you actually spend that is necessary to repair or replace the lost or damaged property; or

**(iii)** The Limit of Insurance applicable to the lost or damaged property.

With regard to Paragraphs **r.(1)(c)(i)** through

**r.(1)(c)(iii),** we will not pay on a replacement cost basis for any loss or damage:

   **i.** Until the lost or damaged property is actually repaired or replaced; and

   **ii.** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

**(2)** We will, at your option, settle loss or damage to property other than "money":

**(a)** In the "money" of the country in which the loss or damage occurred; or

**(b)** In the United States of America dollar equivalent of the "money" of the country in which the loss or damage occurred determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

**(3)** Any property that we pay for or replace becomes our property.

**2. Conditions Applicable to Insuring Agreement A.1.**

**a. Termination as to Any Employee**

This Insuring Agreement terminates as to any "employee":

**(1)** As soon as:

**(a)** You; or

**(b)** Any of your partners, "members", "managers", officers, directors or trustees not in collusion with the "employee";

learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

**(2)** On the date specified in a notice mailed to the first Named In-

sured. That date will be at least 30 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**b. Territory**

We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory Condition **E.1.p.** for a period of not more than 90 consecutive days.

**3. Conditions Applicable to Insuring Agreement A.2.**

**a. Deductible Amount**

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement **A.2.**

**b. Electronic and Mechanical Signatures**

We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

**c. Proof of Loss**

You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

**d. Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.p.** does not apply to Insuring Agreement **A.2.**

**4. Conditions Applicable to Insuring Agreement A.4.**

**a. Armored Motor Vehicle Companies**

Under Insuring Agreement **A.4.,** we will only pay for the amount of loss you cannot recover:

**(1)** Under your contract with the armored motor vehicle company; and

**(2)** From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

**b. Special Limit of Insurance for Specified Property**

We will only pay up to the lesser of $5,000 or the Limit of insurance for any one "occurrence" of loss of or damage to:

**(1)** Precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

**(2)** Manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**F. Definitions**

**1.** "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

**2.** "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

**3.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

Includes copyrighted material of ISO Properties, Inc., with their permission

**4.** "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

**5.** "Discover" or "discovered" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

"Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this insurance.

**6.** "Employee":

  **a.** "Employee" means:

    **(1)** Any natural person:

      **(a)** While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any other dishonest act committed by the "employee";

      **(b)** Who you compensate directly by salary, wages or commissions; and

      **(c)** Who you have the right to direct and control while performing services for you;

    **(2)** Any natural person who is furnished temporarily to you:

      **(a)** To substitute for a permanent "employee" as defined in Paragraph **a.(1)**, who is on leave; or

      **(b)** To meet seasonal or short-term work load conditions;

    while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises";

**(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **a.(2)**;

**(4)** Any natural person who is:

  **(a)** A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan"; and

  **(b)** A director or trustee of yours while that person is engaged in handling "funds" or "other property" of any "employee benefit plan";

**(5)** Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained as a consultant while performing services for you;

**(6)** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside the "premises";

**(7)** Any "employee" of an entity merged or consolidated with you prior to the effective date of this insurance; or

**(8)** Any of your "managers", directors or trustees while:

  **(a)** Performing acts within the scope of the usual duties of an "employee"; or

  **(b)** Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

  **b.** "Employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph **6.a.**

Includes copyrighted material of ISO Properties, Inc., with their permission

7. "Employee benefit plan" means any welfare or pension benefit plan that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

8. "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

9. "Funds" means "money" and "securities".

10. "Manager" means a person serving in a directorial capacity for a limited liability company.

11. "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

12. "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

13. "Money" means:

   a. Currency, coins and bank notes in current use and having a face value; and

   b. Travelers checks, register checks and money orders held for sale to the public.

14. "Occurrence" means:

   a. Under Insuring Agreement **A.1.:**

      (1) An individual act;

      (2) The combined total of all separate acts whether or not related; or

      (3) A series of acts whether or not related;

      committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, before such Policy Period or both.

   b. Under Insuring Agreement **A.2.:**

      (1) An individual act;

      (2) The combined total of all separate acts whether or not related; or

      (3) A series of acts whether or not related;

      committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, before such Policy Period or both.

   c. Under All Other Insuring Agreements:

      (1) An individual act or event;

      (2) The combined total of all separate acts or events whether or not related; or

      (3) A series of acts or events whether or not related;

      committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, before such Policy Period or both.

15. "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, electronic data or any property specifically excluded under this insurance.

16. "Premises" means the interior of that portion of any building you occupy in conducting your business.

17. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or property and includes:

   a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

   b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

   but does not include "money".

18. "Theft" means the unlawful taking of property to the deprivation of the Insured.

19. "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

Includes copyrighted material of ISO Properties, Inc., with their permission

# THE CINCINNATI CASUALTY COMPANY

**A Stock Insurance Company**

# CRIME AND FIDELITY COVERAGE PART DECLARATIONS
# (COMMERCIAL ENTITIES)

Attached to and forming part of POLICY NUMBER:   ENP 053 39 92

Named Insured is the same as it appears in the Common Policy Declarations

Item   Location (address)

Employee Benefit Plan(s) Included as Insureds:

**Coverage is Written:**

☒ **Primary**          ☐ **Excess**          ☐ **Coindemnity**          ☐ **Concurrent**

Coverage is provided only for the Crime Coverage for which a Limit of Insurance is shown below:

| Insuring Agreements Forming Part of This Coverage Part | Limit of Insurance Per Occurrence | Deductible Amount Per Occurrence |
|---|---|---|
| 1.  Employee Theft | $ | $ |
| 2.  Forgery or Alteration | $ | $ |
| 3.  Inside the Premises - Theft of Money and Securities | $ | $ |
| 4.  Inside the Premises - Robbery or Safe Burglary of Other Property | $ | $ |
| 5.  Outside the Premises | $ | $ |
| 6.  Computer Fraud | $            50,000 | $            500 |
| 7.  Funds Transfer Fraud | $            50,000 | $            500 |
| 8.  Money Orders and Counterfeit Money | $ | $ |
|  | $ | $ |

Forms and endorsements applicable to this Coverage Part at policy inception.

```
CR0020    05/06  COMMERCIAL CRIME COVERAGE FORM (DISCOVERY FORM)
CA207     05/16  SOCIAL ENGINEERING FRAUD
CA440     08/07  COMMERCIAL CRIME COVERAGE FORM AMENDATORY ENDORSEMENT
```

The Crime and Fidelity Coverage Part (Commercial Entities) consist of this Declaration Form and the Commercial Crime Coverage Form.

# COMMERCIAL CRIME COVERAGE FORM
# (DISCOVERY FORM)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

**A.  Insuring Agreements**

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place at any time which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period to Discover Loss Condition **E.1.g.:**

**1.  Employee Theft**

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include forgery.

**2.  Forgery or Alteration**

**a.**  We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

**(1)**  Made or drawn by or drawn upon you; or

**(2)**  Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

**b.**  If you are sued for refusing to pay any instrument covered in Paragraph **2.a.**, on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement.

**3.  Inside The Premises - Theft of Money and Securities**

**a.**  We will pay for loss of "money" and "securities" inside the "premises" or "banking premises":

**(1)**  Resulting directly from "theft" committed by a person present inside such "premises" or "banking premises"; or

**(2)**  Resulting directly from disappearance or destruction.

**b.**  We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

**c.**  We will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of or unlawful entry into those containers.

**4.  Inside the Premises - Robbery or Safe Burglary of Other Property**

**a.**  We will pay for loss of or damage to "other property":

**(1)**  Inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or

**(2)**  Inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

**b.**  We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "robbery" or "safe burglary" of "other property", if you are the owner of the "premises" or are liable for damage to it.

c. We will pay for loss of or damage to a locked safe or vault located inside the "premises" resulting directly from an actual or attempted "robbery" or "safe burglary".

**5. Outside the Premises**

a. We will pay for loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

b. We will pay for loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

**6. Computer Fraud**

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises":

a. To a person (other than a "messenger") outside those "premises"; or

b. To a place outside those "premises".

**7. Funds Transfer Fraud**

We will pay for loss of "funds" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

**8. Money Orders and Counterfeit Money**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

a. Money orders issued by any post office, express company or bank that are not paid upon presentation; or

b. "Counterfeit money" that is acquired during the regular course of business.

**B. Limit of Insurance**

The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit of Insurance shown in the Declarations.

If any loss is covered under more than one Insuring Agreement or Coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any

one of those Insuring Agreements or Coverages.

**C. Deductible**

We will not pay for loss resulting directly from an "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

**D. Exclusions**

1. This insurance does not cover:

   a. **Acts Committed by You, Your Partners or Your Members**

   Loss resulting from "theft" or any other dishonest act committed by:

   (1) You; or

   (2) Any of your partners or "members";

   whether acting alone or in collusion with other persons.

   b. **Acts of Employees Learned of by You Prior to the Policy Period**

   Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this insurance and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

   c. **Acts Of Employees, Managers, Directors, Trustees or Representatives**

   Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

   (1) Whether acting alone or in collusion with other persons; or

   (2) While performing services for you or otherwise;

   except when covered under Insuring Agreement **A.1.**

   d. **Confidential Information**

   Loss resulting from:

   (1) The unauthorized disclosure of your confidential information including, but not limited to, pat-

ents, trade secrets, processing methods or customer lists; or

**(2)** The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information, credit card information or similar non-public information.

**e.    Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

**f.    Indirect Loss**

Loss that is an indirect result of an "occurrence" covered by this insurance including, but not limited to, loss resulting from:

**(1)** Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property".

**(2)** Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

**(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

**g.    Legal Fees, Costs and Expenses**

Fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement **A.2.**

**h.    Nuclear Hazard**

Loss or damage resulting from nuclear reaction or radiation or radioactive contamination, however caused.

**i.    Pollution**

Loss or damage caused by or resulting from pollution. Pollution means the discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**j.    War and Military Action**

Loss or damage resulting from:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2.    Insuring Agreement A.1. does not cover:**

**a.    Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**b.    Trading**

Loss resulting from trading, whether in your name or in a genuine or fictitious account.

**c.    Warehouse Receipts**

Loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it.

**3.    Insuring Agreements A.3., A.4. and A.5. do not cover:**

**a.    Accounting or Arithmetical Errors or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

**b.    Exchanges or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**c.   Fire**

Loss or damage resulting from fire, however caused, except:

**(1)** Loss of or damage to "money" and "securities"; and

**(2)** Loss from damage to a safe or vault.

**d.   Money Operated Devices**

Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**e.   Motor Vehicles or Equipment and Accessories**

Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

**f.   Transfer or Surrender of Property**

**(1)** Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

**(a)** On the basis of unauthorized instructions;

**(b)** As a result of a threat to do bodily harm to any person;

**(c)** As a result of a threat to do damage to any property;

**(d)** As a result of a threat to introduce a denial of service attack into your computer system;

**(e)** As a result of a threat to introduce a virus or other malicious instruction into your computer system which is designed to damage, destroy or corrupt data or computer programs stored within your computer system;

**(f)** As a result of a threat to contaminate, pollute or render substandard your products or goods; or

**(g)** As a result of a threat to disseminate, divulge or utilize:

**(i)** Your confidential information; or

**(ii)** Weaknesses in the source code within your computer system.

**(2)** But, this Exclusion does not apply under Insuring Agreement **A.5.** to loss of "money", "securities" or "other property" while outside the "premises" in the care and custody of a "messenger" if you:

**(a)** Had no knowledge of any threat at the time the conveyance began; or

**(b)** Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**g.   Vandalism**

Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

**h.   Voluntary Parting of Title to or Possession of Property**

Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**4.**   Insuring Agreement **A.6.** does not cover:

**a.   Credit Card Transactions**

Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

**b.   Funds Transfer Fraud**

Loss resulting from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

**c.   Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

 © ISO Properties, Inc., 2005

5. Insuring Agreement **A.7.** does not cover:

**COMPUTER FRAUD**

Loss resulting from the use of a computer to fraudulently cause a transfer of "money", "securities" or "other property".

**E. Conditions**

The following Conditions apply in addition to the Common Policy Conditions:

**1. Conditions Applicable to all Insuring Agreements**

**a. Additional Premises or Employees**

If, while this insurance is in force, you establish any additional "premises" or hire additional "employees", other than through consolidation or merger with, or purchase or acquisition of assets or liabilities of, another entity, such "premises" and "employees" shall automatically be covered under this insurance. Notice to us of an increase in the number of "premises" or "employees" need not be given and no additional premium need be paid for the remainder of the Policy Period shown in the Declarations.

**b. Concealment, Misrepresentation or Fraud**

This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning:

(1) This insurance;

(2) The property covered under this insurance;

(3) Your interest in the property covered under this insurance; or

(4) A claim under this insurance.

**c. Consolidation - Merger or Acquisition**

If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

(1) You must give us written notice as soon as possible and obtain our written consent to extend the coverage provided by this insurance to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

(2) For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this insurance shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

**d. Cooperation**

You must cooperate with us in all matters pertaining to this insurance as stated in its terms and conditions.

**e. Duties in the Event of Loss**

After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

(1) Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreement **A.1.** or **A.2.**) involves a violation of law, you must also notify the local law enforcement authorities.

(2) Submit to examination under oath at our request and give us a signed statement of your answers.

(3) Produce for our examination all pertinent records.

(4) Give us a detailed, sworn proof of loss within 120 days.

(5) Cooperate with us in the investigation and settlement of any claim.

**f. Employee Benefit Plans**

(1) The "employee benefit plans" shown in the Declarations (hereafter referred to as Plan) are included as Insureds under Insuring Agreement **A.1.**

(2) If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator must select a Limit of Insurance for Insuring Agree-

ment **A.1.** that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

**(3)** With respect to loss sustained or "discovered" by any such Plan, Insuring Agreement **A.1.** is replaced by the following:

We will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

**(4)** If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

**(5)** If two or more Plans are insured under this insurance, any payment we make for loss:

**(a)** Sustained by two or more Plans; or

**(b)** Of commingled "funds" or "other property" of two or more Plans;

resulting directly from an "occurrence" will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total Limit of Insurance of all Plans sustaining loss.

**(6)** The Deductible Amount applicable to Insuring Agreement **A.1.** does not apply to loss sustained by any Plan.

**g.   Extended Period to Discover Loss**

We will pay for loss that you sustained prior to the effective date of cancellation of this insurance, which is "discovered" by you:

**(1)** No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insur-

ance provides coverage for loss sustained prior to its effective date.

**(2)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**h.   Joint Insured**

**(1)** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

**(2)** If any Insured, or partner, "member" or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

**(3)** An "employee" of any Insured is considered to be an "employee" of every Insured.

**(4)** If this insurance or any of its coverages is cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by you:

**(a)** No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(b)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**(5)** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

**(6)** Payment by us to the first Named Insured for loss sustained by any Insured, other than an "employee benefit plan", shall fully release us on account of such loss.

**i.    Legal Action Against Us**

You may not bring any legal action against us involving loss:

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of loss with us; and

**(3)** Unless brought within 2 years from the date you "discovered" the loss.

If any limitation in this Condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**j.    Liberalization**

If we adopt any revision that would broaden the coverage under this insurance without additional premium within 45 days prior to or during the Policy Period shown in the Declarations, the broadened coverage will immediately apply to this insurance.

**k.    Other Insurance**

If other valid and collectible insurance is available to you for loss covered under this insurance, our obligations are limited as follows:

**(1)  Primary Insurance**

When this insurance is written as primary insurance, and:

**(a)** You have other insurance subject to the same terms and conditions as this insurance, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit of Insurance shown in the Declarations bears to the total limit of all insurance covering the same loss.

**(b)** You have other insurance covering the same loss other than that described in Paragraph **(1)(a)**, we will only pay for the amount of loss that exceeds:

**(i)** The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

**(ii)** The Deductible Amount shown in the Declarations;

whichever is greater. Our payment for loss is subject to the terms and conditions of this insurance.

**(2)  Excess Insurance**

**(a)** When this insurance is written excess over other insurance, we will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this insurance.

**(b)** However, if loss covered under this insurance is subject to a Deductible, we will reduce the Deductible Amount shown in the Declarations, by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance.

**l.    Ownership of Property; Interests Covered**

The property covered under this insurance is limited to property:

**(1)** That you own or lease; or

**(2)** That you hold for others whether or not you are legally liable for the loss of such property.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

**m.   Policy Bridge - Discovery Replacing Loss Sustained**

**(1)** If this insurance replaces insurance that provided you with an extended period of time after cancellation in which to discover loss and which did not terminate

at the time this insurance became effective:

**(a)** We will not pay for any loss that occurred during the Policy Period of that prior insurance which is "discovered" by you during the extended period to "discover" loss, unless the amount of loss exceeds the Limit of Insurance and Deductible Amount of that prior insurance. In that case, we will pay for the excess loss subject to the terms and conditions of this policy.

**(b)** However, any payment we make for the excess loss will not be greater than the difference between the Limit of Insurance and Deductible Amount of that prior insurance and the Limit of Insurance shown in the Declarations. We will not apply the Deductible Amount shown in the Declarations to this excess loss.

**(2)** The Other Insurance Condition **E.1.k.** does not apply to this Condition.

**n. Records**

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

**o. Recoveries**

**(1)** Any recoveries, whether effected before or after any payment under this insurance, whether made by us or you, shall be applied net of the expense of such recovery:

**(a)** First, to you in satisfaction of your covered loss in excess of the amount paid under this insurance;

**(b)** Second, to us in satisfaction of amounts paid in settlement of your claim;

**(c)** Third, to you in satisfaction of any Deductible Amount; and

**(d)** Fourth, to you in satisfaction of any loss not covered under this insurance.

**(2)** Recoveries do not include any recovery:

**(a)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

**(b)** Of original "securities" after duplicates of them have been issued.

**p. Territory**

This insurance covers loss that you sustain resulting directly from an "occurrence" taking place within the United States of America (including its territories and possessions), Puerto Rico and Canada.

**q. Transfer of Your Rights of Recovery Against Others to Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**r. Valuation - Settlement**

**(1)** The value of any loss for purposes of coverage under this policy shall be determined as follows:

**(a)** Loss of "money" but only up to and including its face value. We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

**(i)** At face value in the "money" issued by that country; or

**(ii)** In the United States of America dollar equivalent determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

**(b)** Loss of "securities" but only up to and including their value at the close of business on the day the loss was "discovered". We may, at our option:

**(i)** Pay the market value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

**(ii)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of:

   **i.** Market value of the "securities" at the close of business on the day the loss was "discovered"; or

   **ii.** The Limit of Insurance applicable to the "securities".

**(c)** Loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

**(i)** The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose;

**(ii)** The amount you actually spend that is necessary to repair or replace the lost or damaged property; or

**(iii)** The Limit of Insurance applicable to the lost or damaged property.

With regard to Paragraphs **r.(1)(c)(i)** through **r.(1)(c)(iii),** we will not pay on a replacement cost basis for any loss or damage:

   **i.** Until the lost or damaged property is actually repaired or replaced; and

   **ii.** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

**(2)** We will, at your option, settle loss or damage to property other than "money":

**(a)** In the "money" of the country in which the loss or damage occurred; or

**(b)** In the United States of America dollar equivalent of the "money" of the country in which the loss or damage occurred determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

**(3)** Any property that we pay for or replace becomes our property.

**2. Conditions Applicable to Insuring Agreement A.1.**

**a. Termination as to Any Employee**

This Insuring Agreement terminates as to any "employee":

**(1)** As soon as:

**(a)** You; or

**(b)** Any of your partners, "members", "managers", officers, directors or trustees not in collusion with the "employee";

learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

**(2)** On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If

notice is mailed, proof of mailing will be sufficient proof of notice.

**b.   Territory**

We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory Condition **E.1.p.** for a period of not more than 90 consecutive days.

**3.   Conditions Applicable to Insuring Agreement A.2.**

**a.   Deductible Amount**

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement **A.2.**

**b.   Electronic and Mechanical Signatures**

We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

**c.   Proof of Loss**

You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

**d.   Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.p.** does not apply to Insuring Agreement **A.2.**

**4.   Conditions Applicable to Insuring Agreements A.4. and A.5.**

**a.   Armored Motor Vehicle Companies**

Under Insuring Agreement **A.5.,** we will only pay for the amount of loss you cannot recover:

**(1)** Under your contract with the armored motor vehicle company; and

**(2)** From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

**b.   Special Limit of Insurance for Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to:

**(1)** Precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

**(2)** Manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**5.   Conditions Applicable to Insuring Agreement A.6.**

**a.   Special Limit of Insurance for Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**b.   Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.p.** does not apply to Insuring Agreement **A.6.**

**F.   Definitions**

**1.**  "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

**2.**  "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

**3.**  "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

**4.**  "Discover" or "discovered" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

"Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party

   © ISO Properties, Inc., 2005

under circumstances which, if true, would constitute a loss under this insurance.

5. "Employee":

a. "Employee" means:

(1) Any natural person:

(a) While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any other dishonest act committed by the "employee";

(b) Who you compensate directly by salary, wages or commissions; and

(c) Who you have the right to direct and control while performing services for you;

(2) Any natural person who is furnished temporarily to you:

(a) To substitute for a permanent "employee" as defined in Paragraph a.(1), who is on leave; or

(b) To meet seasonal or short-term work load conditions;

while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises";

(3) Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph a.(2);

(4) Any natural person who is:

(a) A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan"; and

(b) A director or trustee of yours while that person is engaged in handling "funds" or "other property" of any "employee benefit plan";

(5) Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained as a consultant while performing services for you;

(6) Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person having care and custody of property outside the "premises";

(7) Any "employee" of an entity merged or consolidated with you prior to the effective date of this insurance; or

(8) Any of your "managers", directors or trustees while:

(a) Performing acts within the scope of the usual duties of an "employee"; or

(b) Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

b. "Employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph 5.a.

6. "Employee benefit plan" means any welfare or pension benefit plan shown in the Declarations that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

7. "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

8. "Fraudulent instruction" means:

a. An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

b. A written instruction (other than those described in Insuring Agree-

ment **A.2.**) issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

**c.** An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by an "employee" but which was in fact fraudulently transmitted by someone else without your or the "employee's" knowledge or consent.

**9.** "Funds" means "money" and "securities".

**10.** "Manager" means a person serving in a directorial capacity for a limited liability company.

**11.** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**12.** "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

**13.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value; and

**b.** Travelers checks, register checks and money orders held for sale to the public.

**14.** "Occurrence" means:

**a.** Under Insuring Agreement **A.1.:**

**(1)** An individual act;

**(2)** The combined total of all separate acts whether or not related; or

**(3)** A series of acts whether or not related;

committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, before such Policy Period or both.

**b.** Under Insuring Agreement **A.2.:**

**(1)** An individual act;

**(2)** The combined total of all separate acts whether or not related; or

**(3)** A series of acts whether or not related;

committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, before such Policy Period or both.

**c.** Under All Other Insuring Agreements:

**(1)** An individual act or event;

**(2)** The combined total of all separate acts or events whether or not related; or

**(3)** A series of acts or events whether or not related;

committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, before such Policy Period or both.

**15.** "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, electronic data or any property specifically excluded under this insurance.

**16.** "Premises" means the interior of that portion of any building you occupy in conducting your business.

**17.** "Robbery" means the unlawful taking of property from the care and custody of a person by one who has:

**a.** Caused or threatened to cause that person bodily harm; or

**b.** Committed an obviously unlawful act witnessed by that person.

**18.** "Safe burglary" means the unlawful taking of:

**a.** Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

**b.** A safe or vault from inside the "premises".

**19.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or property and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by

actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**20.** "Theft" means the unlawful taking of property to the deprivation of the Insured.

**21.** "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "funds":

**a.** By means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

**b.** By means of written instructions (other than those described in Insuring Agreement **A.2.)** establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

**22.** "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SOCIAL ENGINEERING FRAUD

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME COVERAGE PART**

**SCHEDULE**

Check the appropriate boxes to activate Coverage:

**Social Engineering Fraud Limit of Insurance $**   <u>50,000</u>

**Deductible $**   <u>10,000</u>

☒   **Option I. Social Engineering Fraud - Internal**

    ☐ **A.**    Verification is Required for All "Transfer Instructions"

    ☐ **B.**    Verification Is Required for All "Transfer Instructions" in Excess of $

    ☒ **C.**    Verification of "Transfer Instructions" is Not Required

☒   **Option II. Social Engineering Fraud - External**

    ☐ **A.**    Verification is Required for All "Transfer Instructions"

    ☐ **B.**    Verification Is Required for All "Transfer Instructions" in Excess of $

    ☒ **C.**    Verification of "Transfer Instructions" is Not Required

With regard to this Social Engineering Fraud endorsement, the provisions of the Coverage Form to which this endorsement is attached apply, unless modified by this endorsement.

**A. Coverage**

For the purposes of this endorsement only, **COMMERCIAL CRIME COVERAGE FORM,** Section **A. Insuring Agreements** is amended to include the following:

**Social Engineering Fraud**

**a. Internal (if indicated in Option I. of the Schedule)**

We will pay for loss resulting directly from your having, in good faith, transferred, paid, or delivered "money", "securities" or "other property" in reliance upon a "transfer instruction" purportedly issued by:

**(1)** An "employee", or any of your partners, "members", "managers", "owners", officers, directors or trustees, or you (if you are a sole proprietorship);

but which "transfer instruction" proves to have been fraudulently issued by an imposter without the knowledge or consent of a person listed in Paragraph **a.(1).**

**b. External (If indicated in Option II. of the Schedule)**

We will pay for loss resulting directly from your having, in good faith, transferred, paid, or delivered "money", "securities" or "other property" in reliance upon a "transfer instruction" purportedly issued by your "customer" or "vendor", but which "transfer instruction" proves to have been fraudulently issued by an imposter without the knowledge or consent of a person listed in Paragraph **a.(1)** above.

**c. Verification**

**(1)** The following is a precondition to coverage under this Insuring Agreement.

    **(a)** If Option **I.A.** and/or **II.A.** is selected in the Schedule, you shall verify all "transfer instructions"; or

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

**(b)** If Option **I.B.** and/or **II.B.** is selected in the Schedule, you shall verify all "transfer instructions" in excess of the amount shown;

according to a pre-arranged callback or other established verification procedure before acting upon any such "transfer instruction". Such verification must be documented by you.

**(2)** If Option **I.C.** and/or **II.C.** is selected in the Schedule, verification of "transfer instructions" is not a precondition to coverage under this insuring agreement.

## B. Limit of Insurance

For the purposes of this endorsement only, **COMMERCIAL CRIME COVERAGE FORM**, Section **B. Limit of Insurance** is deleted in its entirety and replaced by the following:

### B. Limit of Insurance

The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit of Insurance shown in the Schedule of this endorsement.

## C. Deductible

For the purposes of this endorsement only, **COMMERCIAL CRIME COVERAGE FORM**, Section **C. Deductible** is deleted in its entirety and replaced by the following:

### C. Deductible

We will not pay for loss resulting directly from an "occurrence" unless the amount of loss exceeds the deductible shown in the Schedule of this endorsement. We will then pay the amount of loss in excess of the deductible up to the Limit of Insurance.

## D. Exclusions

For the purposes of this endorsement only, **COMMERCIAL CRIME COVERAGE FORM,** Section **D. Exclusions** is amended to include the following:

This insurance does not apply to loss or damage that is insured, or would be insured if insurance coverage had been purchased, under any other Insuring Agreement provided or available under this Coverage Part.

## E. Conditions

For the purposes of this endorsement only, **COMMERCIAL CRIME COVERAGE FORM,** Section **E. Conditions, 1.p. Territory** is deleted in its entirety and replaced by the following:

### p. Territory

This insurance covers loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world.

## F. Definitions

For the purposes of this endorsement only, **COMMERCIAL CRIME COVERAGE FORM,** Section **F. Definitions** is amended to include the following:

"Customer" means an entity or individual to whom you sell goods or provide services under a pre-existing agreement that is still in effect at the time of loss or damage.

"Financial institution" means:

**a.** A bank, savings and loan association, savings bank, trust company, credit union or similar depository institution;

**b.** An insurance company; or

**c.** A stock brokerage firm or investment company.

"Owner" means a "member" or any other person having an ownership interest in you.

"Transfer instruction" means an instruction directing you to transfer, pay, or deliver "money", "securities" or "other property".

"Vendor" means an entity or individual from whom you have purchased goods or received services under a pre-existing agreement that is still in effect at the time of loss or damage. Vendor does not include any "financial institution".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMERCIAL CRIME COVERAGE FORM
# AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME COVERAGE FORM**

**A.** It is agreed that **E. Conditions, 1. Conditions Applicable to all Insuring Agreements, j. Liberalization** is deleted in its entirety and replaced by the following:

**j.    Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**B.** It is agreed that **D. Exclusions, 1. i. Pollution** is deleted in its entirety and replaced by the following:

**i.    Pollutants**

Loss or damage caused by or resulting from pollutants. Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. Pollutants include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** You are regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** You use, generate or produce the pollutant.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# THE CINCINNATI CASUALTY COMPANY
A Stock Insurance Company

# CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

| Attached to and forming part of POLICY NUMBER: ENP 053 39 92 | Effective Date 04-29-2019 |
|---|---|

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

**Retroactive Date:  04-29-2019**

## Limits of Insurance and Deductible

| Insuring Agreement | | Annual Aggregate | Sublimit | | Deductible |
|---|---|---|---|---|---|
| A | Response Expenses | $50,000 | | | $1,000 |
| | | | Forensic IT Review | $25,000 | |
| | | | Legal Review | $25,000 | |
| | | | PR Services | $25,000 | |
| B | Defense and Liability | $50,000 | | | $1,000 |
| | | | Regulatory Fines and Penalties | $25,000 | |
| | | | PCI Fines and Penalties | $25,000 | |
| C | Identity Recovery | $25,000 | | | $250 |
| | | | Lost Wages and Child and Elder Care | $5,000 | |
| | | | Mental Health Counseling | $1,000 | |
| | | | Miscellaneous Unnamed Costs | $1,000 | |

| TOTAL ANNUAL PREMIUM | $143 |
|---|---|

| Optional Supplemental Extended Reporting Period - Term: | Optional Supplemental Extended Reporting Period - Premium: |
|---|---|
| 1 YEAR | 28 |
| 2 YEAR | 56 |
| 3 YEAR | 74 |
| 4 YEAR | 93 |
| 5 YEAR | 102 |
| 6 YEAR | 111 |

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| HC102 | 01/18 | CINCINNATI DATA DEFENDER™ COVERAGE FORM |
|---|---|---|
| HC429PA | 03/16 | PENNSYLVANIA CHANGES |

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

## TABLE OF CONTENTS

**Coverage Part Provision:** **Begins on Page:**

Preamble ........................................................................................................................................3

**SECTION I - COVERAGES** ........................................................................................................3

**A.** **Insuring Agreements** ..........................................................................................................3

    **1.** Insuring Agreement A - Response Expenses ................................................................3
    **2.** Insuring Agreement B - Defense and Liability ..............................................................5
    **3.** Insuring Agreement C - Identity Recovery ...................................................................5

**B.** **Exclusions** .........................................................................................................................5

    **1.** Applicable to Insuring Agreements **A** and **B** ...............................................................5

        **a.** Contractual Liability ................................................................................................5
        **b.** Criminal Investigations or Proceedings ..................................................................5
        **c.** Deficiency Correction ..............................................................................................5
        **d.** Extortion .................................................................................................................6
        **e.** Fraudulent, Dishonest or Criminal Acts ..................................................................6
        **f.** Non-monetary Relief ...............................................................................................6
        **g.** Previously Reported Data Compromises ..................................................................6
        **h.** Prior Data Compromises .........................................................................................6
        **i.** Prior or Pending Litigation .....................................................................................6
        **j.** Reckless Disregard .................................................................................................6
        **k.** Uninsurable .............................................................................................................6
        **l.** Willful Complicity ....................................................................................................6

    **2.** Applicable to Insuring Agreement **C** ...........................................................................6

        **a.** Fraudulent, Dishonest or Criminal Acts ..................................................................6
        **b.** Professional or Business Identity ............................................................................6
        **c.** Unreported Identity Theft ........................................................................................6

    **3.** Applicable to Insuring Agreements **A**, **B** and **C** ..........................................................6

        **a.** Nuclear ...................................................................................................................6
        **b.** War .........................................................................................................................6

**SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE** ........................................................7

**SECTION III - DEFENSE AND SETTLEMENT** ...........................................................................8

**SECTION IV - CONDITIONS** .....................................................................................................8

    **1.** Bankruptcy ...............................................................................................................8
    **2.** Due Diligence ............................................................................................................8
    **3.** Duties in the Event of a Claim, Regulatory Proceeding or Loss ...................................9
    **4.** Help Line ................................................................................................................10
    **5.** Legal Action Against Us ..........................................................................................10
    **6.** Legal Advice ...........................................................................................................10
    **7.** Liberalization ..........................................................................................................10
    **8.** Office of Foreign Assets Control (OFAC) Compliance ...............................................11
    **9.** Other Insurance ......................................................................................................11
    **10.** Pre-Notification Consultation .................................................................................11
    **11.** Representations .......................................................................................................11
    **12.** Separation of Insureds ............................................................................................11
    **13.** Service Providers ....................................................................................................11
    **14.** Services ..................................................................................................................11
    **15.** Subrogation ............................................................................................................12
    **16.** Valuation - Settlement ............................................................................................12
    **17.** When We Do Not Renew ..........................................................................................12

HC 102 01 18

Includes copyrighted material of Insurance
Services Office, Inc. with its permission.

Page 1 of 17

## TABLE OF CONTENTS (CONT'D)

**Coverage Part Provision:**                                                                  **Begins on Page:**

**SECTION V - EXTENDED REPORTING PERIODS** .................................................................12

**SECTION VI - DEFINITIONS** ...............................................................................................13

1.  "Affected individual" .............................................................................................13
2.  "Authorized representative" ..................................................................................13
3.  "Claim" ..................................................................................................................13
4.  "Coverage term" ....................................................................................................13
5.  "Coverage territory" ..............................................................................................14
6.  "Data compromise liability" ..................................................................................14
7.  "Defense costs" .....................................................................................................14
8.  "Employee" ............................................................................................................14
9.  "Executive" ............................................................................................................15
10. "Identity recovery case manager" .........................................................................15
11. "Identity recovery expenses" ................................................................................15
12. "Identity recovery insured" ...................................................................................16
13. "Identity theft" ......................................................................................................16
14. "Insured" ...............................................................................................................16
15. "Loss" ....................................................................................................................16
16. "Named insured" ...................................................................................................16
17. "Personal data compromise" ................................................................................16
18. "Personally identifying information" .....................................................................17
19. "Personally sensitive information" ........................................................................17
20. "Policy period" ......................................................................................................17
21. "Regulatory proceeding" .......................................................................................17

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the "named insured" shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VI** - **Definitions**.

## SECTION I - COVERAGES

### A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which an Aggregate Limit of Insurance is shown in the Declarations:

**1. Insuring Agreement A - Response Expenses**

**a.** Coverage under Insuring Agreement **A** - Response Expenses applies only if all of the following conditions are met:

**(1)** There has been a "personal data compromise"; and

**(2)** Such "personal data compromise" is first discovered by you during the "coverage term"; and

**(3)** Such "personal data compromise" took place in the "coverage territory"; and

**(4)** Such "personal data compromise" is reported to us within 60 days after the date it is first discovered by you.

**b.** If the conditions listed in **a.** above have been met, then we will provide coverage for the following expenses when they arise directly from the "personal data compromise" described in **a.** above and are necessary and reasonable. Coverages **(4)** and **(5)** apply only if there has been a notification of the "personal data

compromise" to "affected individuals" as covered under coverage **(3)**.

**(1) Forensic IT Review**

Professional information technologies review if needed to determine, within the constraints of what is possible and reasonable, the nature and extent of the "personal data compromise" and the number and identities of the "affected individuals".

This does not include costs to analyze, research or determine any of the following:

**(a)** Vulnerabilities in systems, procedures or physical security;

**(b)** Compliance with PCI or other industry security standards; or

**(c)** The nature or extent of loss or damage to data that is not "personally identifying information" or "personally sensitive information".

If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under Forensic IT Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**(2) Legal Review**

Professional legal counsel review of the "personal data compromise" and how you should best respond to it. If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Legal Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**(3) Notification to Affected Individuals**

We will pay your necessary and reasonable costs to provide notification of the "personal data compromise" to "affected individuals".

**(4) Services to Affected Individuals**

We will pay your necessary and reasonable costs to provide the following services to "affected individuals":

**(a)** The following services apply to any "personal data compromise".

**1)** Informational Materials

A packet of loss prevention and customer support information.

**2)** Help Line

A toll-free telephone line for "affected individuals" with questions about the "personal data compromise". Where applicable, the line can also be used to request additional services as listed in **(b)1)** and **2)** below.

Note, calls by "affected individuals" or their representatives to the Help Line do not constitute the making of a "claim" under Insuring Agreement **B** - Defense and Liability.

**(b)** The following additional services apply to "personal data compromise" events involving "personally identifying information".

**1)** Credit Report and Monitoring

A credit report and an electronic service automatically monitoring for activities affecting an individual's credit records. This service is subject to the "affected individual" enrolling for this service with the designated service provider.

**2)** Identity Restoration Case Management

As respects any "affected individual" who is or appears to be a victim of "identity theft" that may reasonably have arisen from the "personal data compromise", the services of an identity restoration professional who will assist that "affected individual" through the process of correcting credit and other records and, within the constraints of what is possible and reasonable, restoring control over his or her personal identity.

**(5) PR Services**

We will pay the necessary and reasonable fees and expenses you incur, with our prior written consent, for a professional public relations firm review of and response to the potential impact of the "personal data compromise" on your business relationships. We will only pay for such fees and expenses when such a public relations firm review and response is reasonably necessary to avert or mitigate material damage to your business relationships from the "personal data compromise".

Such fees and expenses include costs to implement public relations recommendations of such public relations firm. However, when such recommendations include advertising and special promotions designed to retain your relationship with "affected individuals", we will not pay for promotions:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(a)** Provided to any of your "executives" or "employees"; or

**(b)** Costing more than $25 per "affected individual".

## 2. Insuring Agreement B - Defense and Liability

**a.** Coverage under Insuring Agreement **B** - Defense and Liability applies only if all of the following conditions are met:

**(1)** During the "coverage term" or any applicable Extended Reporting Period, you first receive notice of a "claim" or "regulatory proceeding" which arises from a "personal data compromise" that:

**(a)** Took place on or after the Retroactive Date shown in the Declarations and before the end of the "policy period";

**(b)** Took place in the "coverage territory"; and

**(c)** Was submitted to us and covered under Insuring Agreement **A** - Response Expenses; and

**(2)** Such "claim" or "regulatory proceeding" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

**b.** If the conditions listed in **a.** above have been met, then we will pay on behalf of the "insured" "defense costs" and "data compromise liability" directly arising from the "claim" or "regulatory proceeding".

**c.** All "claims" or "regulatory proceedings" caused by a single "personal data compromise" will be deemed to have been made at the time that notice of the first of those "claims" or "regulatory proceedings" is received by you.

## 3. Insuring Agreement C - Identity Recovery

**a.** Coverage under Insuring Agreement **C** - Identity Recovery applies only if all of the following conditions are met:

**(1)** There has been an "identity theft" involving the personal identity of an "identity recovery insured" under this Coverage Part; and

**(2)** Such "identity theft" is first discovered by the "identity recovery insured" during the "coverage term"; and

**(3)** Such "identity theft" took place in the "coverage territory"; and

**(4)** Such "identity theft" is reported to us within 60 days after it is first discovered by the "identity recovery insured".

**b.** If the conditions listed in **a.** above have been met, then we will provide the following to the "identity recovery insured":

**(1)** Services of an "identity recovery case manager" as needed to respond to the "identity theft"; and

**(2)** Reimbursement of necessary and reasonable "identity recovery expenses" incurred as a direct result of the "identity theft".

## B. Exclusions

**1.** Applicable to Insuring Agreements **A** and **B** only:

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

**a. Contractual Liability**

An "insured's" assumption of liability by contract or agreement, whether oral or written. However, this exclusion shall not apply to:

**(1)** Any liability that an "insured" would have incurred in the absence of such contract or agreement; or

**(2)** Any PCI fines or penalties explicitly covered under Insuring Agreement **B** – Defense and Liability.

**b. Criminal Investigations or Proceedings**

Any criminal investigations or proceedings.

**c. Deficiency Correction**

Costs to research or correct any deficiency. This includes, but is not limited to, any deficiency in your sys-

tems, procedures or physical security that may have contributed to a "personal data compromise".

**d.   Extortion**

Any extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

**e.   Fraudulent, Dishonest or Criminal Acts**

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by the "insured".

**f.   Non-monetary Relief**

That part of any "claim" seeking any non-monetary relief.

**g.   Previously Reported Data Compromises**

The same facts alleged or contained in any "claim" which has been reported, or in any circumstances of which notice has been given, under any insurance policy of which this Coverage Part is a renewal or replacement.

**h.   Prior Data Compromises**

Any "personal data compromise" first occurring before the Retroactive Date shown in the Declarations, or any "claim" arising from a "personal data compromise" that first occurred prior to the Retroactive Date shown in the Declarations.

**i.   Prior or Pending Litigation**

Any "claim" or other proceeding against an "insured" which was pending or existed prior to the "coverage term", or arising out of the same or substantially the same facts, circumstances or allegations which are the subject of, or the basis for, such "claim" or other proceeding.

**j.   Reckless Disregard**

Your reckless disregard for the security of "personally identifying information" or "personally sensitive information" in your care, custody or control.

**k.   Uninsurable**

Any amount not insurable under applicable law.

**l.   Willful Complicity**

The "insured's" intentional or willful complicity in a "personal data compromise".

**2.**   Applicable to Insuring Agreement **C** only:

This insurance does not apply to:

**a.   Fraudulent, Dishonest or Criminal Acts**

Any fraudulent, dishonest or criminal act by an "identity recovery insured" or any person aiding or abetting an "identity recovery insured", or by any "authorized representative" of an "identity recovery insured", whether acting alone or in collusion with others. However, this exclusion shall not apply to the interests of an "identity recovery insured" who has no knowledge of or involvement in such fraud, dishonesty or criminal act.

**b.   Professional or Business Identity**

The theft of a professional or business identity.

**c.   Unreported Identity Theft**

An "identity theft" that is not reported in writing to the police.

**3.**   Applicable to Insuring Agreements **A, B** and **C**:

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

**a.   Nuclear**

Nuclear reaction or radiation or radioactive contamination, however caused.

**b.   War**

**(1)**   War, including undeclared or civil war or civil unrest;

**(2)**   Warlike action by military force, including action hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)**   Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

## SECTION II - LIMITS OF INSURANCE AND DE-DUCTIBLE

**A.** Insuring Agreement **A** - Response Expenses:

**1.** The most we will pay under Insuring Agreement **A** - Response Expenses is the Response Expenses Limit of Insurance stated in the Declarations.

**2.** The Response Expenses Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **A** - Response Expenses arising out of all "personal data compromise" events which are first discovered by you during the "coverage term". This limit applies regardless of the number of "personal data compromise" events discovered by you during that period.

**3.** A "personal data compromise" may be first discovered by you in one "coverage term" but cause covered "loss" in one or more subsequent "coverage terms". If so, all covered "loss" arising from such "personal data compromise" will be subject to the Response Expenses Limit of Insurance applicable to the "coverage term" when the "personal data compromise" was first discovered by you.

**4.** The most we will pay under Insuring Agreement **A** - Response Expenses for Forensic IT Review, Legal Review and PR Services coverages for "loss" arising from any one "personal data compromise" is the applicable sublimit for each of those coverages stated in the Declarations. These sublimits are part of, and not in addition to, the Aggregate Limit of Insurance referenced in Paragraph **2.** PR Services coverage is also subject to a limit per "affected individual" as described in Section **I., A.1.b.(5)** PR Services.

**5.** Coverage for Services to "affected individuals" is limited to costs to provide such services for a period of up to one year from the date of the notification to the "affected individuals" or the period required by law, whichever is longer. Notwithstanding the foregoing, coverage for Identity Restoration Case Management services initiated within such period may continue for a period of up to one year from the date such Identity Restoration Case Management services are initiated.

**6.** Response Expenses coverage is subject to the Response Expenses Deductible stated in the Declarations. You shall be responsible for such deductible amount as respects each "personal data compromise" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount in order to respond effectively to a "personal data compromise" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**B.** Insuring Agreement **B** - Defense and Liability:

**1.** The most we will pay under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) is the Limit of Insurance stated in the Declarations.

**2.** The Insuring Agreement **B** - Defense and Liability Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for all "loss" covered under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) arising out of all "claims".

**3.** The most we will pay under Insuring Agreement **B** – Defense and Liability for "data compromise liability" and "defense costs" related to Regulatory Fines and Penalties and PCI Fines and Penalties coverages arising from any one "claim" or "regulatory proceeding" is the applicable sublimit for each of those coverages stated in the Declarations. These sublimits are part of, and not in addition to, the Aggregate Limit of Insurance referenced in Paragraph **2.**

**4.** The Defense and Liability Limit of Insurance for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Defense and Liability Limit for the immediately preceding "coverage term".

**5.** The Insuring Agreement **B** - Defense and Liability coverage is subject to the Deductible stated in the Declarations. You shall be responsible for such deductible amount as respects each "claim" or "regulatory proceeding" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount to defend or effect settlement of any "claim", "loss" or "regulatory proceeding" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**C.** Insuring Agreement **C** - Identity Recovery:

**1.** Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the Limit of Insurance available for "identity recovery expenses".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2. Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Annual Aggregate Limit of Insurance stated in the Declarations per "identity recovery insured". Regardless of the number of "identity theft" incidents, this limit is the most we will pay for the total of all "loss" arising out of all "identity thefts" suffered by one "identity recovery insured" which are first discovered by the "identity recovery insured" during the "coverage term". If an "identity theft" is first discovered in one "coverage term" and continues into other "coverage terms", all "loss" arising from such "identity theft" will be subject to the aggregate Limit of Insurance applicable to the "coverage term" when the "identity theft" was first discovered.

3. Legal costs as provided under Item **d.** of the definition of "identity recovery expenses" are part of, and not in addition to, the aggregate limit described in Paragraph **2.**

4. Item **e.** (Lost Wages) and Item **f.** (Child and Elder Care Expenses) of the definition of "identity recovery expenses" are jointly subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to wages lost and expenses incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

5. Item **g.** (Mental Health Counseling) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate limit described in Paragraph **2.** Coverage is limited to counseling that takes place within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

6. Item **h.** (Miscellaneous Unnamed Costs) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to costs incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

7. Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Identity Recovery Deductible stated in the Declarations. Each "identity recovery insured" shall be responsible for such deductible amount only once during each "coverage term". This deductible applies only to "identity recovery expenses".

The Limits of Insurance apply separately to each "coverage term".

## SECTION III - DEFENSE AND SETTLEMENT

The provisions contained within this Section apply only to Insuring Agreement **B** - Defense and Liability.

1. We will have the right and duty to select counsel and defend the "insured" against any "claim" or "regulatory proceeding" covered by Insuring Agreement **B** - Defense and Liability, regardless of whether the allegations of such "claim" or "regulatory proceeding" are groundless, false or fraudulent. However, we shall have no duty to defend the "insured" against any "claim" or "regulatory proceeding" seeking damages or other relief not insured by Insuring Agreement **B** - Defense and Liability.

2. We may, with your written consent, make any settlement of a "claim" or "regulatory proceeding" which we deem reasonable. If you withhold consent to such settlement, our liability for all "loss" resulting from such "claim" will not exceed the amount for which we could have settled such "claim" or "regulatory proceeding" plus "defense costs" incurred as of the date we proposed such settlement in writing to you.

3. We shall not be obligated to pay any "loss", or to defend or continue to defend any "claim" or "regulatory proceeding", after the Insuring Agreement **B** - Defense and Liability Limit of Insurance has been exhausted.

4. We shall pay all interest on that amount of any judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance which accrues:

   **a.** After entry of judgment; and

   **b.** Before we pay, offer to pay or deposit in court that part of the judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance or, in any case, before we pay or offer to pay the entire Insuring Agreement **B** - Defense and Liability Limit of Insurance.

   These interest payments shall be in addition to and not part of the Defense and Liability Limit.

## SECTION IV – CONDITIONS

1. **Bankruptcy**

   Your bankruptcy, or the bankruptcy of your estate if you are a sole proprietor, will not relieve us of our obligations under this Coverage Part.

2. **Due Diligence**

   You agree to use due diligence to prevent and mitigate "loss" covered under this Coverage Part. This includes, but is not limited to, complying with, and requiring your vendors to

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

comply with, reasonable and industry-accepted protocols for:

**a.** Providing and maintaining appropriate physical security for your premises, computer systems and hard copy files;

**b.** Providing and maintaining appropriate computer and Internet security;

**c.** Maintaining and updating at appropriate intervals backups of computer data;

**d.** Protecting transactions, such as processing credit card, debit card and check payments; and

**e.** Appropriate disposal of files containing "personally identifying information" or "personally sensitive information", including shredding hard copy files and destroying physical media used to store electronic data.

**3.   Duties in the Event of a Claim, Regulatory Proceeding or Loss**

**a.** If, during the "coverage term", the "insured" first becomes aware of any circumstance that could reasonably be expected to give rise to a "claim" or "regulatory proceeding", the "insured" may give written notice to us. The notice must be made as soon as practicable, but in no event more than 60 days after the date the circumstance is first discovered by the "insured", must be made during the "coverage term" and must include:

**(1)** The specific details, including the date, of the circumstance;

**(2)** The alleged injuries or damage sustained or which may be sustained;

**(3)** The names of potential claimants; and

**(4)** The manner in which the "insured" first became aware of the circumstance.

Any subsequent "claim" or "regulatory proceeding" arising out of any circumstance which is the subject of such a written notice will be deemed to have been made at the time written notice in compliance with these requirements was first received by us.

**b.** If a "claim" or "regulatory proceeding" is brought against any "insured", you must:

**(1)** Immediately record the specifics of the "claim" or "regulatory proceeding" and the date received; and

**(2)** Provide us with written notice, as soon as practicable, but in no event

more than 60 days after the date the "claim" or "regulatory proceeding" is first received by you.

**(3)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "regulatory proceeding";

**(4)** Authorize us to obtain records and other information;

**(5)** Cooperate with us in the investigation, settlement or defense of the "claim" or "regulatory proceeding";

**(6)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of "loss" or "defense costs" to which this insurance may also apply; and

**(7)** Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "claim" or "regulatory proceeding".

**c.** In the event of a "personal data compromise" covered under Insuring Agreement **A** - Response Expenses, you must see that the following are done:

**(1)** Notify the police if a law may have been broken.

**(2)** Notify us as soon as practicable, but in no event more than 60 days after the "personal data compromise". Include a description of any property involved.

**(3)** As soon as possible, give us a description of how, when and where the "personal data compromise" occurred.

**(4)** As often as may be reasonably required, permit us to:

**(a)** Inspect the property proving the "personal data compromise";

**(b)** Examine your books, records, electronic media and records and hardware;

**(c)** Take samples of damaged and undamaged property for inspection, testing and analysis; and

**(d)** Make copies from your books, records, electronic media and records and hardware.

**(5)** Send us signed, sworn proof of loss containing the information we request

to investigate the "personal data compromise". You must do this within 60 days after our request. We will supply you with the necessary forms.

**(6)** Cooperate with us in the investigation of the "personal data compromise" or settlement of the "loss".

**(7)** If you intend to continue your business, you must resume all or part of your operations as quickly as possible.

**(8)** Make no statement that will assume any obligation or admit any liability, for any loss for which we may be liable, without our prior written consent.

**(9)** Promptly send us any legal papers or notices received concerning the "personal data compromise" or "loss".

**d.** We may examine any "insured" under oath, while not in the presence of any other "insured" and at such times as may be reasonably required, about any matter relating to this insurance or the "claim" or "loss", including an "insured's" books and records. In the event of an examination, an "insured's" answers must be signed.

**e.** No "insured" may, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

**4. Help Line**

For assistance, the "identity recovery insured" should call the **Identity Recovery Help Line** at **1-866-219-9831**. The **Identity Recovery Help Line** can provide the "identity recovery insured" with:

**a.** Information and advice for how to respond to a possible "identity theft"; and

**b.** Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an "identity recovery insured" prior to a determination that a covered "identity theft" has occurred. Our provision of such services is not an admission of liability under the policy. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered "identity theft" has not occurred.

As respects Expense Reimbursement Coverage, the "identity recovery insured" must send to us, within 60 days after our request, receipts, bills or other records

that support his or her claim for "identity recovery expenses".

**5. Legal Action Against Us**

**a.** No person or organization has a right:

**(1)** To join us as a party or otherwise bring us into a suit asking for damages from an "insured"; or

**(2)** To sue us under this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured"; but we will not be liable for damages that are not payable under this Coverage Part, or that are in excess of the applicable Aggregate Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the first "named insured" and the claimant or the claimant's legal representative.

**b.** You may not bring any legal action against us involving "loss":

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of "loss" with us; and

**(3)** Unless brought within 2 years from the date you reported the "claim" or "loss" to us.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**6. Legal Advice**

We are not your legal advisor. Our determination of what is or is not covered under this Coverage Part does not represent advice or counsel from us about what you should or should not do.

**7. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the "policy period", we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current "policy period". We will make no additional premium charge for this additional coverage during the interim.

8. **Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

9. **Other Insurance**

   a. If any covered "loss" is covered by any other valid policy, then this Coverage Part shall apply only in excess of the amount of any deductible, retention and limit of insurance under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this Coverage Part by reference in such other policy to this policy's policy number.

   b. When this insurance is excess, we will have no duty to defend the "insured" against any "claim" if any other insurer has a duty to defend the "insured" against that "claim". But we will have the right to associate in the defense and control of any "claim" that we reasonably believe is likely to involve the insurance provided under this Coverage Part. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

10. **Pre-Notification Consultation**

You agree to consult with us prior to the issuance of notification to "affected individuals". We assume no responsibility under this Coverage Part for any services promised to "affected individuals" without our prior agreement. If possible, this pre-notification consultation will also include the designated service provider(s) as agreed to under Condition **12.** Service Providers. You must provide the following at our pre-notification consultation with you:

   a. The exact list of "affected individuals" to be notified, including contact information.

   b. Information about the "personal data compromise" that may appropriately be communicated with "affected individuals".

   c. The scope of services that you desire for the "affected individuals". For example, coverage may be structured to provide fewer services in order to make those services available to more "affected indi-

viduals" without exceeding the available Response Expenses Limit.

11. **Representations**

You represent that all information and statements contained in any application or questionnaire submitted in connection with this Coverage Part are true, accurate and complete. All such information and statements are the basis for our issuing this Coverage Part and shall be considered as incorporated into and shall constitute a part of this Coverage Part. Misrepresentation or omission of any material fact may be grounds for the rescission of this Coverage Part.

12. **Separation of Insureds**

Except with respect to the applicable Limit of Insurance, and any rights or duties specifically assigned in this Coverage Part or the policy to which it is attached, to the first "named insured", this insurance applies separately to each "insured" against whom a "claim" is made.

13. **Service Providers**

   a. We will only pay under this Coverage Part for services that are provided by service providers approved by us. You must obtain our prior approval for any service provider whose expenses you want covered under this Coverage Part. We will not unreasonably withhold such approval.

   b. Prior to the Pre-Notification Consultation described in the Pre-Notification Consultation Condition above, you must come to agreement with us regarding the service provider(s) to be used for the Notification to Affected Individuals and Services to Affected Individuals. We will suggest a service provider. If you prefer to use an alternate service provider, our coverage is subject to the following limitations:

      (1) Such alternate service provider must be approved by us;

      (2) Such alternate service provider must provide services that are reasonably equivalent or superior in both kind and quality to the services that would have been provided by the service provider we had suggested; and

      (3) Our payment for services provided by any alternate service provider will not exceed the amount that we would have paid using the service provider we had suggested.

14. **Services**

The following conditions apply as respects any services provided to you or any "affected indi-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

vidual" or "identity recovery insured" by us, our designees or any service firm paid for in whole or in part under this Coverage Part:

**a.** The effectiveness of such services depends on the cooperation and assistance of you, "affected individuals" and "identity recovery insureds".

**b.** All services may not be available or applicable to all individuals. For example, "affected individuals" and "identity recovery insureds" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

**c.** We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

**d.** Except for the services of an "identity recovery case manager" under Insuring Agreement **C** - Identity Recovery, which we will provide directly, you will have a direct relationship with the professional service firms paid for in whole or in part under this Coverage Part. Those firms work for you.

## 15. Subrogation

With respect to any payment under this Coverage Part on behalf of any "insured", we shall be subrogated to the "insured's" rights of recovery to the extent of such payment. The "insured" shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable us to bring suit in the "insured's" name. Any recoveries, less the cost of obtaining them, will be distributed as follows:

**a.** To you, until you are reimbursed for any "loss" you sustain that exceeds the sum of the applicable Aggregate Limit of Insurance and the Deductible Amount, if any;

**b.** Then to us, until we are reimbursed for the payment under this Coverage Part;

**c.** Then to you, until you are reimbursed for that part of the payment equal to the Deductible Amount, if any.

## 16. Valuation - Settlement

All premiums, Limits of Insurance, Deductible Amounts, "loss" and any other monetary amounts under this Coverage Part are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is agreed to or another component of "loss" under this Coverage Part is expressed in any currency other than United

States of America dollars, payment under this Coverage Part shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is entered, settlement amount is agreed upon, or the other component of "loss" is due, respectively.

## 17. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first "named insured" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - EXTENDED REPORTING PERIODS

The provisions contained within this Section apply only to Insuring Agreement **B** - Defense and Liability.

**1.** You shall have the right to the Extended Reporting Periods described in this section, in the event that:

**a.** You or we cancel this Coverage Part;

**b.** You or we refuse to renew this Coverage Part; or

**c.** We renew this Coverage Part on other than a claims-made basis or with a retroactive date later than the Retroactive Date shown in the Declarations.

**2.** If an event as specified in Paragraph **1.** has occurred, you shall have the right to the following:

**a.** An Automatic Extended Reporting Period of 90 days after the effective date of cancellation or nonrenewal at no additional premium in which to give to us written notice of a "claim" or "regulatory proceeding" of which you first receive notice during said Automatic Extended Reporting Period for any "personal data compromise" occurring on or after the Retroactive Date shown on the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part; and

**b.** Upon payment of the additional premium stated in the Declarations, a Supplemental Extended Reporting Period for the term stated in the Supplemental Extended Reporting Period Endorsement will be provided immediately following the effective date of cancellation or nonrenewal in which to give to us written notice of a "claim" or "regulatory proceeding" of which you first receive notice during said Supplemental Extended Reporting Period

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

for any "personal data compromise" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part.

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 60 days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

**c.** The Defense and Liability Limit of Insurance for the Extended Reporting Periods shall be part of, and not in addition to, the Defense and Liability Limit of Insurance for the immediately preceding "coverage term".

## SECTION VI - DEFINITIONS

**1.** "Affected individual" means any person whose "personally identifying information" or "personally sensitive information" is lost, stolen, accidentally released or accidentally published by a "personal data compromise" covered under this Coverage Part. This definition is subject to the following provisions:

**a.** "Affected individual" does not include any business or organization. Only an individual person may be an "affected individual".

**b.** An "affected individual" may reside anywhere in the world.

**2.** "Authorized representative" means a person or entity authorized by law or contract to act on behalf of an "identity recovery insured".

**3.** "Claim":

**a.** Means:

**(1)** A civil proceeding in which it is alleged that the claimant suffered damages arising from:

**(a)** A "personal data compromise" that was covered under Insuring Agreement **A** - Response Expenses section of this Coverage Part and in connection with which you submitted a claim to us and provided notifications and services to "affected individuals" in consultation with us pursuant to Insuring Agreement **A** - Response Expenses; or

**(b)** The violation of a governmental statute or regulation arising from a "personal data compromise" that was covered under Insuring Agreement **A** - Response Expenses and in connection with which you submitted a claim to us and provided notifications and services to "affected individuals" in consultation with us pursuant to Insuring Agreement **A** - Response Expenses.

**(2)** "Claim" includes:

**(a)** An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent;

**(b)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

**(c)** A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

**b.** Does not include any demand or action brought by or on behalf of someone who is:

**(1)** Your "executive";

**(2)** Your owner or part-owner; or

**(3)** A holder of your securities;

in their capacity as such, whether directly, derivatively, or by class action. "Claim" will include proceedings brought by such individuals in their capacity as "affected individuals", but only to the extent that the damages claimed are the same as would apply to any other "affected individual".

**4.** "Coverage term" means the following individual increment, or if a multi-year "policy period", increments, of time, which comprise the "policy period" of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year "policy period", each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

address shown in the Declarations on the earlier of:

**(1)** The day the "policy period" shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**5.** "Coverage territory" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses, anywhere in the world.

**b.** With respect to Insuring Agreement **B** - Defense and Liability, anywhere in the world, however, "claims" must be brought in the United States (including its territories and possessions), Puerto Rico or Canada.

**c.** With respect to Insuring Agreement **C** - Identity Recovery, anywhere in the world

**6.** "Data compromise liability":

**a.** Means the following, when they arise from a "claim" or "regulatory proceeding":

**(1)** Damages (including punitive and exemplary damages and the multiple portion of any multiplied damage award), judgments or settlements;

**(2)** Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such fees and costs are awarded by law or court order; and

**(3)** Pre-judgment interest on that part of any judgment paid by us.

**b.** Also includes any Payment Card Industry (PCI) fine or penalty imposed under a contract to which you are a party when such fine or penalty arises from a "claim". PCI Fines and Penalties do not include any increased transaction costs.

**c.** Also includes any fine or penalty imposed by law, to the extent such fine or penalty is legally insurable under the law of the applicable jurisdiction when such fine or penalty arises from a "regulatory proceeding".

**d.** Does not include:

**(1)** Civil or criminal fines or penalties imposed by law, except for civil fines and penalties expressly covered under paragraphs **b.** and **c.** above;

**(2)** Taxes; or

**(3)** Matters which may be deemed uninsurable under the applicable law.

**e.** With respect to fines and penalties and punitive, exemplary and multiplied damages, the law of the jurisdiction most favorable to the insurability of those fines, penalties or damages shall control for the purpose of resolving any dispute between us and any "insured" regarding whether the fines, penalties or damages specified in this definition above are insurable under this Coverage Part, provided that such jurisdiction:

**(1)** Is where those fines, penalties or damages were awarded or imposed;

**(2)** Is where any "personal data compromise" took place for which such fines, penalties or damages were awarded or imposed;

**(3)** Is where you are incorporated or you have your principal place of business; or

**(4)** Is where we are incorporated or have our principal place of business.

**7.** "Defense costs":

**a.** Means reasonable and necessary expenses resulting solely from the investigation, defense and appeal of any "claim" or "regulatory proceeding" against an "insured". Such expenses may be incurred by us. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

**b.** Does not include the salaries or wages of your "employees" or "executives", or your loss of earnings.

**8.** "Employee" means any natural person, other than an "executive", who was, now is or will be:

**a.** Employed on a full- or part-time basis by you;

**b.** Furnished temporarily to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions;

**c.** Leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties relat-

HC 102 01 18

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 14 of 17

ed to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **8.b.**; or

**d.** Your volunteer worker, which includes unpaid interns.

**9.** "Executive" means any natural person who was, now is or will be:

**a.** The owner of a sole proprietorship that is a "named insured"; or

**b.** A duly elected or appointed:

(1) Director;

(2) Officer;

(3) Managing Partner;

(4) General Partner;

(5) Member (if a limited liability company);

(6) Manager (if a limited liability company); or

(7) Trustee,

of a "named insured".

**10.** "Identity recovery case manager" means one or more individuals assigned by us to assist an "identity recovery insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "identity recovery insured". This includes, with the permission and cooperation of the "identity recovery insured", written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

**11.** "Identity recovery expenses" means the following when they are reasonable and necessary expenses that are incurred as a direct result of an "identity theft" suffered by an "identity recovery insured":

**a.** Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft".

**b.** Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of your efforts to report an "identity theft" or amend or rectify records as to your true name or identity as a result of an "identity theft".

**c.** Costs for credit reports from established credit bureaus.

**d.** Fees and expenses for an attorney approved by us for the following:

(1) The defense of any civil suit brought against an "identity recovery insured".

(2) The removal of any civil judgment wrongfully entered against an "identity recovery insured".

(3) Legal assistance for an "identity recovery insured" at an audit or hearing by a governmental agency.

(4) Legal assistance in challenging the accuracy of the "identity recovery insured's" consumer credit report.

(5) The defense of any criminal charges brought against an "identity recovery insured" arising from the actions of a third party using the personal identity of the "identity recovery insured".

**e.** Actual lost wages of the "identity recovery insured" for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self-employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

**f.** Actual costs for supervision of children or elderly or infirm relatives or dependents of the "identity recovery insured" during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

**g.** Actual costs for counseling from a licensed mental health professional. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

**h.** Any other reasonable costs necessarily incurred by an "identity recovery insured" as a direct result of the "identity theft".

(1) Such costs include:

(a) Costs by the "identity recovery insured" to recover control over his or her personal identity.

(b) Deductibles or service fees from financial institutions.

(2) Such costs do not include:

(a) Costs to avoid, prevent or detect "identity theft" or other loss.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(b)** Money lost or stolen.

**(c)** Costs that are restricted or excluded elsewhere in this Coverage Part or policy.

**12.** "Identity recovery insured" means the following:

**a.** When the entity insured under this Coverage Part is a sole proprietorship, the "identity recovery insured" is the individual person who is the sole proprietor of the "named insured".

**b.** When the "named insured" under this Coverage Part is a partnership, the "identity recovery insureds" are the current partners.

**c.** When the "named insured" under this Coverage Part is a corporation or other form of organization, other than those described in **a.** or **b.** above, the "identity recovery insureds" are all individuals having an ownership position of 20% or more of the insured entity. However, if and only if there is no one who has such an ownership position, then the "identity recovery insured" shall be:

**(1)** The chief executive of the insured entity; or

**(2)** As respects a religious institution, the senior ministerial employee.

**d.** The legally recognized spouse of any individual described in **a.**, **b.** or **c.** above.

An "identity recovery insured" must always be an individual person. The "named insured" under this Coverage Part is not an "identity recovery insured".

**13.** "Identity theft" means the fraudulent use of "personally identifying information". This includes fraudulently using such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

**14.** "Insured" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses any "named insured".

**b.** With respect to Insuring Agreement **B** - Defense and Liability:

**(1)** Any "named insured"; and

**(2)** Any "employee" or "executive" of a "named insured", but:

**(a)** Only for the conduct of the "named insured's" business within the scope of his or her employment or duties as an "executive"; and

**(b)** Such "employee" or "executive" shall not be an "insured" to the extent his or her actions or omissions are criminal, fraudulent, dishonest or constitute an intentional or knowing violation of the law.

**c.** With respect to Insuring Agreement **C** - Identity Recovery any "named insured".

**15.** "Loss" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses:

Those expenses enumerated in Section **I**, **A.**, Paragraph **1.b.**

**b.** With respect to Insuring Agreement **B** - Defense and Liability:

**(1)** "Defense costs"; and

**(2)** "Data compromise liability".

**c.** With respect to Insuring Agreement **C** - Identity Recovery, "identity recovery expenses".

**16.** "Named insured" means the entity or entities shown in the Declarations as a Named Insured.

**17.** "Personal data compromise" means the loss, theft, accidental release or accidental publication of "personally identifying information" or "personally sensitive information" as respects one or more "affected individuals". If the loss, theft, accidental release or accidental publication involves "personally identifying information", such loss, theft, accidental release or accidental publication must result in or have the reasonable possibility of resulting in the fraudulent use of such information. This definition is subject to the following provisions:

**a.** At the time of the loss, theft, accidental release or accidental publication, the "personally identifying information" or "personally sensitive information" need not be at the insured premises but must be in the direct care, custody or control of:

**(1)** You; or

**(2)** A professional entity with which you have a direct relationship and to which you (or an "affected individual" at your direction) have turned over (directly or via a professional transmission or transportation provider) such information for storage, pro-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

cessing, transmission or transportation of such information.

**b.** "Personal data compromise" includes disposal or abandonment of "personally identifying information" or "personally sensitive information" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

  **(1)** The failure to use appropriate safeguards must be accidental and not reckless or deliberate; and

  **(2)** Such disposal or abandonment must take place during the time period for which this Coverage Part is effective.

**c.** "Personal data compromise" includes situations where there is a reasonable cause to suspect that such "personally identifying information" or "personally sensitive information" has been lost, stolen, accidentally released or accidentally published, even if there is no firm proof.

**d.** All incidents of "personal data compromise" that are discovered at the same time or arise from the same cause will be considered one "personal data compromise".

**18.** "Personally identifying information" means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an "affected individual" or "identity recovery insured". This includes, but is not limited to, Social Security numbers or account numbers.

"Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses.

**19.** "Personally sensitive information" means private information specific to an individual the release of which requires notification of "affected individuals" under any applicable law.

"Personally sensitive information" does not mean or include "personally identifying information".

**20.** "Policy period" means the cumulative total of each individual "coverage term" comprising the period of time from the inception date of this Coverage Part shown in the Declarations to the expiration date shown in the Declarations, or its earlier cancellation or termination date.

**21.** "Regulatory proceeding" means an investigation, demand or proceeding alleging a violation of law or regulation brought by, or on behalf of, the Federal Trade Commission, Federal Communications Commission or other administrative or regulatory agency, or any federal, state, local or foreign governmental entity in such entity's regulatory or official capacity.

Includes copyrighted material of Insurance
Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES

This endorsement modifies insurance provided under the following:

**CINCINNATI CYBER DEFENSE™ COVERAGE PART**
**CINCINNATI DATA DEFENDER™ COVERAGE PART**
**CINCINNATI NETWORK DEFENDER™ COVERAGE PART**

Paragraph **F. Transfer of Your Rights and Duties Under this Policy** in the Common Policy Conditions is deleted in its entirety and replaced by the following:

**F.   Transfer of Your Rights and Duties Under this Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of a sole proprietor who is also the first "named insured".

If you are a sole proprietor and you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# THE CINCINNATI CASUALTY COMPANY
A Stock Insurance Company

# CINCINNATI NETWORK DEFENDER™ COVERAGE PART DECLARATIONS

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Attached to and forming part of POLICY NUMBER: ENP 053 39 92     Effective Date 04-29-2019

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

**Retroactive Date:** 04-29-2019

## Limits of Insurance and Deductible

| | Insuring Agreement | Annual Aggregate | Sublimit | | Deductible | |
|---|---|---|---|---|---|---|
| A | Computer Attack | $50,000 | | | $1,000 | 1 |
| | | | Cyber Extortion | $10,000 | $1,000 | 2 |
| | | | Loss of Business | $25,000 | | |
| | | | Public Relations | $25,000 | | |
| B | Network Security and Electronic Media Liability | $50,000 | | | $1,000 | |

| TOTAL ANNUAL PREMIUM | $187 |
|---|---|

| Optional Supplemental Extended Reporting Period - Term: | Optional Supplemental Extended Reporting Period - Premium: |
|---|---|
| 1 YEAR | 60 |
| 2 YEAR | 120 |
| 3 YEAR | 160 |
| 4 YEAR | 200 |
| 5 YEAR | 220 |
| 6 YEAR | 240 |

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| HC103 | 01/18 | CINCINNATI NETWORK DEFENDER™ COVERAGE FORM |
|---|---|---|
| HC429PA | 03/16 | PENNSYLVANIA CHANGES |

---

1 Computer Attack Deductible other than Cyber Extortion
2 Cyber Extortion Deductible

HC 503 01 18

# CINCINNATI NETWORK DEFENDER™ COVERAGE FORM

### TABLE OF CONTENTS

| Coverage Part Provision: | Begins on Page: |
|---|---|

Preamble ................................................................................................................................................3

**SECTION I - COVERAGES** ...................................................................................................................3

**A. Insuring Agreements** ....................................................................................................................3

    1. Insuring Agreement A - Computer Attack .................................................................................3
    2. Insuring Agreement B - Network Security and Electronic Media Liability ...............................3

**B. Exclusions** .....................................................................................................................................4

    1. Contractual Liability .................................................................................................................4
    2. Criminal Investigations or Proceedings ...................................................................................4
    3. Deficiency Correction ..............................................................................................................4
    4. Extortion ..................................................................................................................................4
    5. Fines or Penalties ...................................................................................................................4
    6. Fraudulent, Dishonest or Criminal Acts ..................................................................................4
    7. Information Technology Products .............................................................................................4
    8. Infrastructure Failure ..............................................................................................................4
    9. Knowledge of Falsity ...............................................................................................................4
    10. Non-monetary Relief ..............................................................................................................4
    11. Nuclear ..................................................................................................................................4
    12. Patent or Trade Secret Infringement .....................................................................................4
    13. Previously Reported Claims ...................................................................................................4
    14. Prior Wrongful Acts ...............................................................................................................5
    15. Prior or Pending Litigation .....................................................................................................5
    16. Property Damage or Bodily Injury ..........................................................................................5
    17. War .......................................................................................................................................5
    18. Willful Complicity ...................................................................................................................5

**SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE** .................................................................5

**SECTION III - DEFENSE AND SETTLEMENT** ....................................................................................6

**SECTION IV - CONDITIONS** ...............................................................................................................6

    1. Bankruptcy ..............................................................................................................................6
    2. Due Diligence ..........................................................................................................................6
    3. Duties in the Event of a Claim or Loss .....................................................................................6
    4. Legal Action Against Us ...........................................................................................................7
    5. Liberalization ...........................................................................................................................8
    6. Office of Foreign Assets Control (OFAC) Compliance .............................................................8
    7. Other Insurance .......................................................................................................................8
    8. Representations .......................................................................................................................8
    9. Separation of Insureds ............................................................................................................8
    10. Services ................................................................................................................................8
    11. Subrogation ..........................................................................................................................8
    12. Valuation - Settlement ..........................................................................................................9
    13. When We Do Not Renew .......................................................................................................9

**SECTION V - EXTENDED REPORTING PERIODS** ...........................................................................9

**SECTION VI - DEFINITIONS** ..............................................................................................................9

    1. "Actual cash value" .................................................................................................................9
    2. "Bodily injury" .........................................................................................................................9
    3. "Business income loss" ...........................................................................................................9
    4. "Claim" ....................................................................................................................................10
    5. "Computer attack" ..................................................................................................................10
    6. "Computer system" ................................................................................................................10
    7. "Coverage term" ....................................................................................................................10

## TABLE OF CONTENTS (CONT'D)

**Coverage Part Provision:**                                                                         **Begins on Page:**

**SECTION VI – DEFINITIONS (Cont'd)**..................................................................................................**10**

    8.   "Coverage territory"............................................................................**10**
    9.   "Cyber extortion expenses".................................................................**10**
  10.   "Cyber extortion threat".......................................................................**11**
  11.   "Data re-creation costs".......................................................................**11**
  12.   "Data restoration costs".......................................................................**11**
  13.   "Defense costs"....................................................................................**11**
  14.   "Denial of service attack"....................................................................**11**
  15.   "Electronic media incident".................................................................**11**
  16.   "Employee"..........................................................................................**12**
  17.   "Executive".........................................................................................**12**
  18.   "Extra expense"..................................................................................**12**
  19.   "Insured".............................................................................................**12**
  20.   "Interrelated".......................................................................................**12**
  21.   "Loss".................................................................................................**12**
  22.   "Malware attack".................................................................................**12**
  23.   "Named insured".................................................................................**12**
  24.   "Network security incident".................................................................**12**
  25.   "Period of restoration"........................................................................**13**
  26.   "Personally identifying information".....................................................**13**
  27.   "Personally sensitive information".......................................................**13**
  28.   "Policy period"....................................................................................**13**
  29.   "Property damage"..............................................................................**13**
  30.   "Ransomware"....................................................................................**13**
  31.   "Settlement costs"..............................................................................**13**
  32.   "System restoration costs".................................................................**13**
  33.   "Third party corporate data"...............................................................**14**
  34.   "Unauthorized access incident"..........................................................**14**
  35.   "Wrongful act"....................................................................................**14**

# CINCINNATI NETWORK DEFENDER™ COVERAGE FORM

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DE-DUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the "named insured" shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VI** - **Definitions**.

## SECTION I - COVERAGES

### A. Insuring Agreements

Coverage is provided under the following In-suring Agreements for which an Aggregate Limit of Insurance is shown in the Declara-tions:

**1. Insuring Agreement A - Computer At-tack**

  **a.** Coverage under Insuring Agreement **A** - Computer Attack applies only if all of the following conditions are met:

    **(1)** There has been a "computer at-tack"; and

    **(2)** Such "computer attack" is first discovered by you during the "policy period"; and

    **(3)** Such "computer attack" occurred in the "coverage territory"; and

    **(4)** Such "computer attack" is re-ported to us as soon as practi-cable, but in no event more than 60 days after the date it is first discovered by you.

  **b.** If all of the conditions in **a.** above have been met, then we will provide you the following coverages for "loss" directly arising from such "computer attack".

    **(1) Cyber Extortion**

      We will pay your necessary and reasonable "cyber extortion ex-penses".

    **(2) Data Restoration**

      We will pay your necessary and reasonable "data restoration costs".

    **(3) Data Re-creation**

      We will pay your necessary and reasonable "data re-creation costs".

    **(4) System Restoration**

      We will pay your necessary and reasonable "system restoration costs".

    **(5) Loss of Business**

      We will pay your actual "busi-ness income loss" and your nec-essary and reasonable "extra expenses".

    **(6) Public Relations**

      If you suffer covered "business income loss", we will pay the necessary and reasonable fees and expenses you incur, with our prior written consent, for a pro-fessional public relations firm re-view of and response to the po-tential impact of the "computer attack" on your business rela-tionships. We will only pay for such fees and expenses when such a public relations firm re-view and response is reasonably necessary to avert or mitigate material damage to your busi-ness relationships from the "computer attack".

**2. Insuring Agreement B - Network Secu-rity and Electronic Media Liability**

  **a.** Coverage under Insuring Agreement **B** - Network Security and Electronic Media Liability applies only if all of the following conditions are met:

    **(1)** During the "coverage term" or any applicable Extended Report-ing Period, you first receive no-

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

tice of a "claim" which arises from a "wrongful act" that:

**(a)** Took place on or after the Retroactive Date shown in the Declarations and before the end of the "policy period"; and

**(b)** Took place in the "coverage territory"; and

**(2)** Such "claim" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

**b.** If the conditions listed in **a.** above have been met, then we will pay on behalf of the "insured" the "insured's" necessary and reasonable "defense costs" and "settlement costs" directly arising from the "claim".

**c.** All "claims" caused by a single "wrongful act" or series of "interrelated" "wrongful acts" will be deemed to have been made at the time that notice of the first of those "claims" is received by you.

## B. Exclusions

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

### 1. Contractual Liability

An "insured's" assumption of liability by contract or agreement, whether oral or written. However, this exclusion shall not apply to any liability that an "insured" would have incurred in the absence of such contract or agreement.

### 2. Criminal Investigations or Proceedings

Any criminal investigations or proceedings.

### 3. Deficiency Correction

Costs to research or correct any deficiency.

### 4. Extortion

Any threat, extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

This exclusion does not apply to the extent that insurance coverage is provided under **SECTION I - COVERAGES**, Paragraph **A.1.b.(1) Cyber Extortion**.

### 5. Fines or Penalties

Any fines or penalties.

### 6. Fraudulent, Dishonest or Criminal Acts

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by the "insured".

### 7. Information Technology Products

The propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers in connection with hardware or software created, produced or modified by you for sale, lease or license to third parties.

### 8. Infrastructure Failure

Failure or interruption of or damage to any electrical power supply network or telecommunication network not owned and operated by the "insured" including, but not limited to, the internet, internet service providers, DNS service providers, cable and wireless providers, internet exchange providers, search engine providers, tier 1 internet protocol networks and other providers of telecommunications or internet infrastructure.

### 9. Knowledge of Falsity

Any oral or written publication of material, if done by the "insured" or at the "insured's" direction with knowledge of its falsity.

### 10. Non-monetary Relief

That part of any "claim" seeking any non-monetary relief.

### 11. Nuclear

Nuclear reaction or radiation or radioactive contamination, however caused.

### 12. Patent or Trade Secret Infringement

Any actual or alleged patent or trade secret violation including any actual or alleged violation of the Patent Act, the Economic Espionage Act of 1996, or the Uniform Trade Secrets Act and their amendments.

### 13. Previously Reported Claims

The same facts alleged or contained in any "claim" which has been reported, or in any circumstances of which notice has been given, under any insurance policy of which this Coverage Part is a renewal or replacement.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**14. Prior Wrongful Acts**

Any "wrongful act" first occurring before the Retroactive Date shown in the Declarations or any "claim" arising from a "wrongful act" that first occurred prior to the Retroactive Date shown in the Declarations.

**15. Prior or Pending Litigation**

Any "claim" or other proceeding against an "insured" which was pending or existed prior to the "coverage term", or arising out of the same or substantially the same facts, circumstances or allegations which are the subject of, or the basis for, such "claim" or other proceeding.

**16. Property Damage or Bodily Injury**

"Property damage" or "bodily injury" other than "bodily injury" arising from an "electronic media incident".

**17. War**

a. War, including undeclared or civil war or civil unrest;

b. Warlike action by military force, including action hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

**18. Willful Complicity**

The "insured's" intentional or willful complicity in a covered "loss" event or your reckless disregard for the security of your "computer system" or data.

## SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE

**A. Insuring Agreement A - Computer Attack**

1. The most we will pay under Insuring Agreement **A** - Computer Attack for Cyber Extortion coverage for "loss" arising from any one "computer attack" is the Cyber Extortion Sublimit stated in the Declarations. This Limit of Insurance is part of, and not in addition to, the Computer Attack Aggregate Limit of Insurance stated in Paragraph **4.** below.

2. The most we will pay under Insuring Agreement **A** - Computer Attack for Loss of Business coverage for "loss" arising from any one "computer attack" is the Loss of Business Sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the Computer Attack Aggregate Limit of Insurance stated in Paragraph **4.** below.

3. The most we will pay under Insuring Agreement **A** - Computer Attack for Public Relations coverage for "loss" arising from any one "computer attack" is the Public Relations Sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the Computer Attack Aggregate Limit of Insurance stated in Paragraph **4.** below.

4. The Computer Attack Aggregate Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **A** - Computer Attack arising out of all "computer attack" events which are first discovered by you during the "coverage term". This limit applies regardless of the number of "computer attack" events first discovered during the "coverage term".

5. A "computer attack" may be first discovered by you in one "coverage term" but it may cause covered "loss" in one or more subsequent "coverage terms". If so, all covered "loss" arising from such "computer attack" will be subject to the Computer Attack Aggregate Limit of Insurance applicable to the "coverage term" when the "computer attack" was first discovered by you.

6. The Computer Attack coverage is subject to the:

a. Computer Attack other than Cyber Extortion; and

b. Cyber Extortion;

deductibles stated in the Declarations. In the event that elements of "loss" from the same "computer attack" include "cyber extortion expenses" as well as other insured expenses or costs, then only the single highest deductible will apply. You shall be responsible for the applicable deductible amount as respects "loss" arising from each "computer attack" covered under this Coverage Part.

**B. Insuring Agreement B - Network Security and Electronic Media Liability**

1. Except for post-judgment interest, the most we will pay under Insuring Agreement **B** - Network Security and Electronic Media Liability is the Network Security and Electronic Media Liability Aggregate Limit of Insurance stated in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

2. The Network Security and Electronic Media Liability Aggregate Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **B** - Network Security and Electronic Media Liability (other than post-judgment interest) arising out of all "claims".

3. The Network Security and Electronic Media Liability Aggregate Limit of Insurance for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Network Security and Electronic Media Liability Aggregate Limit of Insurance for the immediately preceding "coverage term".

4. The Insuring Agreement **B** - Network Security and Electronic Media Liability coverage is subject to the Network Security and Electronic Media Liability Deductible stated in the Declarations. You shall be responsible for the applicable deductible amount as respects "loss" arising from each "claim" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount to defend or effect settlement of any "claim" or "loss" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

The Limits of Insurance apply separately to each "coverage term".

## SECTION III - DEFENSE AND SETTLEMENT

The provisions contained within this Section apply only to Insuring Agreement **B** - Network Security and Electronic Media Liability.

1. We will have the right and duty to select counsel and defend the "insured" against any "claim" covered by Insuring Agreement **B** - Network Security and Electronic Media Liability, regardless of whether the allegations of such "claim" are groundless, false or fraudulent. However, we shall have no duty to defend the "insured" against any "claim" seeking damages or other relief not insured by Insuring Agreement **B** - Network Security and Electronic Media Liability.

2. We may, with your written consent, make any settlement of a "claim" which we deem reasonable. If you withhold consent to such settlement, our liability for all "loss" resulting from such "claim" will not exceed the amount for which we could have settled such "claim" plus "defense costs" incurred as of the date we proposed such settlement in writing to you.

3. We shall not be obligated to pay any "loss", or to defend or continue to defend any "claim", after the Insuring Agreement **B** - Network Secu-

rity and Electronic Media Liability Limit of Insurance has been exhausted.

4. We shall pay all interest on that amount of any judgment within the Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance which accrues:

   a. After entry of judgment; and

   b. Before we pay, offer to pay or deposit in court that part of the judgment within the Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance or, in any case, before we pay or offer to pay the entire Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance.

   These interest payments shall be in addition to and not part of the Network Security and Electronic Media Liability Limit of Insurance.

## SECTION IV - CONDITIONS

1. **Bankruptcy**

   Your bankruptcy, or the bankruptcy of your estate if you are a sole proprietor, will not relieve us of our obligations under this Coverage Part.

2. **Due Diligence**

   You agree to use due diligence to prevent and mitigate "loss" covered under this Coverage Part. This includes, but is not limited to, complying with, and requiring your vendors to comply with, reasonable and industry-accepted protocols for:

   a. Providing and maintaining appropriate physical security for your premises, "computer systems" and hard copy files;

   b. Providing and maintaining appropriate computer and Internet security; and

   c. Maintaining and updating at appropriate intervals backups of computer data.

3. **Duties in the Event of a Claim or Loss**

   a. If, during the "coverage term", the "insured" first becomes aware of any circumstance that could reasonably be expected to give rise to a "claim", the "insured" may give written notice to us. The notice must be made as soon as practicable, but in no event more than 60 days after the date the circumstance is first discovered by the "insured", must be made during the "coverage term" and must include:

      (1) The specific details, including the date, of the circumstance;

      (2) The alleged injuries or damage sustained or which may be sustained;

    **(3)** The names of potential claimants; and

    **(4)** The manner in which the "insured" first became aware of the circumstance.

    Any subsequent "claim" arising out of any circumstance which is the subject of such a written notice will be deemed to have been made at the time written notice in compliance with these requirements was first received by us.

**b.** If a "claim" is brought against any "insured", you must:

    **(1)** Immediately record the specifics of the "claim" and the date received; and

    **(2)** Provide us with written notice, as soon as practicable, but in no event more than 60 days after the date the "claim" is first received by you.

    **(3)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

    **(4)** Authorize us to obtain records and other information;

    **(5)** Cooperate with us in the investigation, settlement or defense of the "claim";

    **(6)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of "loss" to which this insurance may also apply; and

    **(7)** Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "claim".

**c.** In the event of a "computer attack" covered under Insuring Agreement **A** - Computer Attack, you must see that the following are done:

    **(1)** Notify the police if a law may have been broken.

    **(2)** Notify us as soon as practicable, but in no event more than 60 days after the "computer attack". Include a description of any property involved.

    **(3)** As soon as possible, give us a description of how, when and where the "computer attack" occurred.

    **(4)** As often as may be reasonably required, permit us to:

        **(a)** Inspect the property proving the "computer attack";

        **(b)** Examine your books, records, electronic media and records and hardware;

        **(c)** Take samples of damaged and undamaged property for inspection, testing and analysis; and

        **(d)** Make copies from your books, records, electronic media and records and hardware.

    **(5)** Send us signed, sworn proof of loss containing the information we request to investigate the "computer attack". You must do this within 60 days after our request. We will supply you with the necessary forms.

    **(6)** Cooperate with us in the investigation or settlement of the "computer attack".

    **(7)** If you intend to continue your business, you must resume all or part of your operations as quickly as possible.

    **(8)** Make no statement that will assume any obligation or admit any liability, for any "loss" for which we may be liable, without our prior written consent.

    **(9)** Promptly send us any legal papers or notices received concerning the "computer attack" or "loss".

**d.** We may examine any "insured" under oath, while not in the presence of any other "insured" and at such times as may be reasonably required, about any matter relating to this insurance or the "claim" or "loss", including an "insured's" books and records. In the event of an examination, an "insured's" answers must be signed.

**e.** No "insured" may, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

**4. Legal Action Against Us**

**a.** No person or organization has a right:

    **(1)** To join us as a party or otherwise bring us into a suit asking for damages from an "insured"; or

    **(2)** To sue us under this Coverage Part unless all of its terms have been fully complied with.

    A person or organization may sue us to recover on an agreed settlement or on a

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

final judgment against an "insured"; but we will not be liable for damages that are not payable under this Coverage Part, or that are in excess of the applicable Aggregate Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the first "named insured" and the claimant or the claimant's legal representative.

**b.** You may not bring any legal action against us involving "loss":

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of "loss" with us; and

**(3)** Unless brought within 2 years from the date you reported the "claim" or "loss" to us.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**5. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the "policy period", we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current "policy period". We will make no additional premium charge for this additional coverage during the interim.

**6. Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

**7. Other Insurance**

**a.** If any covered "loss" is covered by any other valid policy, then this Coverage Part shall apply only in excess of the amount of any deductible, retention and limit of insurance under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this Coverage Part

by reference in such other policy to this policy's policy number.

**b.** When this insurance is excess, we will have no duty to defend the "insured" against any "claim" if any other insurer has a duty to defend the "insured" against that "claim". But we will have the right to associate in the defense and control of any "claim" that we reasonably believe is likely to involve the insurance provided under this Coverage Part. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

**8. Representations**

You represent that all information and statements contained in any application or questionnaire submitted in connection with this Coverage Part are true, accurate and complete. All such information and statements are the basis for our issuing this Coverage Part and shall be considered as incorporated into and shall constitute a part of this Coverage Part. Misrepresentation or omission of any material fact may be grounds for the rescission of this Coverage Part.

**9. Separation of Insureds**

Except with respect to the applicable Limit of Insurance, and any rights or duties specifically assigned in this Coverage Part or the policy to which it is attached, to the first "named insured", this insurance applies separately to each "insured" against whom "claim" is made.

**10. Services**

The following conditions apply as respects any services provided to you by any service firm provided or paid for in whole or in part under this Coverage Part:

**a.** The effectiveness of such services depends on your cooperation and assistance.

**b.** We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

**11. Subrogation**

With respect to any payment under this Coverage Part on behalf of any "insured", we shall be subrogated to the "insured's" rights of recovery to the extent of such payment. The "insured" shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable us to bring suit in the "insured's" name. Any recoveries, less the cost of obtaining them, will be distributed as follows:

**a.** To you, until you are reimbursed for any "loss" you sustain that exceeds the sum of the applicable Aggregate Limit of Insurance and the Deductible Amount, if any;

**b.** Then to us, until we are reimbursed for the payment under this Coverage Part;

**c.** Then to you, until you are reimbursed for that part of the payment equal to the Deductible Amount, if any.

## 12. Valuation - Settlement

All premiums, Limits of Insurance, Deductible Amounts, "loss" and any other monetary amounts under this Coverage Part are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is agreed to or another component of "loss" under this Coverage Part is expressed in any currency other than United States of America dollars, payment under this Coverage Part shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is entered, settlement amount is agreed upon, or the other component of "loss" is due, respectively.

## 13. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first "named insured" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - EXTENDED REPORTING PERIODS

The provisions contained within this Section apply only to Insuring Agreement **B** - Network Security and Electronic Media Liability.

**1.** You shall have the right to the Extended Reporting Periods described in this section, in the event that:

  **a.** You or we cancel this Coverage Part;

  **b.** You or we refuse to renew this Coverage Part; or

  **c.** We renew this Coverage Part on other than a claims-made basis or with a retroactive date later than the Retroactive Date shown in the Declarations.

**2.** If an event as specified in Paragraph **1.** has occurred, you shall have the right to the following:

  **a.** An Automatic Extended Reporting Period of 90 days after the effective date of cancellation or nonrenewal at no additional premium in which to give to us written no-

tice of a "claim" of which you first receive notice during said Automatic Extended Reporting Period for any "wrongful act" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part; and

  **b.** Upon payment of the additional premium stated in the Declarations, a Supplemental Extended Reporting Period for the term stated in the Supplemental Extended Reporting Period Endorsement will be provided immediately following the effective date of cancellation or nonrenewal in which to give to us written notice of a "claim" of which you first receive notice during said Supplemental Extended Reporting Period for any "wrongful act" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part.

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 60 days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

  **c.** The Network Security and Electronic Media Liability Limit for the Extended Reporting Periods shall be part of, and not in addition to, the Network Security and Electronic Media Liability Limit for the immediately preceding "coverage term".

## SECTION VI - DEFINITIONS

**1.** "Actual cash value" means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence.

**2.** "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

**3.** "Business income loss" means the sum of the:

  **a.** Net income (net profit or loss before income taxes) that would have been earned or incurred; and

  **b.** Continuing normal and necessary operating expenses incurred, including "employee" and "executive" payroll,

HC 103 01 18

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 9 of 14

actually lost by you during the "period of restoration".

**4.** "Claim":

**a.** Means a civil proceeding against an "insured" in which damages are alleged arising from a "wrongful act" or a series of "interrelated" "wrongful acts" allegedly committed by an "insured", including any appeal therefrom.

**b.** "Claim" includes:

**(1)** An arbitration or alternative dispute resolution proceeding that the "insured" is required to submit to or does submit to with our consent; or

**(2)** A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

**c.** Does not include any demand or action brought by or on behalf of someone who is:

**(1)** Your "executive";

**(2)** Your owner or part-owner; or

**(3)** A holder of your securities;

in their capacity as such, whether directly, derivatively, or by class action.

**5.** "Computer attack" means one of the following involving the "computer system":

**a.** An "unauthorized access incident";

**b.** A "malware attack";

**c.** A "denial of service attack" against a "computer system"; or

**d.** A "cyber extortion threat".

**6.** "Computer system" means a computer or other electronic hardware that:

**a.** Is owned or leased by you and operated under your control; or

**b.** Is operated by a third party service provider and used for the purpose of providing hosted computer application services to you or for processing, maintaining, hosting or storing your electronic data, pursuant to a written contract with you for such services, but such computer or other electronic hardware operated by such third party shall only be considered to be a "computer system" with respect to the specific services provided by such third party to you under such contract.

**7.** "Coverage term" means the following individual increment, or if a multi-year "policy period",

increments, of time, which comprise the "policy period" of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year "policy period", each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the "policy period" shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**8.** "Coverage territory" means:

**a.** With respect to Insuring Agreement **A** - Computer Attack:

Anywhere in the world, but "loss" must involve a "computer system" within the United States (including its territories and possessions), Puerto Rico or Canada.

**b.** With respect to Insuring Agreement **B** - Network Security and Electronic Media Liability:

Anywhere in the world, however, "claims" must be brought in the United States (including its territories and possessions), Puerto Rico or Canada.

**9.** "Cyber extortion expenses" means:

**a.** The cost of a negotiator or investigator retained by you in connection with a "cyber extortion threat"; and

**b.** Any amount paid by you in response to a "cyber extortion threat" to the party that made the "cyber extortion threat" for the purposes of eliminating the "cyber extortion threat";

when such expenses are necessary and reasonable and arise directly from a "cyber extortion threat". The payment of "cyber extortion expenses" must be approved in advance by us. We will not pay for "cyber extortion expenses" that have not been approved in ad-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

vance by us. We will not unreasonably with-hold our approval.

10. "Cyber extortion threat" means a demand for money from you based on a credible threat, or series of related credible threats, to:

   a. Launch a "denial of service attack" against the "computer system";

   b. Gain access to a "computer system" and use that access to steal, release or publish "personally identifying information", "personally sensitive information" or "third party corporate data";

   c. Alter, damage or destroy electronic data or software while such electronic data or software is stored within a "computer system";

   d. Launch a "computer attack" against a "computer system" in order to alter, damage or destroy electronic data or software while such electronic data or software is stored within a "computer system";

   e. Cause the "insured" to transfer, pay or deliver any funds or property using a "computer system" without your authorization; or

   f. Inflict "ransomware" on a "computer system".

   "Cyber extortion threat" does not include any threat made in connection with a legitimate commercial dispute.

11. "Data re-creation costs":

   a. "Data re-creation costs" means the costs of an outside professional firm hired by you to research, re-create and replace data that has been lost or corrupted and for which there is no electronic source available or where the electronic source does not have the same or similar functionality to the data that has been lost or corrupted.

   b. "Data re-creation costs" also means your actual "business income loss" and your necessary and reasonable "extra expenses" arising from the lack of the lost or corrupted data during the time required to research, re-create and replace such data.

   c. "Data re-creation costs" does not mean costs to research, re-create or replace:

      (1) Software programs or operating systems that are not commercially available; or

      (2) Data that is obsolete, unnecessary or useless to you.

12. "Data restoration costs":

   a. Means the costs of an outside professional firm hired by you to replace electronic data that has been lost or corrupted. In order to be considered "data restoration costs", such replacement must be from one or more electronic sources with the same or similar functionality to the data that has been lost or corrupted.

   b. Does not include costs to research, restore or replace:

      (1) Software programs or operating systems that are not commercially available; or

      (2) Data that is obsolete, unnecessary or useless to you.

13. "Defense costs":

   a. Means reasonable and necessary expenses resulting solely from the investigation, defense and appeal of any "claim" against an "insured". Such expenses may be incurred by us. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

   b. Does not include the salaries or wages of your "employees" or "executives", or your loss of earnings.

14. "Denial of service attack" means an intentional attack against a target computer or network of computers designed to overwhelm the capacity of the target computer or network in order to deny or impede authorized users from gaining access to the target computer or network through the internet.

15. "Electronic media incident" means the display of information in electronic form by you on a website or in an "insured's" email that resulted in an allegation of:

   a. Infringement of another's copyright, title, slogan, trademark, trade name, trade dress, service mark or service name;

   b. Defamation against a person or organization that is unintended;

   c. A violation of a person's right of privacy, including false light and public disclosure of private facts; or

   d. Interference with a person's right of publicity.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**16.** "Employee" means any natural person, other than an "executive", who was, now is or will be:

  **a.** Employed on a full- or part-time basis by you;

  **b.** Furnished temporarily to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions;

  **c.** Leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **b.**; or

  **d.** Your volunteer worker, which includes unpaid interns.

**17.** "Executive" means any natural person who was, now is or will be:

  **a.** The owner of a sole proprietorship that is a "named insured"; or

  **b.** A duly elected or appointed:

    **(1)** Director;

    **(2)** Officer;

    **(3)** Managing Partner;

    **(4)** General Partner;

    **(5)** Member (if a limited liability company);

    **(6)** Manager (if a limited liability company); or

    **(7)** Trustee,

    of a "named insured".

**18.** "Extra expense" means the additional cost you incur to operate your business during the "period of restoration" over and above the cost that you normally would have incurred to operate your business during the same period had no "computer attack" occurred.

**19.** "Insured" means:

  **a.** With respect to Insuring Agreement **A** - Computer Attack any "named insured".

  **b.** With respect to Insuring Agreement **B** - Network Security and Electronic Media Liability:

    **(1)** Any "named insured"; and

    **(2)** Any "employee" or "executive" of a "named insured", but:

      **(a)** Only for the conduct of the "named insured's" business within the scope of his or her employment or duties as an "executive"; and

      **(b)** Such "employee" or "executive" shall not be an "insured" to the extent his or her actions or omissions are criminal, fraudulent, dishonest or constitute an intentional or knowing violation of the law.

**20.** "Interrelated" means all events or incidents that have as a common nexus any:

  **a.** Fact, circumstance, situation, event, transaction, cause; or

  **b.** Series of causally connected facts, circumstances, situations, events, transactions or causes.

**21.** "Loss" means:

  **a.** With respect to Insuring Agreement **A** - Computer Attack:

  Those expenses enumerated in Section **I**, **A.**, Paragraph **1.b.**

  **b.** With respect to Insuring Agreement **B** - Network Security and Electronic Media Liability:

    **(1)** "Defense costs"; and

    **(2)** "Settlement costs".

**22.** "Malware attack" means an attack that damages a "computer system" or data contained therein arising from malicious code, including viruses, worms, Trojans, spyware and keyloggers. This does not mean damage from shortcomings or mistakes in legitimate electronic code or damage from code installed on your "computer system" during the manufacturing process or normal maintenance.

**23.** "Named insured" means the entity or entities shown in the Declarations as a Named Insured.

**24.** "Network security incident" means a negligent security failure or weakness with respect to a "computer system" which allowed one or more of the following to happen:

  **a.** The unintended propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers. Malware does not include shortcomings or mistakes in legitimate electronic code.

  **b.** The unintended abetting of a "denial of service attack" against one or more other systems.

  **c.** The unintended loss, release or disclosure of "third party corporate data".

**25.** "Period of restoration" means the period of time that begins at the time that the "computer attack" is discovered by you and continues until the earlier of:

**a.** The date that all data restoration, data re-creation and system restoration directly related to the "computer attack" has been completed; or

**b.** The date on which such data restoration, data re-creation and system restoration could have been completed with the exercise of due diligence and dispatch.

**26.** "Personally identifying information" means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an individual. This includes, but is not limited to, Social Security numbers or account numbers.

"Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses.

**27.** "Personally sensitive information" means private information specific to an individual the release of which requires notification of affected individuals under any applicable law.

"Personally sensitive information" does not mean or include "personally identifying information".

**28.** "Policy period" means the cumulative total of each individual "coverage term" comprising the period of time from the inception date of this Coverage Part shown in the Declarations to the expiration date shown in the Declarations, or its earlier cancellation or termination date.

**29.** "Property damage" means:

**a.** Physical injury to or destruction of tangible property including all resulting loss of use; or

**b.** Loss of use of tangible property that is not physically injured.

**30.** "Ransomware" means any software that is used to demand a ransom payment by:

**a.** Restricting access to a "computer system"; or

**b.** Encrypting data held within a "computer system".

**31.** "Settlement costs":

**a.** Means the following, when they arise from a "claim":

**(1)** Damages (including punitive and exemplary damages and the multiple portion of any multiplied damage award), judgments or settlements;

**(2)** Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such fees and costs are awarded by law or court order; and

**(3)** Pre-judgment interest on that part of any judgment paid by us.

**b.** Does not include:

**(1)** Civil or criminal fines or penalties imposed by law;

**(2)** Taxes; or

**(3)** Matters which may be deemed uninsurable under the applicable law.

**c.** With respect to punitive, exemplary and multiplied damages, the law of the jurisdiction most favorable to the insurability of those fines, penalties or damages shall control for the purpose of resolving any dispute between us and any "insured" regarding whether the fines, penalties or damages specified in this definition above are insurable under this Coverage Part, provided that such jurisdiction:

**(1)** Is where those fines, penalties or damages were awarded or imposed;

**(2)** Is where any "personal data compromise" took place for which such fines, penalties or damages were awarded or imposed;

**(3)** Is where you are incorporated or you have your principal place of business; or

**(4)** Is where we are incorporated or have our principal place of business.

**32.** "System restoration costs":

**a.** Means the costs of an outside professional firm hired by you to do any of the following in order to restore your "computer system" to its pre- "computer attack" level of functionality:

**(1)** Replace or reinstall computer software programs;

**(2)** Remove any malicious code; and

**(3)** Configure or correct the configuration of your "computer system".

**b.** Does not include:

**(1)** Costs to increase the speed, capacity or utility of your "computer system";

(2) Labor of your "employees" or "executives";

(3) Any costs in excess of the "actual cash value" of your "computer system"; or

(4) Costs to repair or replace hardware.

33. "Third party corporate data" means any trade secret, data, design, interpretation, forecast, formula, method, practice, credit or debit card magnetic strip information, process, record, report or other item of information of a third party not an "insured" under this Coverage Part which is not available to the general public and is provided to the "named insured" subject to a mutually executed written confidentiality agreement or which the "named insured" is legally required to maintain in confidence; however, "third party corporate data" shall not include "personally identifiable information" or "personally sensitive information".

34. "Unauthorized access incident" means the gaining of access to a "computer system" by:

a. An unauthorized person or persons; or

b. An authorized person or persons for unauthorized purposes.

35. "Wrongful act" means:

a. An "electronic media incident"; or

b. A "network security incident".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES

This endorsement modifies insurance provided under the following:

**CINCINNATI CYBER DEFENSE™ COVERAGE PART**
**CINCINNATI DATA DEFENDER™ COVERAGE PART**
**CINCINNATI NETWORK DEFENDER™ COVERAGE PART**

Paragraph **F. Transfer of Your Rights and Duties Under this Policy** in the Common Policy Conditions is deleted in its entirety and replaced by the following:

**F.   Transfer of Your Rights and Duties Under this Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of a sole proprietor who is also the first "named insured".

If you are a sole proprietor and you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## Transaction Summary

**Policy Number:** `ENP 053 39 92`

**Effective Date:** `04-29-2019`

**Named Insured:** `MILKBOY CENTER CITY LLC, MILKBOY COLLEGE PARK, LLC, T/A MILKBOY & ART HOUSE`

**Issued:** `10-30-2019 13:17`

| Effective Date | Transaction Type | Endorsement Number | | Premium Due | | | Installments | | |
|---|---|---|---|---|---|---|---|---|---|
| | | New | Old | New | Old | Net Due Now | Revised | Previous | Increase/ Decrease |
| 04/29/2019 | Endorsement | 2 | | $0 | | $0 | $6,293 | $6,293 | $0 |
| 09/12/2019 | Reapply of Endorsement 1 | 3 | 1 | $1,245 | $1,245 | $0 | $8,280 | $6,293 | $1,987 |

**Total Net Due Now**

$0

**Questions or Change Request**
To inquire about your account or request changes, please contact your agency.

`DASH & LOVE, INC.`
`111 PRESIDENTIAL BLVD STE 211`
`BALA CYNWYD, PA 19004-1013`
`610-667-2244`

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage Policy Number | All Other Policy Number **ENP 053 39 92** | Effective Date of Endorsement   **04-29-2019** |

Issued to  **MILKBOY CENTER CITY LLC, MILKBOY COLLEGE PARK, LLC, T/A MILKBOY & ART HOUSE**

Agent **DASH & LOVE, INC. 37-225**
         **BALA CYNWYD, PA**

Endorsement #  **2**

---

## PREMIUM INFORMATION

Premium Due at Endorsement Effective Date **NONE**

Subsequent Annual Installments Increased by                    $ _____

Revised Annual Installment Payment(s)                    $ _____ 6,293 ___

---

**It is agreed that the policy is amended as indicated by**   ☒

☐ **Policy Installment Premium Amended to:**
   ☐ Annual        ☐ Semi-Annual        ☐ Quarterly

☒ **Named Insured**

   **MILKBOY CENTER CITY LLC, MILKBOY COLLEGE PARK, LLC, T/A MILKBOY & ART HOUSE**

☐ **Mailing Address**

☐ **Form(s) Added**

☐ **Form(s) Deleted**

---

**All Other Reason for Change**

---

**Auto / Garage Reason for Change**

---

10-30-2019 13:17

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage Policy Number | All Other Policy Number  ENP 053 39 92 | Effective Date of Endorsement   09-12-2019 |

Issued to  MILKBOY CENTER CITY LLC, MILKBOY COLLEGE PARK, LLC, T/A MILKBOY & ART HOUSE

Agent DASH & LOVE, INC. 37-225
     BALA CYNWYD, PA

Endorsement #  3
REPLACES #  1

---

## PREMIUM INFORMATION

**Additional** Premium Due at Endorsement Effective Date 1,245

| | | |
|---|---|---|
| Subsequent Annual Installments Increased by | $ | 1,987 |
| Revised Annual Installment Payment(s) | $ | 8,280 |

**It is agreed that the policy is amended as indicated by** ☒

☐ **Policy Installment Premium Amended to:**
    ☐ Annual     ☐ Semi-Annual     ☐ Quarterly

☒ **Named Insured**
    MILKBOY CENTER CITY LLC, MILKBOY COLLEGE PARK, LLC, T/A MILKBOY
    & ART HOUSE
    REFER TO IA905

☐ **Mailing Address**

☒ **Form(s) Added**
    IA905 02/98     NAMED INSURED SCHEDULE

☐ **Form(s) Deleted**

---

### All Other Reason for Change

AMENDING IA904 TO INCLUDE:
 LOC 3 - 536 SOUTH ST, PHILADELPHIA, PA 19147

AMENDING FMQ502 AS FOLLOWS:
  ADDING:
    ITEM 3-1 BUSINESS PERSONAL PROPERTY 300,000 80% SPECIAL
REPLACEMENT COST INCL STOCK
    ITEM 3-1 BUSINESS INCOME W/ EXTRA EXPENSE (B) 12 MONTHS ALS
SPECIAL

AMENDING FA202 TO INCLUDE:
 ITEM 3-1 FOOD & BEVERAGE LIMIT $15,000

AMENDING FA223 TO INCLUDE:
 ITEM 3-1 536 SOUTH ST, PHILADELPHIA, PA 19147

---

### Auto / Garage Reason for Change

10-30-2019 13:17

---

IA 4329 12 09                                      Page  1 of  1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SCHEDULE OF LOCATIONS

| LOC. | STREET ADDRESS | CITY | STATE | ZIP CODE |
|------|----------------|------|-------|----------|
| 1 | 1100 CHESTNUT ST<br>PHILADELPHIA, PA 19107-4802 | | | |
| 2 | 7416 BALTIMORE AVE<br>COLLEGE PARK, MD 20740-3208 | | | |
| 3 | 536 SOUTH ST<br>PHILADELPHIA, PA 19147-2219 | | | |

**IA 904 04 04**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NAMED INSURED SCHEDULE

This Schedule supplements the Declarations.

### SCHEDULE

Named Insured:

MILKBOY CENTER CITY LLC, 4TH STREET GROUP LLC T/A MILKBOY SOUTH STREET

**IA 905 02 98**

# THE **CINCINNATI CASUALTY COMPANY**

### A Stock Insurance Company

## COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER:  **ENP 053 39 92**

Named Insured is the same as it appears on the Common Policy Dedarations unless otherwise stated here.

**Loc.** **(address)**
   REFER TO IA904

|  | **COVERAGE PROVIDED** | | | | **OPTIONAL COVERAGES**<br>**Applicable only when an entry is made** | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  | Coin-<br>surance | Covered<br>Cause Of<br>Loss | | | | | **Business<br>Income<br>Indemnity** | | |
| Item | Coverage | Limits | | | Inflation<br>Guard<br>(%) | Replace-<br>ment Cost<br>(x) | Replace-<br>ment Cost<br>Incl. Stock<br>(x) | Agreed<br>Value<br>(x) | Monthly<br>Limit<br>(fraction) | Maximum<br>Period<br>(X) | Extended<br>Period<br>(Days) |
| 1-1 | BUSINESS PERSONAL PROPERTY | 400,000 | 80% | SPECIAL | | | X | | | | |
| 1-1 | BUSINESS INCOME W/EXTRA EXPENSE (b) | 12 MONTHS ALS SEE FA242 | | SPECIAL | | | | | | | |
| 2-1 | BUSINESS PERSONAL PROPERTY | 500,000 | 80% | SPECIAL | | | X | | | | |
| 2-1 | BUSINESS INCOME W/EXTRA EXPENSE (b) | 12 MONTHS ALS SEE FA242 | | SPECIAL | | | | | | | |
| 3-1 | BUSINESS PERSONAL PROPERTY | 300,000 | 80% | SPECIAL | | | X | | | | |
| 3-1 | BUSINESS INCOME W/EXTRA EXPENSE (b) | 12 MONTHS ALS SEE FA242 | | SPECIAL | | | | | | | |

DEDUCTIBLE:  $500.00 unless otherwise stated $ 1,000

MORTGAGE HOLDER

| Item | Name and Address |
|---|---|

FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|---|---|---|
| FM101 | 05/16 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS) |
| CP9993 | 10/90 | TENTATIVE RATE |
| FA242 | 10/12 | ACTUAL LOSS SUSTAINED BUSINESS INCOME ENDORSEMENT |
| FA4013PA | 11/02 | PENNSYLVANIA CHANGES - ACTUAL CASH VALUE |
| FA4028PA | 11/05 | PENNSYLVANIA CHANGES |
| FA4098 | 01/09 | CINCIPLUS® COMMERCIAL PROPERTY POWER XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT SUMMARY OF COVERAGE LIMITS |
| FA450 | 05/16 | COMMERCIAL PROPERTY CONDITIONS |
| FA458 | 04/04 | BUSINESS INCOME CHANGES - WAITING PERIOD |
| FA258 | 05/16 | CINCIPLUS® COMMERCIAL PROPERTY POWER XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT |
| FA223 | 05/16 | WATER BACKUP DISCHARGED FROM SEWERS, DRAINS, SEPTIC OR SUMP PUMP SYSTEMS ENDORSEMENT |
| FA244 | 05/11 | EQUIPMENT BREAKDOWN COVERAGE (EXCLUDING PRODUCTION MACHINERY) |
| FA202 | 05/16 | TEMPERATURE CHANGE LOSS FORM |
| FA213 | 05/16 | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage Policy Number | All Other Policy Number **ENP 053 39 92** | Effective Date of Endorsement   09-12-2019 |

Issued to    **MILKBOY CENTER CITY LLC, MILKBOY COLLEGE PARK, LLC, T/A MILKBOY & ART HOUSE**

Agent **RISK STRATEGIES COMPANY 37-225**
       **BALA CYNWYD, PA**                                    Endorsement #  **4**

---

### PREMIUM INFORMATION

**Additional** Premium Due at Endorsement Effective Date <u>147</u>

| | | |
|---|---|---|
| Subsequent Annual Installments Increased by | $ | 234 |
| Revised Annual Installment Payment(s) | $ | 8,514 |

**It is agreed that the policy is amended as indicated by   [X]**

☐ **Policy Installment Premium Amended to:**
   ☐ Annual      ☐ Semi-Annual      ☐ Quarterly

☐ **Named Insured**

☐ **Mailing Address**

☐ **Form(s) Added**

☐ **Form(s) Deleted**

---

**All Other Reason for Change**

AMENDING IA904 TO READ:
  LOC 3 - 536 S 4TH ST, PHILADELPHIA, PA 19147

---

**Auto / Garage Reason for Change**

01-02-2020 07:37

**IA 4329 12 09**                                    **Page  1 of  1**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SCHEDULE OF LOCATIONS

| LOC. | STREET ADDRESS | CITY | STATE | ZIP CODE |
|------|----------------|------|-------|----------|
| 1 | 1100 CHESTNUT ST<br>PHILADELPHIA, PA 19107-4802 | | | |
| 2 | 7416 BALTIMORE AVE<br>COLLEGE PARK, MD 20740-3208 | | | |
| 3 | 536 S 4TH ST<br>PHILADELPHIA, PA 19147-1540 | | | |

**IA 904 04 04**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage<br>Policy Number | All Other<br>Policy Number ENP 053 39 92 | Effective Date<br>of Endorsement   09-12-2019 |

Issued to   MILKBOY CENTER CITY LLC, MILKBOY COLLEGE PARK, LLC, T/A MILKBOY & ART HOUSE

Agent RISK STRATEGIES COMPANY 37-225
     BALA CYNWYD, PA                                    Endorsement #  5

---

## PREMIUM INFORMATION

| | | |
|---|---|---|
| **Return** Premium Due at Endorsement Effective Date | 147 | |
| Subsequent Annual Installments Decreased by | $ | 234 |
| Revised Annual Installment Payment(s) | $ | 8,280 |

**It is agreed that the policy is amended as indicated by   ☒**

☐ **Policy Installment Premium Amended to:**
      ☐ Annual      ☐ Semi-Annual      ☐ Quarterly

☐ **Named Insured**



☐ **Mailing Address**




☐ **Form(s) Added**


☐ **Form(s) Deleted**

---

**All Other Reason for Change**

AMENDING FMQ502 PREMIUM

---

**Auto / Garage Reason for Change**

---

01-24-2020 09:52

**IA 4329 12 09**                                                    **Page   1 of   1**

# THE **CINCINNATI CASUALTY COMPANY**

### A Stock Insurance Company

# COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER:　　**ENP 053 39 92**

Named Insured is the same as it appears on the Common Policy Declarations unless otherwise stated here.

**Loc.**　**(address)**
　　REFER TO IA904

| Item | Coverage | Limits | Coin-surance | Covered Cause Of Loss | Inflation Guard (%) | Replace-ment Cost (x) | Replace-ment Cost Incl. Stock (x) | Agreed Value (x) | Monthly Limit (fraction) | Maximum Period (X) | Extended Period (Days) |
|------|----------|--------|--------------|-----------------------|---------------------|-----------------------|-----------------------------------|------------------|--------------------------|--------------------|------------------------|
| | **COVERAGE PROVIDED** | | | | | | **OPTIONAL COVERAGES** Applicable only when an entry is made | | | **Business Income Indemnity** | |
| 1-1 | BUSINESS PERSONAL PROPERTY | 400,000 | 80% | SPECIAL | | | X | | | | |
| 1-1 | BUSINESS INCOME W/EXTRA EXPENSE (b) | 12 MONTHS ALS SEE FA242 | | SPECIAL | | | | | | | |
| 2-1 | BUSINESS PERSONAL PROPERTY | 500,000 | 80% | SPECIAL | | | X | | | | |
| 2-1 | BUSINESS INCOME W/EXTRA EXPENSE (b) | 12 MONTHS ALS SEE FA242 | | SPECIAL | | | | | | | |
| 3-1 | BUSINESS PERSONAL PROPERTY | 300,000 | 80% | SPECIAL | | | X | | | | |
| 3-1 | BUSINESS INCOME W/EXTRA EXPENSE (b) | 12 MONTHS ALS SEE FA242 | | SPECIAL | | | | | | | |

DEDUCTIBLE: $500.00 unless otherwise stated $　　1,000

**MORTGAGE HOLDER**

| Item | Name and Address |
|------|------------------|
| | |

FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|------|-------|---|
| FM101 | 05/16 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS) |
| CP9993 | 10/90 | TENTATIVE RATE |
| FA242 | 10/12 | ACTUAL LOSS SUSTAINED BUSINESS INCOME ENDORSEMENT |
| FA4013PA | 11/02 | PENNSYLVANIA CHANGES - ACTUAL CASH VALUE |
| FA4028PA | 11/05 | PENNSYLVANIA CHANGES |
| FA4098 | 01/09 | CINCIPLUS® COMMERCIAL PROPERTY POWER XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT SUMMARY OF COVERAGE LIMITS |
| FA450 | 05/16 | COMMERCIAL PROPERTY CONDITIONS |
| FA458 | 04/04 | BUSINESS INCOME CHANGES - WAITING PERIOD |
| FA258 | 05/16 | CINCIPLUS® COMMERCIAL PROPERTY POWER XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT |
| FA223 | 05/16 | WATER BACKUP DISCHARGED FROM SEWERS, DRAINS, SEPTIC OR SUMP PUMP SYSTEMS ENDORSEMENT |
| FA244 | 05/11 | EQUIPMENT BREAKDOWN COVERAGE (EXCLUDING PRODUCTION MACHINERY) |
| FA202 | 05/16 | TEMPERATURE CHANGE LOSS FORM |
| FA213 | 05/16 | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage Policy Number | All Other Policy Number  ENP 053 39 92 | Effective Date of Endorsement   01-02-2020 |

Issued to   MILKBOY CENTER CITY LLC, MILKBOY COLLEGE PARK, LLC, T/A MILKBOY & ART HOUSE

Agent RISK STRATEGIES COMPANY 37-225
       BALA CYNWYD, PA                                        Endorsement #  6

---

## PREMIUM INFORMATION

Return Premium Due at Endorsement Effective Date      886

Subsequent Annual Installments Decreased by              $          2,761

Revised Annual Installment Payment(s)                    $          5,519

---

**It is agreed that the policy is amended as indicated by   ☒**

☐ **Policy Installment Premium Amended to:**
     ☐ Annual      ☐ Semi-Annual      ☐ Quarterly
☐ **Named Insured**



☐ **Mailing Address**




☐ **Form(s) Added**


☒ **Form(s) Deleted**
    IA4300MD 01/07    MARYLAND - NOTICE OF UNDERWRITING PERIOD
    MI1691MD 05/02    DISCLOSURE NOTICE

---

### All Other Reason for Change

AMENDING IA904 AND FMQ502 TO DELETE ALL COVERAGE AT LOC 2 - 7416
BALTIMORE AVE,COLLEGE PARK, MD 20740 IN ITS ENTIRETY

AMENDING FA223 TO DELETE:
   ITEM 2-1

AMENDING FA202 TO DELETE:
   ITEM 2-1

---

### Auto / Garage Reason for Change




---

01-24-2020 09:59

**IA 4329 12 09**                                                    **Page  1 of  1**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SCHEDULE OF LOCATIONS

| <u>LOC.</u> | <u>STREET ADDRESS</u> | <u>CITY</u> | <u>STATE</u> | <u>ZIP CODE</u> |
|---|---|---|---|---|
| 1 | 1100 CHESTNUT ST PHILADELPHIA, PA 19107-4802 | | | |
| 3 | 536 S 4TH ST PHILADELPHIA, PA 19147-1540 | | | |

IA 904 04 04

# THE CINCINNATI CASUALTY COMPANY

### A Stock Insurance Company

## COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER:     **ENP 053 39 92**

Named Insured is the same as it appears on the Common Policy Declarations unless otherwise stated here.

**Loc.   (address)**
REFER TO IA904

**OPTIONAL COVERAGES**
**Applicable only when an entry is made**

**COVERAGE PROVIDED**

| Item | Coverage | Limits | Coin-surance | Covered Cause Of Loss | Inflation Guard (%) | Replace-ment Cost (x) | Replace-ment Cost Incl. Stock (x) | Agreed Value (x) | Monthly Limit (fraction) | Maximum Period (X) | Extended Period (Days) |
|------|----------|--------|------|------|---|---|---|---|---|---|---|
| | | | | | | | | Business Income Indemnity | | | |
| 1-1 | BUSINESS PERSONAL PROPERTY | 400,000 | 80% | SPECIAL | | | X | | | | |
| 1-1 | BUSINESS INCOME W/EXTRA EXPENSE (b) | 12 MONTHS ALS SEE FA242 | | SPECIAL | | | | | | | |
| 3-1 | BUSINESS PERSONAL PROPERTY | 300,000 | 80% | SPECIAL | | | X | | | | |
| 3-1 | BUSINESS INCOME W/EXTRA EXPENSE (b) | 12 MONTHS ALS SEE FA242 | | SPECIAL | | | | | | | |

DEDUCTIBLE: $500.00 unless otherwise stated $     1,000

**MORTGAGE HOLDER**

| Item | Name and Address |
|------|------------------|
| | |

FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|---|---|---|
| FM101 | 05/16 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS) |
| CP9993 | 10/90 | TENTATIVE RATE |
| FA242 | 10/12 | ACTUAL LOSS SUSTAINED BUSINESS INCOME ENDORSEMENT |
| FA4013PA | 11/02 | PENNSYLVANIA CHANGES - ACTUAL CASH VALUE |
| FA4028PA | 11/05 | PENNSYLVANIA CHANGES |
| FA4098 | 01/09 | CINCIPLUS® COMMERCIAL PROPERTY POWER XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT SUMMARY OF COVERAGE LIMITS |
| FA450 | 05/16 | COMMERCIAL PROPERTY CONDITIONS |
| FA458 | 04/04 | BUSINESS INCOME CHANGES - WAITING PERIOD |
| FA258 | 05/16 | CINCIPLUS® COMMERCIAL PROPERTY POWER XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT |
| FA223 | 05/16 | WATER BACKUP DISCHARGED FROM SEWERS, DRAINS, SEPTIC OR SUMP PUMP SYSTEMS ENDORSEMENT |
| FA244 | 05/11 | EQUIPMENT BREAKDOWN COVERAGE (EXCLUDING PRODUCTION MACHINERY) |
| FA202 | 05/16 | TEMPERATURE CHANGE LOSS FORM |
| FA213 | 05/16 | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage | All Other | Effective Date |
| Policy Number | Policy Number **ENP 053 39 92** | of Endorsement  **04-29-2020** |

Issued to **MILKBOY CENTER CITY LLC, MILKBOY COLLEGE PARK, LLC, T/A MILKBOY & ART HOUSE**

Agent **RISK STRATEGIES COMPANY 37-225**
      **BALA CYNWYD, PA**                                  Endorsement #  **7**

---

**PREMIUM INFORMATION**

**Return** Premium Due at Endorsement Effective Date      182

   Subsequent Annual Installments Decreased by            $            182

   Revised Annual Installment Payment(s)                  $          5,337

**It is agreed that the policy is amended as indicated by**   [X]

☐ **Policy Installment Premium Amended to:**
   ☐ Annual      ☐ Semi-Annual      ☐ Quarterly

☐ **Named Insured**


☐ **Mailing Address**



☐ **Form(s) Added**


☐ **Form(s) Deleted**

---

**All Other Reason for Change**

AMENDING FMQ502 AS FOLLOWS:
  AMENDING:
    ITEM 1-1 BUSINESS INCOME LIMIT TO 300,000
    ITEM 3-1 BUSINESS INCOME LIMIT TO 300,000

---

**Auto / Garage Reason for Change**




04-14-2020 11:35

**IA 4329 12 09**                                          **Page   1 of   1**

# THE CINCINNATI CASUALTY COMPANY

### A Stock Insurance Company

## COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER:   **ENP 053 39 92**

Named Insured is the same as it appears on the Common Policy Declarations unless otherwise stated here.

<u>Loc.</u>   <u>(address)</u>
REFER TO IA904

| | | COVERAGE PROVIDED | | | | OPTIONAL COVERAGES Applicable only when an entry is made | | | | | | |
| | | | Coin-surance | Covered Cause Of Loss | | | | | | Business Income Indemnity | | |
| Item | Coverage | Limits | | | Inflation Guard (%) | Replace-ment Cost (x) | Replace-ment Cost Incl. Stock (x) | Agreed Value (x) | Monthly Limit (fraction) | Maximum Period (X) | Extended Period (Days) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1-1 | BUSINESS PERSONAL PROPERTY | 400,000 | 80% | SPECIAL | | | X | | | | |
| 1-1 | BUSINESS INCOME W/EXTRA EXPENSE (b) | 12 MONTHS ALS SEE FA242 | | SPECIAL | | | | | | | |
| 3-1 | BUSINESS PERSONAL PROPERTY | 300,000 | 80% | SPECIAL | | | X | | | | |
| 3-1 | BUSINESS INCOME W/EXTRA EXPENSE (b) | 12 MONTHS ALS SEE FA242 | | SPECIAL | | | | | | | |

DEDUCTIBLE: $500.00 unless otherwise stated $   **1,000**

MORTGAGE HOLDER

| Item | Name and Address |
|---|---|

FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|---|---|---|
| FM101 | 05/16 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS) |
| CP9993 | 10/90 | TENTATIVE RATE |
| FA242 | 10/12 | ACTUAL LOSS SUSTAINED BUSINESS INCOME ENDORSEMENT |
| FA4013PA | 11/02 | PENNSYLVANIA CHANGES - ACTUAL CASH VALUE |
| FA4028PA | 11/05 | PENNSYLVANIA CHANGES |
| FA4098 | 01/09 | CINCIPLUS® COMMERCIAL PROPERTY POWER XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT SUMMARY OF COVERAGE LIMITS |
| FA450 | 05/16 | COMMERCIAL PROPERTY CONDITIONS |
| FA458 | 04/04 | BUSINESS INCOME CHANGES - WAITING PERIOD |
| FA258 | 05/16 | CINCIPLUS® COMMERCIAL PROPERTY POWER XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT |
| FA223 | 05/16 | WATER BACKUP DISCHARGED FROM SEWERS, DRAINS, SEPTIC OR SUMP PUMP SYSTEMS ENDORSEMENT |
| FA244 | 05/11 | EQUIPMENT BREAKDOWN COVERAGE (EXCLUDING PRODUCTION MACHINERY) |
| FA202 | 05/16 | TEMPERATURE CHANGE LOSS FORM |
| FA213 | 05/16 | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM |